Exhibit A



**Notice of Service of Process**

**null / ALL**
**Transmittal Number: 18884130**
**Date Processed: 10/26/2018**

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Electronic copy provided to:** | Ashley Roberts |
| **Entity:** | Nationwide Mutual Insurance Company<br>Entity ID Number  3277054 |
| **Entity Served:** | Nationwide Insurance Co. |
| **Title of Action:** | Township of Neptune vs. Garden State Municipal Joint Insurance Fund |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Monmouth County Superior Court, NJ |
| **Case/Reference No:** | MON-L-003398-18 |
| **Jurisdiction Served:** | Ohio |
| **Date Served on CSC:** | 10/26/2018 |
| **Answer or Appearance Due:** | 35 Days |
| **Originally Served On:** | Nationwide Insurance Co |
| **How Served:** | Client Direct |
| Sender Information: | Gene J. Anthony<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

10-24

L0016997200210251 8

12-18

**Personal Service**
Date    10/25/18
Time    10:49 am
Initials  CBX

2018 OCT 24  PM 2:47
FRANKLIN COUNTY SHERIFF

**GENE J. ANTHONY, ESQ. – Attorney ID No. 011091978**
**48 SOUTH STREET**
**EATONTOWN, NEW JERSEY 07724**
**(732) 542-3320**
**gantpol@aol.com**
*Attorney for Plaintiff, Township of Neptune*

| | |
|---|---|
| TOWNSHIP OF NEPTUNE, a Municipal Corporation of the State of New Jersey<br><br>          Plaintiff,<br><br>vs.<br><br>GARDEN STATE MUNICIPAL JOINT INSURANCE FUND; LLOYD'S OF LONDON; STATEWIDE INSURANCE FUND; NATIONAL CASUALTY COMPANY; NATIONWIDE INSURANCE COMPANY; EVANSTON INSURANCE COMPANY; ABC COMPANY; INSURANCE COMPANY AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERESY and KRISTA HORAN; JOHN DOES 1-10; JANE DOES 1-10, Individually and in their capacity as agents, and  XYZ CORPORATION, its Successors and Assigns,<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MONMOUTH COUNTY<br><br>Docket No. MON-L-003398-18<br><br>CIVIL ACTION<br><br>**SUMMONS**<br><br>P\|R<br><br>Nationwide Insurance Co.<br><br>One Nationwide Plaza<br><br>Columbus OH 43215 |

FROM THE STATE OF NEW JERSEY
TO THE DEFENDANT(S) NAMED ABOVE: **NATIONWIDE INSURANCE CO.**

The Plaintiff(s), named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.statte.nj.us/prose/10153 deptyclerklawref.pdf.

If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, New Jersey 08625-0971.

A Filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-Law (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153 deptyclerklawref.pdf.

s/ MICHELLE M. SMITH
 MICHELLE M. SMITH, ESQ.
 Clerk of the Superior Court

DATED: October 22, 2018

Name of Defendant to be Served: **NATIONWIDE INSURANCE CO.**

Address of Defendant to be Served: **ONE NATIONWIDE PLAZA**
                                   **COLUMBUS, OHIO  43215**

## Case Details | Case Number: MON-L-003398-18

Case Caption: TOWNSHIP OF NEPTUNE   VS LLOYD'S OF LONDON

Court: Civil Part

Venue: MONMOUTH

Case Initiation: 09/19/2018

Case Track: 2

Case Status: Active

Jury Demand: NONE

Case Type: CONTRACT/COMMERCIAL
TRANSACTION

Judge: LUCAS, LOURDES

Team: 1

Law Firm Case ID: 2018-19

## Transaction Information

Transaction ID: LCV20181628712

Received by eCourts On: 09/19/2018

Total Payment Amount: $250.00

Documents Received:
**COMPLAINT**
**Exhibit**
**Exhibit**
**Exhibit**
**Exhibit**
**Miscellaneous**
**Miscellaneous**
**Case Information Statement**

L0016997200410251 8

GENE J. ANTHONY, ESQ. – Attorney ID 011091978
48 South Street
Eatontown, New Jersey 07724
(732) 542-3320
Attorney for Plaintiff

| | |
|---|---|
| TOWNSHIP OF NEPTUNE, a Municipal Corporation of the State of New Jersey<br><br>    Plaintiff,<br><br>vs.<br><br>GARDEN STATE MUNICIPAL JOINT INSURANCE FUND; LLOYD'S OF LONDON; STATEWIDE INSURANCE FUND; NATIONAL CASUALTY COMPANY; NATIONWIDE INSURANCE COMPANY; EVANSTON INSURANCE COMPANY; ABC COMPANY; INSURANCE COMPANY AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERESY and KRISTA HORAN; JOHN DOES 1-10; JANE DOES 1-10, Individually and in their capacity as agents, and  XYZ CORPORATION, its Successors and Assigns,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION MONMOUTH COUNTY<br><br>Docket No. MON-L-003398-18<br><br>CIVIL ACTION<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, TOWNSHIP OF NEPTUNE, a Municipal Corporation of the State of New Jersey, with principle offices located at 25 Neptune Blvd., Neptune Township, New Jersey 07753, by way of Complaint against Defendants, says:

## FIRST COUNT

1. Plaintiff, is a Municipal Corporation of the State of New Jersey.

2. Defendant, Garden State Municipal Join Insurance Fund, authorized under

    N.J.S.A. 40A:10-36 for purposes of insuring participating municipalities against

    liability in the State of New Jersey.

3. Defendant, Lloyds of London, is the underwriting company for Defendant, Garden State Municipal Joint Insurance Fund.

4. Defendant, Statewide Insurance Fund was organized and authorized under N.J.S.A. 40A:10-36 for purposes of insuring participating municipalities against liability in the State of New Jersey.

5. Defendant, Nationwide Insurance Company is a licensed and authorized insurance company for doing business in the State of New Jersey.

6. Defendant, National Casualty Company, is the underwriting insurance company licensed and authorized to do business in the State of New Jersey.

7. Defendant, Evanston Insurance Company, is an excess liability company licensed and authorized to do business in the State of New Jersey.

8. Defendant, ABC Company, is licensed and authorized as an insurance company to do business in the State of New Jersey.

9. Defendant, Krista Horan, is a former employee of the Township of Neptune, who brought an underlining claim/complaint against the Plaintiff; alleging wrongful termination of employment.

10. In 2018, Defendant, Krista Horan, a former employee of the Township of Neptune, filed in the Superior Court of New Jersey, Law Division, Monmouth County, a lawsuit ("Horan lawsuit") claiming, among other causes of action, alleged wrongful termination of employment.  The actual termination occurred in 2016. The Township of Neptune was named in the Complaint as the former employer of Defendant, Krista Horan.

11. Defendant, Nationwide Insurance Company, acting on behalf of Defendant, National Casualty Company issued a Public Entity Insurance Policy under Police No. PKONJA0025 for a period of January 1, 2016 through January 1, 2017 ("National Casualty Policy"), which insured the Plaintiff against losses arising from alleged wrongful employment practices. A copy of the aforesaid policy relevant to this particular matter is attached hereto and made a part hereof as **Exhibit "A".**

12. In 2016, after termination of Defendant, Krista Horan, there was a number of correspondence exchanges between Plaintiff, Neptune Township, and Defendant, Krista Horan, dealing with the termination. No Notice of Claim, Complaint, or official Notice of Claim was filed in 2016. Nevertheless, as a result of the aforesaid exchange, Defendant Horan filed the Horan lawsuit in 2018 and it was referred to the aforesaid Defendant, National Casualty. Defendant, National Casualty, through the firm of Goldberg, Cegalla, LLP denied coverage to Plaintiff Neptune. By letter of July 24, 2018, a true copy of which is attached hereto and made a part hereof as **Exhibit "B"** was based on the allegation that the Plaintiff failed to provide a timely notice to the Defendant, National Casualty, concerning Krista Horan's claims, even though no formal claim in the form of a Complaint was filed until 2018 and was immediately provided to the Defendant, National Casualty.

13. The Defendant, Garden State Municipal Joint Insurance fund, and its underwriter, Defendant, Lloyd's of London, also issued a policy of insurance, which insured the Plaintiff against loss or damage as a result of alleged wrongful employment

3

practices under Policy No. PK1006318 from January 1, 2018 to January 1, 2019, but was also notified about the Horan lawsuit upon the filing of the Complaint in that matter, but denied coverage in full based on a claims made policy clause, a true copy of said policy is attached hereto and made a part hereof as **Exhibit "C."**

14. Defendant, Evanston Insurance Company is named in this matter as the excess liability insurance company relevant to this matter.

15. Plaintiff has made demand upon Defendants, Garden State Municipal Joint Insurance Fund, Lloyd's of London, Statewide Insurance Fund and National Casualty Company and Nationwide Insurance Company, demanding legal representation and coverage with regard to the Horan lawsuit and payment of any future loss under said policies; should said loss occur, but the Defendants have declined complete representation or coverage.

16. A controversy exists between the parties concerning their respective rights under the aforesaid policies as follows:

    a.  Plaintiff claims that based on Defendant Horan's termination in 2016 and her filing of a Complaint in 2018, either Garden State Municipal Insurance Fund and its underwriter, Lloyd's of London is required to cover legal representation and any future loss between Plaintiff and Defendant Horan in the Horan lawsuit, or in the alternative or jointly, Defendants, Statewide Insurance Fund, Nationwide Insurance Company and its underwriter National Casualty Company are responsible under its prior policy with Plaintiff, Neptune Township to represent Neptune Township and cover any loss due to its prior policy with Neptune Township.

4

b.  Defendants, Nationwide Insurance Company, National Casualty Company
and Defendant, Statewide Insurance Fund claim that their policy with the
Plaintiff in 2016 did not cover the aforesaid claim due to untimely
notification, and Defendant, Garden State Municipal Insurance Fund and
underwriter, Defendant, Lloyd's of London, claim that they do not cover
Plaintiff under a policy of 2018 based on when the claim was made by
Defendant Horan.

c.  By reason of the foregoing, a Declaratory Judgment is both necessary and
proper in order to set forth and determine the rights, obligations and
liabilities that exist between the parties in connection with the aforesaid
policies.

17. Plaintiff, Neptune Township, believing that it is covered, either under the 2016
policy or the 2018 policy demands judgment against the Defendants requiring
coverage under the aforesaid policies for the Horan lawsuit.

18. Plaintiff, Neptune Township, is also seeking and is entitle to recovering reasonable
attorney's fees occurred in this action.

**WHEREFORE,** Plaintiff, Township of Neptune, seeks Judgment against Defendants
as follows:

a.  Declaring the insurance policy presently held by Neptune Township through
the Garden State Municipal Insurance Fund with Defendant, Lloyd's of
London, as the underwriting insurance company to be the primary insurance
carrier responsible for representation and coverage in the underlying action of
Horan v. Neptune Township; or in the alternative or jointly, declaring the

previous insurance policy issued by Defendants, Statewide Insurance Fund, Nationwide Insurance Company with underwriter, National Casualty Company and any excess insurance coverage held by Defendant, Evanston Insurance Company, as primary insurance carriers providing representation and coverage for Plaintiff in the underlying action of Horan v. Neptune.

b. Requiring Defendant, Garden State Municipal Insurance Fund, Defendant, Lloyd's of London, or in the alternative or jointly, or to the extent Defendant, Statewide Insurance Fund, Nationwide Insurance Company and Defendant National Casualty Company, along with and to the extent of any additional/excess insurance coverage by Defendant, Evanston Company Insurance Company, and defend the Plaintiff in the underlying action of Horan v. Neptune.

c. Declaring that Defendant, Garden State Municipal Joint Insurance Fund; Defendant, Lloyd's of London or in the alternative or jointly, Defendant, Statewide Insurance Fund; Defendant, Nationwide Insurance Company and Defendant National Casualty Company and to the extent excess insurance is necessary, Defendant, Evanston Insurance Company shall be liable to Plaintiff in the underlying action of Horan v. Neptune Township to the full extent of their policies prior to the Township of Neptune incurring any liability.

d. For attorney's fees and costs of the suit incurred in the underlying action of Horan v. Neptune Township.

e. For attorney's fees and costs of the suit incurred in the within action.

f. For such further relief as the Court may deem just and proper.

## SECOND COUNT

19. Plaintiff repeats the allegations contained in Paragraph 1 through 18 of the First Count of the Complaint in this action as if set forth more fully herein.

20. Defendant, ABC Company, a fictitious company, (whose name is unknown) is an insurance company duly licensed to provide insurance in the State of New Jersey.

21. Defendant, ABC Company, issued a policy of insurance to the Plaintiff for coverage on losses as a result of employment practices.

22. Defendant, ABC Company, has failed and/or refused to defend Plaintiff in the underlying action of Horan v. Neptune Township, in which it is alleged that the party Defendant Horan was wrongfully terminated.

**WHEREFORE**, Plaintiff, Neptune Township demand Judgment against the Defendant, ABC Company, as follows:

a. Declaring Defendant, ABC Company to be the primary insurance carrier in the underlying action of Horan v. Neptune Township, or in the alternative or jointly, any of the other Defendant insurance carriers are declared primary insurance carriers, then ABC Company shall be declared the secondary insurance carrier in the said underlying action.

b. Requiring ABC Company to the extent of its insurance and additional/excess insurance coverage, to defend the underlying action of Horan v. Neptune Township.

c. Declaring that ABC Company shall be liable to Plaintiff in the underlying action of Horan v. Neptune Township, to the full extent of its policies prior to the Township of Neptune incurring any liability.

d. For attorney's fees and costs of the suit incurred in the underlying action of Horan v. Neptune Township.

e. For attorney's fees and costs of the suit incurred in the within action.

f. For such further relief as the Court may deem just and proper.

## THIRD COUNT

23. Plaintiff repeats the allegations contained in Paragraphs 1 through 18 of the First Count of the Complaint and Paragraphs 19 through 22 of the Second Complaint in this action as if set forth more fully herein.

24. Defendant, Garden State Municipal Joint Insurance Fund and Defendant, Statewide Insurance Fund authorized funds under N.J.S.A. 40A:10-36 insuring participating of municipalities against liability in the State of New Jersey, and having full power and authority to indemnify against loss from liability caused by alleged wrongful actions in termination of employment covered in Neptune Township between January 1, 2018 and January 1, 2019  and  January 1, 2016 and January 1, 2017, respectively.

25. The governing body of Plaintiff, Neptune Township by Resolution or Ordinance agreed to join the Garden State Municipal Insurance Fund and the Statewide Insurance fund during the respective time periods stated above, and said insurance funds acceptance of Plaintiff, Neptune Township, as an insured municipality in the aforesaid funds during the aforesaid time periods.

26. In 2018 a Complaint was filed in the Superior Court of New Jersey, Law Division, Monmouth County, entitled, "Krista Horan v. Neptune Township" alleging wrongful discharge as an employee of Neptune Township.

27. Defendant Garden State Municipal Joint Insurance Fund and Defendant, Statewide Insurance Fund have both failed and/or refused to defend or cover the Plaintiff, Neptune Township in the underlying action of Horan v. Neptune Township, in which the Plaintiff is alleged to be the employer of the former employee, Defendant, Krista Horan.

**WHEREFORE,** Plaintiff, Neptune Township, demands Judgment as follows:

a.    Against Defendant Garden State Municipal Joint Insurance Fund and Statewide Insurance Fund in the underlying action of Horan v. Neptune Township, or in the alternative, if Defendant, Garden State Municipal Insurance Fund or Statewide Insurance Fund and/or ABC Company shall be declared the primary insurance carriers, then the Defendant, Garden State Municipal Joint Insurance Fund and/or Defendant, Statewide Insurance fund shall be declared the secondary insurance fund in said underlying action.

b.   Requiring Defendants, Garden State Municipal Joint Insurance Fund and/or Statewide Insurance fund, to the extent of their insurance and additional/excess insurance coverage by Defendant Evanston Insurance Company, defend the Plaintiff in the underlying action of Horan v. Neptune Township.

c.   Declaring that the Garden State Municipal Joint Insurance Fund and/or Defendant, Statewide Insurance Fund be held liable to Plaintiff in the

L0016997201411021518

underlying action of Horan v. Neptune Township to the full extent of its

policies prior to the Township of Neptune incurring any liability.

d.   For attorney's fees and costs of the suit incurred in the underlying action of

Horan v. Neptune Township.

e.   For attorney's fees and costs of the suit incurred in the within action.

f.   For such further relief as the Court may deem just and proper.

Dated: September 19, 2018

_____
GENE J. ANTHONY, ESQ.
*Attorney for Plaintiff*
*Township of Neptune*

## DESIGNATION OF TRIAL COUNSEL IN ACCORDANCE WITH R. 4:25-4

The undersigned hereby certifies that Gene J. Anthony, Esq., shall be designated as the

trial counsel in this matter.

Dated: September 19, 2018

_____
GENE J. ANTHONY, ESQ.
*Attorney for Plaintiff,*
*Township of Neptune*

10

L00189972015102518

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that the matter in controversy is not the subject of any other Court proceeding or in arbitration to the best of my knowledge and belief, and that to the best of my knowledge and belief, no other parties need to be joined at this time, and that no other proceedings are contemplated.  In addition, I recognize a continuing obligation of each party to file and serve all other parties and the Court as amended Certification if there is a change in the facts stated in the original Certification.

Dated: September 19, 2018

GENE J. ANTHONY, ESQ.
*Attorney for Plaintiff,*
*Township of Neptune*

## CERTIFICATION PURSUANT TO R. 1:38-7(b)

I hereby certify that confidential, personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future.

Dated: September 19, 2018

GENE J. ANTHONY, ESQ.
*Attorney for Plaintiff,*
*Township of Neptune*

11



# Statewide Insurance Fund
# Umbrella
# 2016

# EVANSTON INSURANCE COMPANY

**MARKEL**®

## STATEWIDE INSURANCE FUND
## CERTIFICATE OF INSURANCE

CERTIFICATE NUMBER: 46

THIS CERTIFICATE REPRESENTS INSURANCE PROVIDED IN ACCORDANCE WITH THE FOLLOWING MASTER POLICY # **MPEIEV0061-15-01**

Certificate Holder's (Insured's) Name and Mailing Address (No., Street, Town or City, County, State, Zip Code)

**Neptune Township**

P.O. Box 1125

Neptune, NJ 07753

Certificate Holder's (Insured's) Effective Date of Coverage: <u>1-1-16</u> at 12:01 a.m. Standard Time at your mailing address shown above.

| COMMERCIAL EXCESS LIABILITY POLICY LIMITS OF INSURANCE | |
| --- | --- |
| (A) Each Occurrence Limit | $5,000,000 |
| (B) Aggregate Limit | $5,000,000 |

| PLAN ADMINISTERED BY: |
| --- |
| Public Risk Underwriters of NJ, Inc.<br>One Sylvan Way<br>Parsippany, NJ 07054 |

**This Certificate of Insurance is to provide evidence of insurance and does not amend, expand or alter any terms and conditions of the Policy.**

L0016997201910 2518

## SCHEDULE OF UNDERLYING INSURANCE

| Controlling Underlying Insurance Policy | Underlying Limits Of Liability |
|---|---|
| **Employers Liability Policy**<br>**Policy No:** N/A<br>**Company:**<br>**Policy Period: From:         To:** | $N/A Employer's Liability Each Accident Limit<br>$N/A Disease – Each Employee Limit<br>$N/A Disease – Each Policy Limit |
| **Commercial General Liability Policy**<br>☒ **Occurrence** ☐ **Claims-Made**<br>**Policy No:** SIF2016-07753<br>**Company:** Statewide Insurance Fund<br>**Policy Period: From:** 01/01/2016 **To:** 01/01/2017 | $         General Aggregate Limit<br>$         Products-Completed Operations Limit<br>$10,000,000 Each Occurrence Limit<br>$         Personal And Advertising Injury – Each Person<br>         Or Organization Limit |
| **Automobile Liability Policy**<br>**Policy No:** SIF2016-07753<br>**Company:** Statewide Insurance Fund<br>**Policy Period: From:** 01/01/2016 **To:** 01/01/2017 | $10,000,000 Bodily Injury And Property Damage<br>         Combined – Each Accident |
| **Police Professional Liability Policy**<br>☐ **Occurrence** ☐ **Claims-Made**<br>**Policy No:** N/A<br>**Company:**<br>**Policy Period: From:         To:** | $N/A Aggregate Limit<br>$N/A Each Person Limit<br>$N/A Each Occurrence Limit |
| **Public Officials Liability Policy**<br>☐ **Occurrence** ☐ **Claims-Made**<br>**Policy No:** N/A<br>**Company:**<br>**Policy Period: From:         To:** | $N/A Aggregate Limit<br>$N/A Per Claim Limit |
| **Employment Practices Liability Policy**<br>☐ **Occurrence** ☐ **Claims-Made**<br>**Policy No:** N/A<br>**Company:**<br>**Policy Period: From:         To:** | $N/A Aggregate Limit<br>$N/A Per Claim Limit |
| **Employee Benefits Liability Policy**<br>**Policy No:** SIF2016-07753<br>**Company:** Statewide Insurance Fund<br>**Policy Period: From:** 01/01/2016 **To:** 01/01/2017 | $         Aggregate Limit<br>$10,000,000 Per Claim Limit |

Signed: _____   By: _____
                      **DATE**                                    **AUTHORIZED REPRESENTATIVE**

A STOCK COMPANY



**MARKEL**®

## Evanston Insurance Company
Ten Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

Secretary

President

MJIL 1000 08 10

Page 1 of 1

L0016997202110 2518



INTERLINE
POLICY NUMBER: MPEIEV0061-15-01

# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| Form Number | Form Name |
| --- | --- |
| MJIL 1000 08 10 | Evanston Jacket |
| MDIL 1001 08 11 | Forms Schedule |
| MADUB 1000 01 15 | Commercial Excess Liability Policy Declarations |
| MADUB 1002 01 15 | Schedule of Underlying Insurance- Commercial Excess Liability Policy |
| IL 12 01 11 85 | Policy Changes - Umbrella limits by member entity |
| MAUB 0001 01 15 | Commercial Excess Liability Policy |
| MAUB 1507 01 15 | Claims Made Insurance Following Form |
| IL 12 01 11 85 | Excess Policy Changes-Certificates of Insurance |
| MAUB 1813 01 15 | Exclusion - Asbestos |
| MAUB 1642 01 15 | Exclusion - Lead |
| IL 12 01 11 85 | Municipality Changes |
| IL 12 01 11 85 | New Jersey Changes - Cancellation and Nonrenewal |
| MAUB 1622 01 15 | Exclusion - Failure to Supply |
| MAUB 1355 01 15 | Exclusion - Nuclear Energy Liability |
| MAUB 1638 01 15 | Exclusion - Fungi or Bacteria |
| MAUB 1678 01 15 | Exclusion - Pollution |
| MAUB 1391 01 15 | Exclusion - Computer- Related and Other Electronic Problems |
| MAUB 1621 01 15 | Exclusion - Recording and Distribution of Material or Information In Violation of Law |
| MAUB 1696 01 15 | Exclusion - Certified Acts of Terrorism |
| MAUB 1618 01 15 | Exclusion - Sublimited Underlying Coverage |
| MAUB 1666 01 15 | Exclusion - War Liability |
| MAUB 1601 01 15 | Exclusion - Insured Versus Insured |

MDIL 1001 08 11

L00169972022102518

MEIL 1200 01 10    Service of Suit
MPIL 1007 03 14    Privacy Notice
MCUB 2001 01 15    Certificates of
                        Insurance - for each
                        individual member of
                        Statewide Insurance
                        Fund

L00169972023102518



# Evanston Insurance Company

## COMMERCIAL EXCESS LIABILITY POLICY DECLARATIONS

POLICY NUMBER.: **MPEIEV0061-15-01**          RENEWAL OF POLICY: N/A

Named Insured and Mailing Address: (No., Street, Town or City, County, State, Zip Code)
Statewide Insurance Fund
One Sylvan Way
Parsippany, NJ 07054

Policy Period: From 1-1-16 _____ to 1-1-17 _____ at 12:01 A.M. Standard Time at your mailing address shown above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| Limits Of Insurance | |
|---|---|
| Each Occurrence Limit: | $ See Certificates of Insurance |
| Aggregate Limit: | $ See Certificates of Insurance |

| Premium | |
|---|---|
| Policy Premium: | $ _____ |
| Terrorism Premium: | $ _____ |
| Fees (Where Applicable) | $ _____ |
| Total Premium: | $ _____ Payable At Inception |

Audit Period: ☒ Not Applicable ☐ Annual ☐ Semi-Annual ☐ Quarterly ☐ Monthly
Rating Basis (If Subject To Audit)     Premium Basis: _____     Rate: _____

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.

| Endorsements |
|---|
| Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue: |
| Per Forms Schedule |

| Schedule Of Underlying Insurance |
|---|
| Per Schedule Of Underlying Insurance |

**These declarations, together with the Common Policy Conditions and Coverage Form(s) and any Endorsement(s), complete the above numbered policy.**

_____     By: _____

L00169972024102518

Countersigned:

| _____ | _____ |
| **DATE** | **AUTHORIZED REPRESENTATIVE** |

L00169972025102518



# Evanston Insurance Company

## SCHEDULE OF UNDERLYING INSURANCE –
## COMMERCIAL EXCESS LIABILITY POLICY

| Type Of Policy / Carrier | Limits Of Insurance | Excess Of |
|---|---|---|
| See individual Certificates of Insurance for each member entity | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

All Limits Of Insurance are Each Occurrence and Aggregate, if applicable.

MADUB 1002 01 15

L0016997202610251B

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| MPEIEV0061-15-01 | 1-1-16 | Evanston Insurance Company |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Statewide Insurance Fund | Gerard Albanese |

COVERAGE PARTS AFFECTED:
COMMERCIAL EXCESS LIABILITY POLICY DECLARATIONS

## CHANGES

The above coverage part is hereby amended as follows:

It is understood and agreed that the following entities are members of the Statewide Insurance Fund and are covered under this policy. The below limits apply to each member entity separately.

The following entities have a limit of $5,000,000:

- Andover Borough
- Bridgeton City
- Buena Vista Township
- Byram Township
- Chester Township
- Clinton Town
- Cranford Township
- Delaware Township MUA
- Egg Harbor City
- Flemington Borough
- Fredon Township
- Garwood Borough
- Green Township
- Hamburg Borough
- Hardyston Township
- Harmony Township
- High Bridge Borough
- Holland Township
- Jefferson Township
- Keansburg Borough
- Lafayette Township
- Little Falls Township
- Lopatcong Township
- Manville Borough
- Mount Holly Township
- Neptune Township
- Neptune Township Sewerage Authority
- Ogdensburg Borough
- Peapack & Gladstone Borough

IL 12 01 11 85  Copyright, Insurance Services Office, Inc., 1983  Page 1 of 2
Copyright, ISO Commercial Risk Services, Inc., 1983

L00169972027102518

- Phillipsburg Town
- Port Republic
- Roxbury Township
- Salem City
- Salem County Improvement Authority
- Sandyston Township
- Somerville Borough
- Springfield Township
- Stillwater Township
- Sussex Borough
- Sussex County Municipal Utilities Authority
- Vernon Township
- Wantage Township
- Washington Borough
- Franklin Township (Hunterdon)
- Hammonton Town

The following entities have a limit of $10,000,000:

- City of Long Branch
- County of Sussex
- Township of Washington (Burlington County)
- Township of West Deptford
- Borough of Elmer
- Borough of Raritan
- Township of Frelinghuysen
- Town of Weehawken
- Township of Hillside

The following entities have a limit of $15,000,000:

- Township of Alexandria
- Borough of Frenchtown
- Borough of Glen Gardner
- Borough of Hampton
- Town of Newton
- Township of Tewksbury
- Borough of Califon
- Borough of Hopewell
- Township of Lebanon
- Borough of Rocky Hill
- Borough of Stockton

Refer to each individual Certificate of Insurance for member details and underlying information.

All other terms and conditions remain unchanged.

_Gerald Albonesi Jr_

_____

Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,   1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

IL 12 01 11 85

**MARKEL®**

# Evanston Insurance Company

## COMMERCIAL EXCESS LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as an Insured under the "underlying insurance". The words "we" and "us" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meanings. Refer to Section **V**. Definitions.

### SECTION I. INSURING AGREEMENT

1. We will pay those sums in excess of the limits shown in the Schedule Of Underlying Insurance that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable Limits Of Insurance.

2. This policy is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except:

   a. We will have no obligation under this policy with respect to any claim or suit that is settled without our consent; and

   b. With respect to any provisions to the contrary contained in this policy.

3. The amount we will pay for damages shall not exceed the Limits Of Insurance shown in the Declarations.

4. We will have the right to participate in the defense of claims or suits against you seeking damages because of injury to which this insurance may apply. We will have a duty to defend such claims or suits when the applicable limit of insurance of the "underlying insurance" has been exhausted by payment of judgments, settlements and any cost or expense subject to such limit. We may, at our discretion, investigate and settle any claim or suit. Our right and duty to defend ends when the applicable limit shown in the Declarations has been used up by our payment of judgments or settlements.

### SECTION II. EXCLUSIONS

The exclusions applicable to the "underlying insurance" also apply to this policy.

### SECTION III. LIMITS OF INSURANCE

1. The Limit Of Insurance shown in the Declarations as the Each Occurrence Limit is the most we will pay for damages arising out of any one occurrence or offense.

2. If a Limit Of Insurance is shown in the Declarations as the Aggregate Limit, that amount will apply in the same manner as the aggregate limits shown in the Schedule Of Underlying Insurance.

### SECTION IV. CONDITIONS

If any of the following conditions are contrary to conditions contained in the "underlying insurance" the provisions contained in this policy apply.

1. Appeals

   In the event the underlying insurer(s) elects not to appeal a judgment in excess of the limits of the "underlying insurance", we may elect to make such an appeal. If we so elect, we shall be liable, in addition to the applicable Limits Of Insurance, for all defense expenses we incur.

2. Maintenance Of Underlying Insurance

MAUB 0001 01 15

a. You agree to maintain the "underlying insurance" in full force and effect during the term of this policy, and to inform us within 30 days of any replacement or material change of that "underlying insurance" by the same or another company. Failure to maintain the "underlying insurance" in full force and effect or to meet all conditions and warranties of such "underlying insurance" will not invalidate insurance provided under this policy, but insurance provided under this policy shall apply as if the "underlying insurance" were available and collectible.

b. Reduction or exhaustion of the aggregate limit of any "underlying insurance" by payments for judgments, settlements or any costs or expenses subject to that limit, will not be a failure to maintain "underlying insurance" in full force and effect.

c. No statement contained in this condition limits our right to cancel or not renew this policy.

For purposes of this policy, if any "underlying insurance" is not available or collectible because of:

a. The bankruptcy or insolvency of the underlying insurer(s) providing such "underlying insurance"; or

b. The inability or failure for any other reason of such underlying insurer(s) to comply with any of the obligations of its policy;

then this policy shall apply and amounts payable hereunder shall be determined as if such "underlying insurance" were available and collectible.

3. **Other Insurance**

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

4. **Cancellation**

a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering advance written notice of cancellation to us.

b. We may cancel this policy by mailing or delivering written notice of cancellation to the first Named Insured at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 60 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

5. **Policy Period**

This insurance will respond to injury or damage that occurs, or arises from an offense committed, during the Policy Period shown in the Declarations.

**SECTION V. DEFINITIONS**

"Underlying insurance" means the policies or self-insurance shown in the Schedule Of Underlying Insurance, any replacements thereof and other policies purchased or issued for newly acquired or formed organizations. Policies purchased or issued replacements of policies or self-insurance listed in the Schedule Of Underlying Insurance or for newly acquired or formed organizations shall not be more restrictive than those listed in the Schedule Of Underlying Insurance. All "underlying insurance" shall be maintained by you in accordance with the Maintenance Of Underlying Insurance condition of this policy.

L0016997203301023I8



EXCESS/UMBRELLA
POLICY NUMBER:  MPEIEV0061-15-01

# Evanston Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CLAIMS MADE INSURANCE FOLLOWING FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY POLICY
COMMERCIAL UMBRELLA LIABILITY POLICY

| CLAIMS MADE UNDERLYING INSURANCE SCHEDULE | |
|---|---|
| Name Of Insured: | Statewide Insurance Fund |
| Insurance Company: | Evanston Insurance Company |
| Coverage: | Public Officials Liability, Employment Practices Liability |
| Underlying Insurance Limits Of Insurance: | **$See Certificates of Insurance** Each Claim, Occurrence, Offense Or Wrongful Act |
| | **$ See Certificates of Insurance** Aggregate |
| Our Limits Of Insurance: | **$ See Certificates of Insurance** Each Claim, Occurrence, Offense Or Wrongful Act |
| | **$ See Certificates of Insurance** Aggregate |
| Coverage Retroactive Date: | Various on file |

Please refer to each Coverage Form to determine which terms are defined. Words shown in quotations on this endorsement may or may not be defined in all Coverage Forms.

This endorsement provides limits in excess of the claims made "underlying insurance" shown in the Schedule of this endorsement. This endorsement also applies on a claims made basis.

Carefully review the claims made "underlying insurance" and this coverage to see how coverage applies.

A. The following is added to Section I. Insuring Agreement:

**Underlying Claims Made Policy**

The following applies to any "underlying insurance" written on a claims made basis and listed in the Claims Made Underlying Insurance Schedule above:

1.  We will pay those sums in excess of the limits shown for the claims made "underlying insurance" that you become legally obligated to pay as damages because of injury or damage, as applicable, to which this endorsement applies, provided that:

    a.  The claims made "underlying insurance" also applies, or would apply but for the exhaustion of its applicable Limit of Insurance;

    b.  A claim for damages is first made against any insured during the period of this policy or Extended Reporting Period, if applicable; and

    c.  A claim for damages is a result of an injury or damage, as applicable, which occurred on or after the

MAUB 1507 01 15        Includes copyrighted material of Insurance Services Office, Inc.,        Page 1 of 3
                                        with its permission.

Coverage Retroactive Date shown in the Schedule of this endorsement, but before expiration or cancellation of this policy, whichever comes first.

2. Unless otherwise included in this endorsement, this insurance is subject to the same terms, conditions, agreements, expense provisions, exclusions and definitions as the claims made "underlying insurance", except:

   a. We will have no obligation under this endorsement with respect to any claim or "suit" that is settled without our consent; and

   b. With respect to any provisions to the contrary contained in this endorsement or any endorsement attached to the policy.

3. The amount we will pay for damages will not exceed Our Limit Of Insurance shown in the Schedule of this endorsement.

4. We will have the right to participate in the defense of claims or "suits" against you seeking damages because of injury or damages to which this endorsement may apply. We will have a duty to defend such claims or "suits" when the applicable limit of insurance of the claims made "underlying insurance" has been exhausted by payment of judgments or settlements and any cost or expense subject to such limit. We may, at our discretion, investigate and settle any claim or "suit". Our right and duty to defend end when Our Limit Of Insurance shown in the Schedule of this endorsement has been used up by our payment of judgments or settlements.

B. The following is added to the Limits Of Insurance section, but only as respects claims made coverage(s) shown in the Schedule of this endorsement:

   1. Our Limits Of Insurance shown for Each Claim, Occurrence, Offense Or Wrongful Act is the most we will pay for damages arising out of any one claim, occurrence, offense or wrongful act, as applicable.

   2. Our Limits Of Insurance shown for Aggregate, if applicable, apply in the same manner as the Underlying Insurance Aggregate Limit shown in the Schedule of this endorsement.

   3. Limits of insurance provided by this endorsement are included within, and not in addition to, the Limits Of Insurance shown in the Declarations.

C. The following Conditions are added as respects claims made coverage(s) shown in the Schedule of this endorsement:

**Extended Reporting Periods**

If the claims made "underlying insurance" provides for an extended reporting period, we will issue an endorsement providing an extended reporting period subject to the following conditions:

1. Our extended reporting period will be for the same duration as the extended reporting period of the claims made "underlying insurance".

2. The first Named Insured must make a written request to us for an extended reporting period within 60 days after the end of the policy period or the cancellation date, whichever occurs first.

3. The extended reporting period will not take effect unless the additional premium determined by us is paid in full when due and:

   a. The claims made "underlying insurance" is maintained in full force and effect as specified in the Maintenance of Claims Made Underlying Insurance Condition below;

   b. An extended reporting period is purchased for the claims made "underlying insurance"; and

   c. The premium for the extended reporting period will be fully earned when the extended reporting period endorsement takes effect.

4. The extended reporting period will not reinstate or increase Our Limits Of Insurance shown in the Schedule of this endorsement.

5. A claim first made during the extended reporting period will be deemed to have been made on the last day of the policy period of this policy or the cancellation date, whichever comes first.

**Maintenance Of Claims Made Underlying Insurance**

1. You agree to maintain the claims made "underlying insurance" in full force and effect during the term of this policy, and to inform us within 30 days of any replacement or material change of that claims made "underlying insurance" by the same or another company. If you do not maintain the claims made "underlying insurance" in full force and effect or fail to meet all conditions and warranties of such claims made "underlying insurance", this endorsement

will apply as if that policy were available and collectible.

2. Reduction or exhaustion of the aggregate limit of any claims made "underlying insurance" by payments for judgments, settlements or any costs or expenses subject to that limit will not be a failure to maintain claims made "underlying insurance" in full force and effect.

3. No statement contained in this condition limits our right to cancel or not renew this policy.

For purposes of this endorsement, if the claims made "underlying insurance" is not available or collectible because of:

1. The bankruptcy or insolvency of the underlying insurer providing such claims made "underlying insurance";

2. The inability or failure for any other reason of such underlying insurer to comply with any of the obligations of its policy; or

3. Reduction in limit because of claims not payable under this endorsement;

then this endorsement will apply (and amounts payable hereunder shall be determined) as if such claims made "underlying insurance" were available and collectible.

**Other Insurance**

This endorsement is excess over any other valid and collectible insurance, whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

D. The following Definition is added as respects claims made coverage(s) shown in the Schedule of this endorsement:

"Underlying insurance" means the policies or self-insurance shown in the Claims Made Underlying Insurance Schedule above, any replacements thereof and other policies purchased or issued for newly acquired or formed organizations. Policies purchased or issued replacements of policies or self-insurance listed in the Claims Made Underlying Insurance Schedule above or for newly acquired or formed organizations shall not be more restrictive than those listed in the Claims Made Underlying Insurance Schedule above. All "underlying insurance" shall be maintained by you in accordance with Claims Made Maintenance Of Underlying Insurance condition above.

All other terms and conditions remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

L00169972033102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number

| POLICY NUMBER<br><br>MPEIEV0061-15-01 | POLICY CHANGES EFFECTIVE<br>1-1-16 | COMPANY<br><br>Evanston Insurance Company |
|---|---|---|
| NAMED INSURED<br>Statewide Insurance Fund | | AUTHORIZED REPRESENTATIVE<br>Gerard Albanese |

| COVERAGE PARTS AFFECTED:<br>COMMERCIAL EXCESS LIABILITY POLICY |
|---|
| **CHANGES** |

### Excess Policy Changes

**A.** The lead-in is replaced by the following:

Various provisions in this policy restrict coverage. Read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you", "your" and "insured" refer to the "certificate holder" named in each individual Certificate Of Insurance and any other person or organization qualifying as an Insured under the "underlying insurance". The words "we", "us" and "our" refer to the company providing this insurance.

The word "policy" refers to the master policy issued to the entity named in the Declarations as the first Named Insured. The first Named Insured is not an "insured".

Other words and phrases that appear in quotation marks have special meanings. Refer to Section **V.** Definitions.

**B.** Section **III.** Limits Of Insurance is replaced by the following:

**SECTION III. LIMITS OF INSURANCE**

**1.** The Limit Of Insurance applicable to the Commercial Excess Liability Policy which is shown in the Certificate Of Insurance as the Each Occurrence Limit is the most we will pay for damages arising out of any one occurrence or offense.

**2.** The Limit Of Insurance applicable to the Commercial Excess Liability Policy which is shown in the Certificate Of Insurance as the Aggregate Limit is the most we will pay for damages arising out of all occurrences and offenses during the Policy Period.

**C.** Changes to Section **IV.** Conditions

**1.** The following is added to Paragraph 4. Cancellation:

Pursuant to New Jersey law, a Certificate Of Insurance cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the insured. The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew the insured's Certificate Of Insurance are maintained by the insurer in writing and will be furnished to the insured and/or the insured's lawful representative upon written request.

This provision shall not apply to any Certificate Of Insurance which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the Certificate Of Insurance is a renewal policy.

**2.** Paragraph **b.** of Paragraph **4.** Cancellation in Section **IV.** Conditions is replaced by the following:

**b.** If the insured's Certificate Of Insurance has been in effect for less than 60 days, we may cancel the

IL 12 01 11 85         Copyright, Insurance Services Office, Inc.,   1983                    Page 1 of 4
Copyright, ISO Commercial Risk Services, Inc.,   1983

Certificate Of Insurance for any reason subject to the following:

**(1)** We may cancel the Certificate Of Insurance by mailing or delivering to the first Named Insured, the "certificate holder" and any person entitled to notice under the insured's Certificate Of Insurance written notice, of cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for:

**(i)** Nonpayment of premium; or

**(ii)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

**i.** "The risk, danger or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an insured that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

**ii.** "The substantial risk, danger or probability that the character, circumstances or personal habits of the insured may increase the possibility of loss or liability for which an insurer will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other insured that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(2)** In the notice of cancellation which is sent to the first Named Insured and the "certificate holder", we will state the reason for cancellation.

**3.** The following is added to Paragraph **4.** Cancellation in Section **IV.** Conditions:

**Cancellation Of Policies In Effect For 60 Days Or More**

**(1)** If the insured's Certificate Of Insurance has been in effect for 60 days or more, or is a renewal of a Certificate Of Insurance we issued, we may cancel the insured's Certificate Of Insurance only for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

**(c)** Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

**(d)** Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk; \

**(e)** Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

**(f)** Lack of cooperation from the insured on loss control matters materially affecting insurability of the risk;

**(g)** Fraudulent acts against us by the insured or its representative that materially affect the nature of the risk insured;

**(h)** Loss of or reduction in available insurance capacity;

**(i)** Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

**(i)** Loss of or substantial changes in applicable reinsurance;

**(k)** Failure by the insured to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

**(l)** Failure by the insured to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond.

Copyright, Insurance Services Office, Inc.,   1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

L0016997203S102S18

(m) Agency termination, provided:

    **(i)** We document that replacement coverage at comparable rates and terms has been provided to the first Named Insured, and we have informed the first Named Insured, in writing, of the right to continue coverage with us; or

    **(ii)** We have informed the first Named Insured, in writing, of the right to continue coverage with us and the first Named Insured has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first Named Insured's appointed agent.

**(n)** Any other reasons in accordance with our underwriting guidelines for cancellation of commercial lines coverage.

**(2)** If we cancel the insured's Certificate Of Insurance based on Paragraph **(1)(a)** or **(b)** of this condition, we will mail or deliver a written notice, to the entity shown in the Declarations, the "certificate holder" and any person entitled to notice under the insured's Certificate Of Insurance, at least 10 days before the effective date of cancellation. If we cancel the insured's Certificate Of Insurance for any other reason listed above, we will mail or deliver a written notice to the entity shown in the Declarations, the "certificate holder" and any person entitled to notice under the insured's Certificate Of Insurance, not more than 120 days nor less than 30 days before the effective date of such cancellation.

**(3)** In the notice of cancellation which is sent to the entity shown in the Declarations and the "certificate holder", we will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

**(4)** Notice will be sent to the last mailing addresses known to us, by:

    **(a)** Certified mail; or

    **(b)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing names and addresses.

**(5)** We need not send notice of cancellation if you have:

    **(a)** Replaced coverage elsewhere; or

    **(b)** Specifically requested termination.

**Nonrenewal**

**(1)** We may elect not to renew the insured's Certificate Of Insurance for any reason permitted to cancel it. If we elect not to renew the insured's Certificate Of Insurance, we will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the entity shown in the Declarations and the "certificate holder" at least 30 days but not more than 120 days before the expiration date of the insured's Certificate Of Insurance. If this policy does not have a fixed expiration date, it shall be deemed to expire annually on the anniversary of its inception.

**(2)** This notice will be sent to the entity shown in the Declarations and the "certificate holder" at the last mailing address known to us by:

    **(a)** Certified mail; or

    **(b)** First class mail, if we have obtained from the post office a date stamped proof of mailing showing the "certificate holder's" name and address.

**(3)** We need not mail or deliver this notice if you have:

    **(a)** Replaced coverage elsewhere; or

    **(b)** Specifically requested termination.

**4.** The following are added:

**Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with

 Copyright, Insurance Services Office, Inc.,   1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**Premiums**

The first Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

**a.** As if each "certificate holder" were the only "certificate holder"; and

**b.** Separately to each insured against whom a claim is made or a suit is brought.

**D.** The following is added to Section **V.** Definitions

"Certificate holder" means the individual person or organization named in each Certificate Of Insurance purchased under the policy issued to the first Named Insured named in the Declarations.

All other terms and conditions remain unchanged.

Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 12 01 11 85

 GOLDBERG·SEGALLA LLP

David L. Brown | Partner<br>Direct 336.419.4902 | dbrown@goldbergsegalla.com

July 24, 2018

<u>VIA ELECTRONIC MAIL AND U.S. MAIL</u>

Mr. Vito D. Gadaleta
Business Administrator
Neptune Township
25 Neptune Blvd.
Neptune, New Jersey 07753
vgadaleta@neptunetownship.org

Mr. Michael J. Bascom
Chief Financial Officer
Neptune Township
25 Neptune Blvd.
Neptune, New Jersey 07753
mbascom@neptunetownship.org

| | Re: | Lawsuit: | ***Krista Horan v. Neptune Township, et al.*** |
|---|---|---|---|
| | | | **Monmouth County Superior Court** |
| | | | **Civil Part Docket No. L-000306-18** |
| | | Insurer: | **National Casualty Company** |
| | | Named Insured: | Township of Neptune |
| | | Policy No.: | PKONJA0025 |
| | | Claim No.: | 1836153 |

Dear Mr. Gadaleta and Mr. Bascom:

Our firm represents Nationwide acting on behalf of National Casualty Company ("National Casualty"). National Casualty acknowledges receipt of the lawsuit entitled, *"Krista Horan, plaintiff, versus Neptune Township, John Bonney, Stephanie Oppegaard, Vito Gadaleta, John and Jane Does 1-10, and XYZ Corporations 1-10, defendants,"* filed in the Superior Court of New Jersey, Law Division, Monmouth County ("Horan Lawsuit"). National Casualty has reviewed the claims alleged in the Horan Lawsuit and the coverage provided by the Public Entity Policy issued by National Casualty to the Township of Neptune, Policy No. PKONJA0025, for the policy period of January 1, 2016 through January 1, 2017 ("National Casualty Policy"). We take this opportunity to provide you with National Casualty's evaluation of the coverage issues presented by the Horan Lawsuit with respect to the National Casualty Policy.

For the reasons set forth below, the Horan Lawsuit is not covered under the National Casualty Policy. Therefore, National Casualty must respectfully deny any duty to defend or to indemnify the Neptune Township ("Township") or its employees in connection with the Horan Lawsuit.

Mr. Gadaleta
Mr. Bascom
July 24, 2018
Page 2

    In analyzing coverage, National Casualty compared the allegations made, claims asserted and damages sought in the Complaint filed in the Horan Lawsuit to the policy language contained in the National Casualty Policy. A review of the allegations in the Complaint shows that Krista Horan suffers from rheumatoid arthritis and was employed by the Neptune Township Public Library from February 1, 2002 through August 4, 2016. Ms. Horan alleges that during the majority of her employment with the Township, her rheumatoid arthritis was accommodated by the Township through assistance in lifting, flexible scheduling, and preferred parking. Ms. Horan alleges that her treatment by the Township changed when John Bonney was appointed Library Director. After Mr. Bonney was appointed Library Director, Ms. Horan claims that she was subjected to a hostile working environment due to her rheumatoid arthritis, denied reasonable accommodations, and forced to bring in a doctor's note to justify restrictions caused by flare-ups of her rheumatoid arthritis.

    Ms. Horan alleges that ten (10) days after she submitted the requested note from her doctor, she was terminated. Ms. Horan alleges that the reason she was given for her termination was falsifying website related library statistics. However, Ms. Horan believes that this reason was pretext for disability discrimination.

    In the Horan Lawsuit, Ms. Horan asserts two claims: (1) violation of the New Jersey Law Against Discrimination based on disability discrimination – hostile working environment, retaliation, and wrongful discharge; and (2) violation of the New Jersey Law Against Discrimination based on disability discrimination – failure to accommodate. Ms. Horan seeks as damages: back pay, front pay, emotional distress damages, punitive damages, attorneys' fees, costs, interest, declaration of wrongful conduct, and cease and desist order.

    From the information obtained regarding Ms. Horan's claims against the Township, it appears that the Township was first put on notice of Ms. Horan's claims on October 28, 2016. On that date, Ms. Horan's attorney, Jennifer Meyer-Mahoney, sent a letter to Kevin McMillan, Mayor of the Township, indicating that Ms. Horan was terminated in violation of the New Jersey Law Against Discrimination and that Ms. Horan was demanding back pay, reinstatement into a position that was not supervised by John Bonney, discipline against Mr. Bonney, attorneys' fees and compensation for other damages caused by the hostile work environment to which Ms. Horan was subjected. The letter threatened litigation if no response was made by the Township.

    Stephanie Oppegaard acknowledged receipt of the October 28, 2016 letter on November 1, 2016, when she forwarded the letter to Nita Raval, labor counsel for the Township. Ms. Meyer-Mahoney made further demands to settle Ms. Horan's claims on July 5, 2017, August 28, 2017, and September 12, 2017. When Ms. Horan's claims against the Township could not be settled, the Horan Lawsuit was filed on January 25, 2018.

    National Casualty issued the National Casualty Policy to the Township of Neptune. The National Casualty Policy is a claims-made policy and contained an Employment Practices Liability Coverage Part. The liability limits under the Employment Practices Liability Coverage

L00169972040102518

Mr. Gadaleta
Mr. Bascom
July 24, 2018
Page 3

Part are $10 million each Employment Practices Wrongful Act, and $10 million annual aggregate, with a $100,000 deductible for each Employment Practices Wrongful Act.

In order to explain National Casualty's coverage position, we first refer you to the insuring agreement in the National Casualty Policy, which states:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
CLAIMS MADE COVERAGE**

**SECTION I – COVERAGES**

1. INSURING AGREEMENT

   We will pay on behalf of the insured all "loss" resulting from "employment practices wrongful act(s)" but only with respect to "claims" first made against the insured during the "policy period" or Extended Reporting Period. The "employment practices wrongful act(s)" must occur within the "coverage territory."

In its Definitions section, the National Casualty Policy defines the following pertinent terms:

**SECTION VI – EMPLOYMENT PRACTICES
LIABILITY – DEFINITIONS**

Whenever used in this Coverage Form, the following words have these meanings:

2. "Claim" means:

   a. A written notice from any party that is their intention to hold the insured responsible for "loss" resulting from an "employment practices wrongful act" covered by this Coverage Form.

   b. Any notice that requires you to participate in an administrative hearing conducted by the EEOC or by any federal, state or local agency with a similar purpose.

6. "Employment practices wrongful act(s)" means any actual or alleged:

Mr. Gadaleta
Mr. Bascom
July 24, 2018
Page 4

a. "Discrimination" against any of your current, former or prospective "employees" or "volunteer workers";

b. Wrongful termination of any of your current, former or prospective "employees" or "volunteer workers", whether actual or constructive;

c. "Sexual harassment" of any of your current, former or prospective "employees" or "volunteer workers";

d. "Retaliation" against any of your current, former or prospective "employees" or "volunteer workers";

e. Wrongful or unfair discipline of any of your current, former or prospective "employees" or "volunteer workers";

f. Wrongful hiring, supervision, or demotion of, or failure to promote, any of your current, former or prospective "employees" or "volunteer workers";

g. Misrepresentation to, or defamation, libel, slander, disparagement or invasion of privacy of, any of your current, former or prospective "employees" or "volunteer workers"; or

h. Failure to provide or enforce adequate or consistent policies and procedures relating to any "Employment practices wrongful act(s)."

8. "Loss" means any monetary amount, non-monetary, and/or injunctive relief which the insured(s) is legally obligated to pay as a result of "employment practices wrongful act(s)" covered by this Coverage Form and will include, but not be limited to, judgments, settlements, back and front pay and legal fees and expenses of a claimant awarded pursuant to a court order or judgment but "loss" will not include fines imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this Coverage Form will be construed.

In addition, it is important to note the conditions to coverage contained in the National Casualty Policy. Specifically, the National Casualty Policy states:

## SECTION V – CONDITIONS

3. Insured's Duties In The Event Of A "Claim" Or "Suit"

a. In the event of a "claim," immediate written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the

L00169972042102518

Mr. Gadaleta
Mr. Bascom
July 24, 2018
Page 5

           injured and of available witnesses, will be given by or for the
           insured to us or any of our authorized agents;

b.    If a "claim" is made or a "suit" is brought against the insured,
       the insured will immediately forward to us every demand,
       notice, summons or other process received by them or their
       representative;

c.    The insured will cooperate with us and, at our request, consent
       to being examined and questioned by a representative of ours,
       under oath, if necessary, attend hearings, depositions and trials
       and will assist in effecting settlement, securing and giving
       evidence, and obtaining the attendance of witnesses in the
       conduct of "suit(s)," as well as in the giving of written
       statement or statements to our representatives and defense.  In
       the event of a "claim" occurring likely to involve us hereunder,
       the insured will not make any payment, assume any liability or
       incur any expense without our consent first being obtained.
       We will have full discretion in the handling of any "claim," and
       the insured will give us full information and assistance as we
       may reasonably require.

6.  Awareness Provision

a.    If, during the "policy period" or the Extended Reporting
       Period, the insured receives written or oral notice from any
       party that it is the intention of such party to hold the insured
       responsible for any "employment practices wrongful act(s),"
       the insured will give written notice to us as soon as practicable
       but no later than the end of the "policy period" or Extended
       Reporting Period, if applicable.  Any subsequent "claim(s),"
       made against the insured arising out of such "employment
       practices wrongful act(s)" will be deemed to have been made
       during the "policy period" or Extended Reporting Period, if
       applicable.  No coverage for such "claim" shall exist under any
       subsequent policy written by us.  However, if the renewal
       policy is written by us, the insured will have sixty (60) days
       after the expiration date of this policy to report any "claim"
       first made during this "policy period".

b.    In the event of any "claim" occurring hereunder, notice to us
       will be given to the company shown in the Employment
       Practices Liability Coverage Part Supplemental Declarations.

Mr. Gadaleta
Mr. Bascom
July 24, 2018
Page 6

> Notice will be deemed to be received if sent by prepaid mail,
> properly addressed.

The Extended Reporting Period is also specifically defined in the National Casualty
Policy as follows:

## SECTION VII – EXTENDED REPORTING PERIOD – BASIC AND OPTIONAL SUPPLEMENTAL

An Extended Reporting Period, described below, will be provided if this
Coverage Form is nonrenewed or canceled, unless we cancel for
nonpayment of premium or if we renew or replace coverage with
insurance that:

    a.    Has a retroactive date; or

    b.    Provides coverage on other than a Claims-Made basis.

1. A Basic Extended Reporting Period is automatically provided without
   additional charge. This period begins at the end of the "policy period"
   and lasts for sixty (60) days. The Basic Extended Reporting Period
   does not apply to "claim(s)" covered under any subsequent policy.

2. Coverage for an optional Supplemental Extended Reporting Period
   must be added by endorsement and an additional premium charge must
   be paid. Such period starts sixty (60) days after the end of the "policy
   period."

Coverage will only exist if the requirements of the insuring agreement and the conditions
of the National Casualty Policy are met. As noted above, the National Casualty Policy is a
claims-made policy. Accordingly, coverage pursuant to the Policy is only afforded to claims
first made against the insured during the policy period or Extended Reporting Period. The
National Casualty Policy defines "claim" to include written notice from any person indicating
that the person intends to hold the Township responsible for damages caused by an "employment
practices wrongful act," including discrimination, wrongful termination, and retaliation. The
Township received a written letter from Ms. Horan's attorney on October 28, 2016, indicating
that Ms. Horan intended to hold the Township responsible for damages caused by her wrongful
termination based on disability discrimination. Accordingly, Ms. Horan's claim was first made
against the Township on October 28, 2016, within the National Casualty's policy period of
January 1, 2016 through January 1, 2017.

The Conditions contained in the National Casualty Policy required the Township to
provide: (1) immediate written notice of Ms. Horan's claim to National Casualty; and (2) written

Mr. Gadaleta
Mr. Bascom
July 24, 2018
Page 7

notice of Ms. Horan's claim as soon as practicable but not later than the end of the policy period or the Extended Reporting Period. Under the policy provisions cited above, the Township was required to provide National Casualty with written notice of Ms. Horan's claim "immediately" and "as soon as practicable," but not later than March 2, 2017, or sixty (60) days after the expiration of the National Casualty Policy. (Because the National Casualty Policy was not renewed and no Supplemental Extended Reporting Period was purchased by the Township, only the Basic Extended Reporting Period applies.)

The Township failed to provide notice to National Casualty of Ms. Horan's claim immediately, or at the latest by March 2, 2017. The correspondence between Ms. Horan's counsel and the Township's counsel clearly shows that the Township knew about Ms. Horan's claims of disability discrimination and wrongful termination, and understood that Ms. Horan intended to seek damages resulting from these claims prior to March 2, 2017. The National Casualty Policy required the Township to provide written notice of this claim to National Casualty by or before March 2, 2017. The Township failed to abide by this condition of the National Casualty Policy. Accordingly, there is no coverage under the National Casualty Policy for the Horan Lawsuit.

In sum, National Casualty concludes that there is no coverage afforded to the Township and its employees under the National Casualty Policy for the Horan Lawsuit. As a result, National Casualty respectfully denies coverage for this lawsuit, including any duty to defend or to indemnify the Township and its employees with respect to Ms. Horan's claims.

By specifically citing the above referenced policy terms, National Casualty does not waive its right to deny coverage based on other terms, definitions, exclusions and conditions contained in its policy. National Casualty specifically reserves all of its rights under its policy and under applicable law, including but not limited to the right to file an action asking a court to determine the rights of the parties to the National Casualty Policy. The issues raised by this letter are not intended to be exhaustive or exclusive. Our failure to cite other policy language at this time does not preclude National Casualty from raising other defenses in the future should the situation so warrant.

National Casualty has denied coverage based on the information available to it at this time. However, if during the course of the litigation, other information becomes available which may impact or alter this decision, please provide that information to us for consideration.

If you have any questions about the content of this letter, please do not hesitate to contact me.

L0016997204510251B

Mr. Gadaleta
Mr. Bascom
July 24, 2018
Page 8

Very truly yours,

GOLDBERG SEGALLA LLP

David L. Brown

DLB:mpb

cc:   Ted Wardell (via email only at:  twardell@advisorsbb.com)
      Maryann Leuthe (via email only at:  maleuthe@sifnj.com)
      Deborah Rosenthal (via email only at:  rosen3@nationwide.com)

L0016997204710251B



# Lloyd's Certificate

**This Insurance** is effected with certain Underwriters at Lloyd's, London.

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

**The Assured** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

**Brit Global Specialty USA**
**161 North Clark Street, Suite 3200**
**Chicago, IL 60601**
**USA**

SLC-3 (USA) NMA2868 (4/22/13)

### Certificate Provisions

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declarations.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as set forth in this Certificate. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 1 of the attached Declarations, and that in any suit instituted against any one of them upon this Certificate, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The Correspondent is authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance on behalf of Underwriters in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this Certificate, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.
   LMA5020
   14/09/2005

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

L00169972049102518

## Short Rate Cancellation Table For Term of One Year.

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 – 69 | 29% | 154 – 156 | 53% | 256 – 260 | 77% |
| 2 | 6 | 70 – 73 | 30 | 157 – 160 | 54 | 261 – 264 | 78 |
| 3 – 4 | 7 | 74 – 76 | 31 | 161 – 164 | 55 | 265 – 269 | 79 |
| 5 – 6 | 8 | 77 – 80 | 32 | 165 – 167 | 56 | 270 – 273 ( 9 mos ) | 80 |
| 7 – 8 | 9 | 81 – 83 | 33 | 168 – 171 | 57 | 274 – 278 | 81 |
| 9 – 10 | 10 | 84 – 87 | 34 | 172 – 175 | 58 | 279 – 282 | 82 |
| 11 – 12 | 11 | 88 – 91 ( 3 mos ) | 35 | 176 – 178 | 59 | 283 – 287 | 83 |
| 13 – 14 | 12 | 92 – 94 | 36 | 179 – 182 ( 6 mos ) | 60 | 288 – 291 | 84 |
| 15 – 16 | 13 | 95 – 98 | 37 | 183 – 187 | 61 | 292 – 296 | 85 |
| 17 – 18 | 14 | 99 – 102 | 38 | 188 – 191 | 62 | 297 – 301 | 86 |
| 19 – 20 | 15 | 103 – 105 | 39 | 192 – 196 | 63 | 302 – 305 ( 10 mos ) | 87 |
| 21 – 22 | 16 | 106 – 109 | 40 | 197 – 200 | 64 | 306 – 310 | 88 |
| 23 – 25 | 17 | 110 – 113 | 41 | 201 – 205 | 65 | 311 – 314 | 89 |
| 26 – 29 | 18 | 114 – 116 | 42 | 206 – 209 | 66 | 315 – 319 | 90 |
| 30 – 32 ( 1 mos ) | 19 | 117 – 120 | 43 | 210 – 214 ( 7 mos ) | 67 | 320 – 323 | 91 |
| 33 – 36 | 20 | 121 – 124 ( 4 mos ) | 44 | 215 – 218 | 68 | 324 – 328 | 92 |
| 37 – 40 | 21 | 125 – 127 | 45 | 219 – 223 | 69 | 329 – 332 | 93 |
| 41 – 43 | 22 | 128 – 131 | 46 | 224 – 228 | 70 | 333 – 337 ( 11 mos ) | 94 |
| 44 – 47 | 23 | 132 – 135 | 47 | 229 – 232 | 71 | 338 – 342 | 95 |
| 48 – 51 | 24 | 136 – 138 | 48 | 233 – 237 | 72 | 343 – 346 | 96 |
| 52 – 54 | 25 | 139 – 142 | 49 | 238 – 241 | 73 | 347 – 351 | 97 |
| 55 – 58 | 26 | 143 – 146 | 50 | 242 – 246 ( 8 mos ) | 74 | 352 – 355 | 98 |
| 59 – 62 ( 2 mos ) | 27 | 147 – 149 | 51 | 247 – 250 | 75 | 356 – 360 | 99 |
| 63 – 65 | 28 | 150 – 153 ( 5 mos ) | 52 | 251 – 255 | 76 | 361 – 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.   If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.   If insurance has been in force for more than one year:

1.   Determine full annual premium as for insurance written for a term of one year.

2.   Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the Policy was originally written.

3.   Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

## Declarations

This Policy (and any documents referred to in it) contains the whole agreement between Underwriters and the NAMED ASSURED relating to the insurance provided by this Policy; and supersedes all previous understandings and agreements between Underwriters and the NAMED ASSURED relating to the terms and conditions of this Policy.

Please note that words or terms that appear in bold and capitalized are defined within the Policy.

**Previous Policy No:**     PK1006317

**Authority Ref. No:**     B0356JA281N18

**Policy No:**     PK1006318

1.     **NAMED ASSURED:**

Garden State Municipal Joint Insurance Fund

2.     **NAMED ASSURED Address:**

900 Route 9N
Suite 503
Woodbridge, NJ 07095

3.     **Effective date:**   January 1, 2018
**Expiration date:** January 1, 2019
both days at 12:01 a.m. local standard time.

4.     **Insurance is effective with certain Underwriters at Lloyd's, London (Brit Syndicate 2987).**

Percentage: 100.00%

5.     **Coverage:**

**ALL RISKS OF DIRECT PHYSICAL LOSS TO PROPERTY, AUTOMOBIL PHYSICAL DAMAGE, GENERAL LIABILITY, AUTOMOBILE LIABILITY, PUBLIC OFFICIALS MISCELLANEOUS LIABILITY, WORKERS COMPENSATION, EMPLOYEE BENEFITS LIABILITY, LAW ENFORCEMENT LIABILITY,** and as more fully defined in the attached wording which is understood to be incorporated in and form part of this Certificate.

6.     **Forms attached hereto and special conditions:**

The Public Entity Package Wording and agreed Endorsements as per **Schedule of Endorsements** attached.

**Wherever the attached wordings refer to this 'Policy' it is deemed to mean this 'Certificate'.**

Territorial Limits: Worldwide as more fully defined in the attached wording.

Choice of Law: New Jersey

Jurisdiction: United States of America

Limits of Liability: Underwriters' Limits of Liability shall not exceed the limits as indicated for each

L00169972051102518

coverage section on the attached wording or Declarations and apply only to those coverages for which a limit is shown. Underwriters Limits of Liability are excess over a **SELF INSURED RETENTION** and a **LOSS FUND** (if applicable) as specified in the attached wording.

7. **Service of Suit may be made upon:**

   Walker Wilcox Matousek LLP, One North Franklin Street, Suite 3200, Chicago, IL 60606.

8. **In the event of a reportable claim as per General Policy Condition 7, the THIRD PARTY CLAIMS ADMINISTRATOR must notify the following:**

   By email (*Preferred method*):
      USA.Claims@britinsurance.com

   By mail:
      Brit Global Specialty USA, 161 North Clark Street, Suite 3200
      Chicago, IL 60601 USA

   By telephone:
      +1 (312) 577-9450

9. **Currency Clause:**

   All premiums, limits, deductibles, claims and other amounts under this Policy are expressed and payable in United States Dollars.

   The dollar symbol ($) used within this Policy represents United States Dollars.

10. **Policy Premium:**

    Gross Premium

11. **Minimum Earned Premium:**


    The minimum earned premium is 50% of the annual Policy Premium. If the Policy is cancelled at the **NAMED ASSURED'S** request, or by Underwriters for non-payment of premium, the minimum earned premium will be the greater of either the Minimum Earned Premium above or the premium as calculated by the Short Rate Cancellation Table in this Policy.


Authorized Correspondent signatory:          Brit Global Specialty USA.


Dated:    20-APR-2018

## Several Liability Notice

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

L00169972053102518

**Complaints Procedure**

*We* strive to provide an excellent service to all *Our* customers but occasionally things can go wrong. *We* take all concerns seriously and endeavour to resolve all customers' problems promptly. If *You* have a question or concern about *Your* policy *You* should, in the first instance follow the guidance notes or instructions in the insurance documentation *You* have been sent. *Your* broker will also be able to advise *You* and provide assistance in this regard.

Alternatively, if *You* wish to contact *Us* directly *You* should either write or telephone:

> **The Complaints Department**
> **Brit Syndicates Limited**
> 122 Leadenhall Street
> London
> EC3V 4AB
> Telephone: 020 3857 0000
> Email: BGS.Complaints@britinsurance.com

In the unlikely event that *You* remain dissatisfied and wish to make a complaint *You* can do so at any time by referring the matter to *Us* at the above stated address or the Complaints Team at Lloyd's at the following address:

> **Complaints Team**
> **Lloyd's**
> Fidentia House
> Walter Burke Way
> Chatham Maritime
> Chatham, Kent ME4 4RN
> Telephone: 020 7327 5693
> Facsimile: 020 7327 5225
> E-mail: complaints@lloyds.com

Details of Lloyd's complaints procedure are set out in a leaflet "Your Complaint – How We Can Help" available at www.lloyd's.com/complaints and are also available from the above address.

Should *You* remain dissatisfied after Lloyd's has considered your complaint and *You* are NOT a policyholder in the UK, *You* should, in the first instance, seek advice from *Your* broker as to whom *You* should direct your complaint.

L00169972054102518

## SCHEDULE OF ENDORSEMENTS

The following Endorsements attach to and form part of the terms and conditions of this Policy:

| Endorsement No. | Title |
|---|---|
| 1 | Failure to Supply Exclusion for Gas and Electric utilities (Amended) (Removed and replaced by |
| 2 | Named Assured Endorsement                              endorsement 37) |
| 3 | TRIA – Accepted |
| 4 | Section IV & VI Amendatory – Retroactive Coverage |
| 5 | Sections II, III, IV, and VIII – Corridor Retention Endorsement |
| 6 | Personal Injury Protection (No Fault) Rejection |
| 7 | Installment Premium |
| 8 | Section II – Mold/Fungal Pathogens Liability Coverage |
| 9 | Maintenance Deductibles and Co-Pay Amounts |
| 10 | Amendatory Endorsement Cancellations / Non-Renewal |
| 11 | Unintentional Errors and Omissions |
| 12 | Section IV Public Officials Miscellaneous Liability – Amendatory Endorsement |
| 13 | Section V Extension – Part B Employer's Liability Only coverage |
| 14 | Other Insurance Clause |
| 15 | Additional Assured Endorsement – Port Authority |
| 16 | Jones Act and U.S.L & H Act Exclusion Deleted |
| 17 | Section V - Loss Corridor of $250,000 / $500,000 |
| 18 | Section V Workers Compensation – Volunteer Workers |
| 19 | Section V Workers Compensation–Foreign Workers' Compensation and Employers Liability |
| 20 | Same Communicable Disease |
| 21 | Coverage Extension Endorsement – Stop-Gap Employers Liability |
| 22 | Additional Assured – Maxwell Place Condominium |
| 23 | Additional Assured Endorsement – State of New Jersey and the County of Union, New Jersey |
| 24 | Additional Assured Endorsement – Quasi Entities |
| 25 | General Policy Conditions Amendment – Notification of Claims, Occurrences or Suits |
| 26 | Procedures for In-House Claims Administrators |
| 27 | Section I- Flood Zone A Coverage Endorsement |
| 28 | General Policy Exclusions – Pollution Exclusion Amendment |
| 29 | General Policy Exclusions – Cyber Exclusion Amendment |
| 30 | Clash Coverage Amendment |
| 31 | General Policy Conditions – Delete False, Fraudulent Claims |
| 32 | Section II Exclusion D Amendment |
| 33 | Section II Definition 4 Amendment |
| 34 | Section III Insuring Agreement C Amendment |
| 35 | Coverage Section IV – Non-Monetary Claim Defense Sublimit |
| 36 | Public Relations Sublimit for Crisis Events |

SOE 02/15

## Schedule of SELF INSURED RETENTIONS

This Policy has the following underlying **SELF INSURED RETENTIONS**, which apply to a covered loss for each **OCCURRENCE** or **CLAIM**.

**MAINTENANCE DEDUCTIBLES** are payable by the **ASSURED** and only apply when an amount is filled in. **MAINTENANCE DEDUCTIBLES** do not apply to the erosion of the **LOSS FUND**.

| | Coverage Section | SELF INSURED RETENTION | MAINTENANCE DEDUCTIBLE |
|---|---|---|---|
| I | **Property** unless listed below: | $50,000 | See Endorsement 9 |
| | **AUTOMOBILE** Physical Damage: | $50,000 | See Endorsement 9 |
| | **FLOOD AND SURFACE WATER:** | $50,000 | See Endorsement 9 |
| | **EARTHQUAKE:** | $50,000 | See Endorsement 9 |
| | **NAMED WINDSTORM:** | $100,000 | See Endorsement 9 |
| II | **General Liability:** | $250,000 | See Endorsement 9 |
| | **SEXUAL HARASSMENT** Liability: | $250,000 | See Endorsement 9 |
| | **SEXUAL ABUSE** Liability: | $250,000 | See Endorsement 9 |
| III | **AUTOMOBILE Liability:** | $250,000 | See Endorsement 9 |
| | Garagekeeper's Legal Liability: | $50,000 | See Endorsement 9 |
| IV | **Public Officials Miscellaneous Liability:** unless listed below: | $350,000 | See Endorsement 9 |
| | Errors & Omissions: | $350,000 | See Endorsement 9 |
| | Employment Practice Liability: | $350,000 | See Endorsement 9 |
| | **SEXUAL HARASSMENT** Liability: | $350,000 | See Endorsement 9 |
| | **SEXUAL ABUSE** Liability: | $350,000 | See Endorsement 9 |
| V | **Excess Workers' Compensation and Employers' Liability for a qualified self-insurer:** | | |
| | Coverage A Excess Workers' Compensation: | $750,000 | See Endorsement 9 |
| | Coverage B Excess Employers' Liability: | $750,000 | See Endorsement 9 |
| VI | **Employee Benefits Liability:** | $150,000 | $0 |
| VII | **Crime:** | | |
| | **MONEY** and **SECURITIES:** | NOT COVERED | NOT APPLICABLE |
| | Forgery or Alteration: | NOT COVERED | NOT APPLICABLE |
| | **EMPLOYEE** Dishonesty: | NOT COVERED | NOT APPLICABLE |
| VIII | **Law Enforcement Liability:** | $350,000 | See Endorsement 9 |
| | **SEXUAL HARRASSMENT** Liability: | $350,000 | See Endorsement 9 |
| | **SEXUAL ABUSE** Liability: | $350,000 | See Endorsement 9 |

PKG.Ver.Aug.2016

IX **Terrorism:**                                    NOT COVERED
   Property Terrorism:                           NOT COVERED
   Liability Terrorism:                          NOT COVERED
   Employers Liability Terrorism:                NOT COVERED

   **LOSS FUND:**                                $23,596,000 in the Aggregate Annually

### Specific Excess Insurance

1. This Policy contains various **SELF INSURED RETENTIONS** as listed in the **Schedule of SELF INSURED RETENTIONS** of this Policy. The **ASSURED** is responsible for payment of each applicable **SELF INSURED RETENTION** except as otherwise stated in **Clash Coverage** and **Excess LOSS FUND Protection.**

2. This Policy contains various **Specific Excess Limits of Insurance** above the **SELF INSURED RETENTIONS** as listed in the **Schedule of Specific Excess Limits of Insurance.**

3. This Policy contains various Annual Aggregate **Excess Limits of Insurance** as listed in **the Schedule of Specific Excess Limits of Insurance.** Underwriters' duty to indemnify under this Policy ends when the applicable Annual Aggregate **Excess Limit of Insurance** has been exhausted by payments to the **ASSURED.**

4. This Policy provides coverage in accordance with all of the terms of each Coverage Section attached to and forming part of this Policy. For **Coverage Section IV Public Officials Miscellaneous Liability,** and **Coverage Section VI Employee Benefits Liability,** coverage is provided on a Claims Made basis. Claims Made coverage applies only to claims made against the **ASSURED** during the **PERIOD OF INSURANCE** or Extended Reporting Periods, if applicable.

5. It is understood and agreed that if more than one Insuring Agreement under any Coverage Section hereunder is involved in one **CLAIM** or **OCCURRENCE,** then the highest **SELF INSURED RETENTION** and **Specific Excess Limit of Insurance** for each **CLAIM** or **OCCURRENCE,** in respect to that Coverage Section, shall apply.

### Schedule of Specific Excess Limits of Insurance

**Coverage Section I Property:**
**Specific Excess Limit of Insurance** for each **OCCURRENCE:**

| | | |
|---|---|---|
| All coverages under Section I combined: | NIL | |
| Subject to the following **SUBLIMITS**/Annual aggregates: | | |
| **AUTOMOBILE** Physical Damage Only: | NIL | |
| **FLOOD AND SURFACE WATER:** | NIL | NIL Annual Aggregate |
| **EARTHQUAKE:** | NIL | NIL Annual Aggregate |
| **NAMED WINDSTORM:** | NIL | |
| **DATA PROCESSING EXTRA EXPENSE:** | NIL | |
| **DATA PROCESSING SYSTEMS EQUIPMENT:** | NIL | |
| **DATA PROCESSING MEDIA:** | NIL | |
| **VALUABLE PAPERS:** | NIL | |
| **FINE ARTS:** | NIL | |
| **ACCOUNTS RECEIVABLE:** | NIL | |
| **EXTRA EXPENSE:** | NIL | |
| **MOBILE EQUIPMENT:** | NIL | |
| Transit: | NIL | |
| **BUSINESS INCOME** including **RENTAL VALUE:** | NIL | |
| **BUSINESS INCOME** other than **RENTAL VALUE:** | NIL | |
| **RENTAL VALUE:** | NIL | |
| Tuition And Fees: | NIL | |

PKG.Ver.Aug.2016

Newly Acquired Property Reporting Limit as provided in
Coverage Section I Conditions, Automatic Acquisition
Clause:                                           NOT COVERED

**Coverage Section II General Liability:**
    **Specific Excess Limit of Insurance** for each OCCURRENCE:
        All coverages under Coverage Section II combined:    $14,750,000    $14,750,000 Annual Aggregate *

Subject to the following **SUBLIMITS**/Annual Aggregates which are part of, and not in addition to, the **Coverage
Section II General Liability Specific Excess Limit of Insurance** and Annual Aggregate Limit above:

| | | |
|---|---|---|
| **SEXUAL HARASSMENT** Liability: | $14,750,000 | $14,750,000 Annual Aggregate* |
| **SEXUAL ABUSE** Liability: | $14,750,000 | $14,750,000 Annual Aggregate* |
| Damage to the Premises Rented to the **ASSURED** | $2,500,000 | Ground Up Any One OCCURRENCE |
| | | $2,500,000 Annual Aggregate* |
| Premises Medical Payments: | $1,000 | N/A Ground Up Any One Person |
| | $50,000 | N/A Ground Up Any One OCCURRENCE |

*__Annual Aggregates are per Member__*

**Coverage Section III AUTOMOBILE Liability:**
    **Specific Excess Limit of Insurance** for each OCCURRENCE:
    All Coverages under Coverage Section III combined:    $14,750,000   N/A Annual Aggregate

Subject to the following **SUBLIMITS**/Annual Aggregates which are part of, and not in addition to, the **Coverage
Section III AUTOMOBILE Liability Specific Excess Limit of Insurance** and Annual Aggregate Limit above:

| | | |
|---|---|---|
| **AUTOMOBILE MEDICAL PAYMENTS:** | $5,000 | Ground Up Any One Person |
| | $50,000 | Ground Up Any One OCCURRENCE |
| Uninsured Motorists/Underinsured Motorists: | $15,000 | Ground Up Any One Person |
| | $30,000 | Ground Up Any One OCCURRENCE |
| | $5,000 | Ground Up For Property Damage |
| No Fault Insurance: | NOT COVERED | Ground Up Any One OCCURRENCE |
| Garagekeeper's Legal Liability: | $2,500,000 | Ground Up Any One OCCURRENCE |

**Coverage Section IV Public Officials Miscellaneous Liability:**
    **Specific Excess Limit of Insurance** for each CLAIM:
    All Coverages under Coverage Section IV combined:    $14,650,000    $14,650,000 Annual Aggregate*
                                               $30,000,000 Pool Annual Aggregate

Subject to the following **SUBLIMITS**/Annual Aggregates which are part of, and not in addition to, the **Coverage
Section IV Public Officials Miscellaneous Liability – Specific Excess Limit of Insurance** and Annual
Aggregate Limit above:

| | | |
|---|---|---|
| Errors & Omissions: | $14,650,000 | $14,650,000 Annual Aggregate* |
| Retroactive Date: <u>See Endorsement No. 4</u> | | |
| Employment Practice Liability: | $14,650,000 | $14,650,000 Annual Aggregate* |
| Retroactive Date: <u>See Endorsement No. 4</u> | | |
| **SEXUAL HARASSMENT** Liability: | $14,650,000 | $14,650,000 Annual Aggregate* |
| Retroactive Date: <u>See Endorsement No. 4</u> | | |
| **SEXUAL ABUSE** Liability: | $14,650,000 | $14,650,000 Annual Aggregate* |
| Retroactive Date: <u>See Endorsement No. 4</u> | | |

*__Annual Aggregates are per Member__*

PKG.Ver.Aug.2016

**Coverage Section V Excess Workers' Compensation and Employers' Liability for a Qualified Self-Insurer:**
**Specific Excess Limit of Insurance** for each **OCCURRENCE:**

| | |
|---|---|
| Coverage A Excess Workers' Compensation: | $250,000 |
| Coverage B Excess Employers' Liability: | $250,000 |

**Coverage Section VI Employee Benefits Liability:**
**Specific Excess Limit of Insurance** for each **CLAIM:**

All Coverages under Coverage Section VI Combined:   $14,850,000      $14,850,000 Annual Aggregate*
Retroactive Date: See Endorsement No.4

*Annual Aggregates are per Member*

**Coverage Section VII Crime:**
**Specific Excess Limit of Insurance** for each **OCCURRENCE:**

| | |
|---|---|
| **MONEY & SECURITIES:** | NOT COVERED |
| Forgery or Alteration: | NOT COVERED |
| **EMPLOYEE** Dishonesty: | NOT COVERED |

**Coverage Section VIII Law Enforcement Liability:**
**Specific Excess Limit of Insurance** for each **OCCURRENCE:**
All coverages under Coverage Section VIII combined:  . $14,650,000      $14,650,000 Annual Aggregate*

Subject to the following **SUBLIMITS**/Annual Aggregates which are part of, and not in addition to, the **Coverage Section VIII Specific Excess Limit of Insurance** and Aggregate Limit above:

| | | |
|---|---|---|
| **SEXUAL HARASSMENT** Liability: | $14,650,000 | $14,650,000 Annual Aggregate* |
| **SEXUAL ABUSE** Liability: | $14,650,000 | $14,650,000 Annual Aggregate* |

*Annual Aggregates are per Member*

**Coverage Section IX Terrorism:**
**Specific Excess Limit of Insurance** for each **OCCURRENCE:**

| | | |
|---|---|---|
| Property Terrorism: | NOT COVERED | N/A Annual Aggregate |
| Liability Terrorism: | NOT COVERED | N/A Annual Aggregate |
| Employers' Liability Terrorism: | NOT COVERED | N/A Annual Aggregate |

### Clash Coverage

1.   In the event of a covered loss involving more than one Coverage Section, the **ASSURED** will only be liable for one **SELF INSURED RETENTION**. This will be the **SELF INSURED RETENTION** for the Coverage Section that results in the largest **ULTIMATE NET LOSS**.

2.   Underwriters will indemnify the **ASSURED** for **ULTIMATE NET LOSS** arising within each **SELF INSURED RETENTION** applicable to the Coverage Section involved in the loss, less the **SELF INSURED RETENTION** determined in Paragraph 1. above.

3.   Indemnity paid under Clash Coverage is in addition to amounts payable under the **Schedule of Specific Excess Limits of Insurance**.

Clash Coverage does not apply to **Coverage Section IX – Terrorism.**

PKG.Ver.Aug.2016

L00169972059102518

## Excess LOSS FUND Protection

**Excess Loss Fund Protection Annual Aggregate Limit:** $5,000,000 Annual Aggregate

1.  This Policy contains various **SELF INSURED RETENTIONS** as listed in the **Schedule of SELF INSURED RETENTIONS** of this Policy.  The **ASSURED** is responsible for the payment of applicable **SELF INSURED RETENTIONS** in accordance with the terms and conditions of this Policy.

2.  The **ASSURED'S LOSS FUND** is the aggregate amount stated in the **Schedule of SELF INSURED RETENTIONS** to be paid by the **ASSURED** for covered loss amounts incurred during the **PERIOD OF INSURANCE** within the **ASSURED'S SELF INSURED RETENTION**. This coverage applies only if an **Excess Loss Fund Protection Limit** is stated above and a corresponding **LOSS FUND** amount stated in the **SCHEDULE OF SELF INSURED RETENTIONS**.

3.  If there is an applicable **MAINTENANCE DEDUCTIBLE** underlying the **SELF INSURED RETENTION**, this **MAINTENANCE DEDUCTIBLE** is not considered part of the **SELF INSURED RETENTION**, and does not accrue to the exhaustion of the **LOSS FUND**.

4.  Each payment made by the **ASSURED** for covered loss amounts within the applicable **SELF INSURED RETENTION** shall reduce the outstanding **LOSS FUND** by the amount of such payment until the **LOSS FUND** is exhausted.  Upon exhaustion of the **LOSS FUND** stated in the **Schedule of SELF INSURED RETENTIONS**, Underwriters obligation to indemnify the **ASSURED** begins for covered loss amounts within the **SELF INSURED RETENTION**.

5.  The amount of **Excess LOSS FUND Protection** payment(s) made by Underwriters to the **ASSURED**:

(a)  Shall not be for more than the applicable **SELF INSURED RETENTION**; <u>and</u>

(b)  Shall not be greater than the **Excess LOSS FUND Protection Annual Aggregate Limit**, as stated under **Excess LOSS FUND Protection**.

6.  Each **Excess LOSS FUND Protection** payment made reduces Underwriters' **Excess LOSS FUND Protection Annual Aggregate Limit** by the amount of such payment.

7.  Underwriters' duty to indemnify under **Excess LOSS FUND Protection** ends when the **Excess LOSS FUND Protection Annual Aggregate Limit** has been exhausted by payments to the **ASSURED**.

PKG.Ver.Aug.2016

This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund.

SANJ0115

## General Policy Conditions

Underwriters assume no other obligation or liability to the **ASSURED** to indemnify sums or perform acts or services unless explicitly provided under this Policy.

These conditions shall survive the termination of this Policy without regard to whether said termination is due to cancellation or natural expiration of this Policy.

1. **Abandonment:** There shall be no abandonment to Underwriters of any property.

2. **Arbitration:** In the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters under the terms and conditions of this Policy, each party shall name a competent and disinterested arbitrator, and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire.

   The award in writing, duly verified by any two, shall determine the points in question. Both parties shall pay the cost of their arbitrators and equally pro rate the cost of the umpire. The **ASSURED'S** portion of such fee does not accrue to the **ULTIMATE NET LOSS**.

   The decision by the arbitrators shall be binding on Underwriters and the **ASSURED,** and that judgment may be entered in any court of competent jurisdiction.

3. **Assignment:** Assignment of interest under this Policy does not bind Underwriters' unless Underwriters consent is endorsed hereon.

4. **Bankruptcy and Insolvency:** In the event of the bankruptcy or insolvency of the **ASSURED** or any entity comprising the **ASSURED,** Underwriters shall not be relieved of the payment of any covered loss amounts hereunder because of such bankruptcy or insolvency, but Underwriters shall be liable only to the same extent had there been no bankruptcy or insolvency.

5. **Cancellation and Non-Renewal:** In the event of non-payment of premium by the **NAMED ASSURED,** Underwriters will give ten (10) days' notice of cancellation in writing to the **NAMED ASSURED** and all coverage will terminate ten (10) days after the mailing of such notice. If Underwriters cancel, the earned premium is calculated pro rata, and the **NAMED ASSURED** is responsible for the full annual amount of the **LOSS FUND** as stipulated in **Excess Loss Fund Protection.**

   The **NAMED ASSURED** shown on the Declarations may cancel this Policy by giving thirty (30) days' notice of cancellation in writing. If the **NAMED ASSURED** cancels, the earned premium is calculated in accordance with the short rate table and procedure subject to the minimum earned premium. The **NAMED ASSURED** is responsible for the full annual amount of the **LOSS FUND** as stipulated in **Excess Loss Fund Protection.**

   If the period of limitation relating to the giving of notice is prohibited or made void by any law, such period is amended to provide the minimum period of limitation permitted by such law.

   **Non-Renewal:** Either the **NAMED ASSURED** or Underwriters may elect to non-renew this Policy at its expiration date for any reason.

6. **Changes:** By acceptance of this Policy the **ASSURED** agrees that it embodies all agreements existing between the **ASSURED** and Underwriters or any of their agents relating to this Policy. None of the provisions, conditions or other terms of this Policy shall be waived or altered except by endorsement; nor shall notice to any agent or knowledge possessed by any agent or by any other person be held in effect a waiver or change to any part of this Policy.

Pkg2016.1

L00169972062102518

7.    CLAIMS, OCCURRENCES or SUITS: The ASSURED shall as soon as practical notify Underwriters through the ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR of any CLAIM, OCCURRENCE or SUIT meeting the following criteria:

(a)    The cost of which is likely to result in payment by Underwriters under this Policy;

(b)    All claims reserved at 75% or more of SELF INSURED RETENTION;

(c)    Catastrophic losses (including Paraplegia, Quadriplegia, Severe Burns, Fatalities, Significant Brain Injury, Amputation of Major Extremity);

(d)    SEXUAL ABUSE claims;

(e)    Discrimination or Violation of Civil Rights where the claim is reserved at 50% or more of the SELF INSURED RETENTION or within ninety (90) days of a trial date, whichever is sooner;

(f)    Third-party claims involving LAW ENFORCEMENT ACTIVITIES;

(g)    Act or series of ACTS OF TERRORISM;

(h)    Any claims where there is a question as to whether there will be coverage under this Policy.

Underwriters shall have the right but not the duty to be associated with the ASSURED in the investigation, handling, defense or settlement of any claims, SUIT or proceedings relative to an OCCURRENCE or CLAIM where in the opinion of the Underwriters, their liability under this Policy is likely to be involved; in which case the ASSURED and Underwriters shall co-operate to the mutual advantage of both.

The ASSURED shall make no commitment to pay or settle any CLAIMS, OCCURRENCES or SUITS where Underwriters liability under this Policy is involved without the prior agreement of Underwriters. Underwriters shall not withhold agreement without just cause. Neither shall the ASSURED refuse any reasonable opportunity to pay or settle a claim that will result in Underwriters having liability under this Policy without the prior agreement of Underwriters. Underwriters shall not withhold agreement without just cause. If the ASSURED refuses to consent to settlement of any CLAIMS, OCCURRENCES or SUITS where Underwriters liability under this Policy is potentially involved, and settlement or compromise is recommended by Underwriters and acceptable to the claimant, then calculation of, and Underwriters obligation under ULTIMATE NET LOSS with respect to the CLAIMS, OCCURRENCES or SUITS shall be limited to the amount of damages or payments for which the CLAIMS, OCCURRENCES or SUITS could have been settled for, plus any expenses payable under ULTIMATE NET LOSS incurred until the date of the ASSURED'S refusal to settle or compromise the CLAIMS, OCCURRENCES or SUITS as recommended by Underwriters.

8. **Conflicting Statutes:** If any terms of this Policy conflict with the statutes of the state in which this Policy is issued, those terms are amended to conform to such statutes.

9. **Currency:** The premium and losses under this Policy are payable in United States currency. Payment of premium shall be made to Underwriters or via the **NAMED ASSURED's** intermediary.

10. **Due Diligence:** The **ASSURED** shall use due diligence and concur in doing all things reasonably practical to avoid or diminish any loss of or damage to the property insured.

11. **Duties:** Underwriters have no duty to investigate, handle, adjust, settle or defend any **CLAIM**, **OCCURRENCE**, proceeding or **SUIT** against the **NAMED ASSURED**, any **ASSURED**, or against any other person or organization for whom the **NAMED ASSURED** is, or may be found to be, legally liable, or whom asserts or claims a right of coverage under the Policy. These duties shall be the responsibility of the **NAMED ASSURED.**

Underwriters' duty under the Policy shall be to indemnify the **NAMED ASSURED** for **ULTIMATE NET LOSS** in excess of the applicable **SELF INSURED RETENTION, MAINTENANCE DEDUCTIBLE**, or any other applicable deductible or deduction; and not more than the **Specific Excess Limit of Insurance.**

Underwriters' duty to indemnify ends when the applicable **Specific Excess Limit of Insurance** is exhausted by the payment of the **ULTIMATE NET LOSS.**

Underwriters may, at their sole discretion, tender periodic advance payments of amounts in excess of the **SELF INSURED RETENTION**, before **ULTIMATE NET LOSS** as defined in the Policy is reached; provided that:

(a) Only amounts where coverage is not in dispute will be used to compute the partial **ULTIMATE NET LOSS**; and

(b) Only payments made by the **NAMED ASSURED** and not disputed by Underwriters will be used to compute the partial **ULTIMATE NET LOSS**; and

(c) Any potential **RECOVERY** source has been identified; has been put on notice if appropriate; and **RECOVERY** is being aggressively pursued; and

(d) Delaying payment until the final **ULTIMATE NET LOSS** is determined will result in financial hardship to the Assured; and

(e) All payments are without prejudice.

Further, and in regard to advance payments under **SECTION I – PROPERTY**; advance payments will be based upon **ACTUAL CASH VALUE** for property that is not being actively repaired or replaced.

This condition shall survive the termination of this Policy without regard to whether said termination is due to cancellation or natural expiration of this Policy.

12. **False or Fraudulent Claims:** If the **ASSURED** shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claims hereunder shall be forfeited.

13. **Inspections / Audits / Verification of Values:** Underwriters or their duly authorized representatives may inspect the premises used by the **ASSURED** and audit the **ASSURED'S** books or records at any time during the **PERIOD OF INSURANCE** or within three (3) years after its

L00169972064102518

expiration or termination. Underwriters assume no liability and will not be made liable for their right to make inspections or audit or not make inspections or not audit, or for their results, findings or reports, nor shall any inspection warranty the safety of a premises or an audit confirm the accuracy of books or records.

14. **Mortgage:** Underwriters will pay for covered losses of or damage to property to each mortgage holder, lienholder or creditor to the extent of their interest as of the date of loss or damage subject to the limits of insurance as states in the **Declarations** and subject to all terms and conditions of this Policy.

15. **Other Insurance:** If the ASSURED has other insurance against loss or damage covered under this Policy, Underwriters are liable, under the terms of this Policy, only as excess of coverage provided by such other insurance. No monies payable or collectible from such other insurance shall accrue to the **LOSS FUND**. However, this clause does not apply to the purchase of excess insurance above the **Specific Excess Limits of Insurance** stated in the **Schedule of Specific Excess Limits of Insurance** of this Policy.

16. **Representations:** By accepting this Policy and as a condition precedent to coverage, the **ASSURED** agrees that:

    (a) The information contained within the **Declarations** is complete and accurate and is based upon representations made by the **ASSURED** to Underwriters in the submission and/or application(s) for this Policy;

    (b) Underwriters have issued this Policy in reliance upon the **ASSURED'S** representations in the submission and/or application(s);

    (c) Except as otherwise provided in this Policy or by law, this Policy is void in any case of fraud; or, if the **ASSURED** conceals or misrepresents any material facts in the **ASSURED'S** submission and/or application(s) for this Policy. If the Policy is wholly voidable due to fraud, misrepresentation or concealment by the **ASSURED** as aforementioned, Underwriters, at their sole discretion, may elect to void coverage only for the particular loss or claim which is affected by such concealment and/or misrepresentation and/or fraud.

17. **Risk Control Services:** Underwriters assume no liability for, nor will it be made liable by any person or organization for risk control or consulting services, including the results or failure of results, findings or failure of findings, performance or failure of performance of said services.

18. **Separation of ASSUREDs:** With the exception of the **Specific Excess Limits of Insurance**, **SELF INSURED RETENTIONS** and any rights or duties specifically assigned in this Policy to the **NAMED ASSURED**, this insurance applies:

    (a) As if each **ASSURED** were the only **ASSURED**; and

    (b) Separately to each **ASSURED** against whom a claim is made or a **SUIT** is brought.

19. **Subrogation, Salvage and RECOVERY:** As a condition precedent to the issuance of this Policy, it is agreed that Underwriters shall be subrogated, at their sole discretion, to all rights which any **ASSURED** may have against any person or other entity in respect to any claim or payment made under this Policy; including any person or organization hired to investigate, handle, settle or defend any **OCCURRENCE**, **CLAIM**, proceeding or **SUIT** resulting in the aforementioned payment. The **ASSURED** shall execute all papers required by Underwriters and must cooperate with Underwriters to secure and prosecute Underwriters rights; to include the filing and prosecution of any **CLAIM** or **SUIT** for any right or cause of action which the **ASSURED** cannot legally or contractually assign to Underwriters. If any reimbursement is obtained, or salvage or **RECOVERY** made by the **ASSURED** or Underwriters on account of any loss covered by this Policy, the net amount of such

reimbursement, salvage or **RECOVERY**, after deducting the actual cost of obtaining or making the same, shall be applied in the following order:

1. Amount of loss which exceeds the applicable **Specific Excess Limits of Insurance**;

2. To reduce Underwriters loss until Underwriters are fully reimbursed;

3. To reduce the **ASSURED'S** loss because of the application of the **SELF INSURED RETENTION**, and then any applicable **MAINTENANCE DEDUCTIBLE**.

In the event Underwriters decline to be subrogated to the rights which the **ASSURED** may have against any person or other entity in respect to any claim or payment made under this Policy, the **ASSURED** shall regain its rights and may pursue **RECOVERY** against said parties at its discretion. If any reimbursement is obtained, or salvage or **RECOVERY** made by the **ASSURED** on account of any loss covered by this Policy, the net amount of such reimbursement, salvage or **RECOVERY**, after deducting the actual cost of obtaining or making the same, shall be applied in the following order:

1. Amount of loss which exceeds the applicable **Specific Excess Limit of Insurance**;

2. To reduce the **ASSURED'S** loss because of the application of the **SELF INSURED RETENTION**, but not any applicable **MAINTENANCE DEDUCTIBLE**;

3. To reduce the Underwriters loss until Underwriters are fully reimbursed;

4. To reduce the **ASSURED'S** loss because of the application of any **MAINTENANCE DEDUCTIBLE**.

20. **Territory:** This Policy applies worldwide; however, indemnity by Underwriters shall be made only if the original **SUIT** and any related legal actions is brought in the United States of America, its territories or possessions, or transferred to the United States of America, its territories or possessions from a foreign jurisdiction.

21. **THIRD PARTY CLAIM ADMINISTRATOR:** It is a condition precedent that this Policy of insurance is issued by Underwriters on the express condition that:

(a) The **NAMED ASSURED** must contract with, and utilize the services of, a duly qualified and competent **THIRD PARTY CLAIM ADMINISTRATOR**, as agreed upon by Underwriters prior to the **PERIOD OF INSURANCE**; and

(b) All **CLAIMS, SUITS** or **OCCURRENCES** for which coverage is sought under this Policy must be adjusted and handled by the contracted **THIRD PARTY CLAIM ADMINISTRATOR**; and

(c) The duties involved in adjusting and handling **CLAIMS, SUITS** or **OCCURRENCES** by the **THIRD PARTY CLAIM ADMINISTRATOR** include but are not limited to, timely investigations, setting ground-up case reserves, documenting case reserve rationale, pursuing settlement and recording financials; and

(d) All **CLAIMS, SUITS** or **OCCURRENCES** for which coverage is sought under this Policy are adjusted and handled by the **THIRD PARTY CLAIM ADMINISTRATOR** in accordance with all statutory and regulatory standards; and in accordance with all accepted industry standards and practices.

Underwriters or their representative shall have the right but not the duty to conduct audits and inspections of the **CLAIMS, SUITS or OCCURRENCES** reported to the **NAMED ASSURED'S THIRD PARTY CLAIMS ADMINISTRATOR** to better inform Underwriters of the potential liability

under this Policy. The **THIRD PARTY CLAIMS ADMINISTRATOR** will cooperate should the audit or inspection be requested.

The **NAMED ASSURED**, through its **THIRD PARTY CLAIM ADMINISTRATOR**, may utilize the services of an attorney or lawyer or other specialized party to assist the **THIRD PARTY CLAIM ADMINISTRATOR** in the disposition of its duties, and defend an **ASSURED**; but only provided that:

(a) the **THIRD PARTY CLAIM ADMINISTRATOR** retains control of the adjusting process, reserving, settlement activity and documentation of the claims financials including erosion of the **NAMED ASSUREDS SELF INSURED RETENTION** and;

(b) The **THIRD  PARTY CLAIMS ADMINISTRATOR** continues to monitor  and direct the actions of these other parties; and

(c) Any control of the adjusting process designated to parties other than the **NAMED ASSUREDS THIRD PARTY CLAIM ADMINISTRATOR** or an attorney or lawyer hired or employed by the **NAMED ASSURED** must be approved by Underwriters in writing; and

(d) Any control of the adjusting process retained by the **NAMED ASSURED** (i.e. "self-administering **CLAIMS**") must be approved by Underwriters in writing; and

(e) Payment to these other parties shall be subject to all other terms and conditions of the Policy; specifically, but not limited to, **General Policy Condition 11. Duties** and **General Policy Definition 30. ULTIMATE NET LOSS.**

(f) Further, this Policy of insurance is issued by Underwriters on the express condition that all **CLAIMS, SUITS** or **OCCURRENCES,** for which coverage is sought under this Policy and which are being defended by the **THIRD PARTY CLAIMS ADMINISTRATOR** or an attorney or lawyer hired or employed by the **NAMED ASSURED,** are defended by the attorney or lawyer in  accordance with all statutory and regulatory standards; and in accordance with all accepted professional standards and practices

In the event of cancellation, expiration or revision of the agreement between the **NAMED ASSURED** and the designated **THIRD PARTY CLAIM ADMINISTRATOR,** the **NAMED ASSURED** must notify Underwriters ninety (90) days prior to the effective date of such cancellation, expiration or material revision, and the **NAMED ASSURED** and Underwriters must agree upon the specifications for the new **THIRD PARTY CLAIM ADMINISTRATOR** or the material revision of the incumbent **THIRD PARTY ADMINISTRATOR'S** agreement with the **NAMED ASSURED.**

22.   **Waiver of Subrogation:** This Policy shall  not  be  invalidated if the **ASSURED,** by written agreement, has waived or shall waive its right of **RECOVERY** from any party for loss or damage covered hereunder; provided that any such waiver is made prior to the **OCCURRENCE** of said loss or damage.


## General Policy Exclusions


**This Policy does not insure against:**


A.   Loss or damage caused by, or resulting from fraudulent or dishonest acts committed by the **ASSURED,** whether working alone or with others, except as covered in **Coverage Section VII Crime;**

B.    Expenses from any cost, civil fine, penalty or expense against any **ASSURED** for any compliance or enforcement action from any Federal, State or local governmental regulatory or administrative agency; except as provided in **Coverage Section I Property – Conditions 7. Ordinance Deficiency Clause** and **Coverage Section VI Employee Benefits Liability – Exclusions D;**

C.    Any liability arising out of the operation of the principles of eminent domain, condemnation proceedings, adverse possession or inverse condemnation proceedings by whatever name called, whether such liability accrues directly against the **ASSURED** or by virtue of any agreement entered into by or on behalf of the **ASSURED;**

D.    **BODILY INJURY, PERSONAL INJURY, PROPERTY DAMAGE** or loss or damage to the **PROPERTY OF THE ASSURED**, either directly or indirectly occasioned by, happening through, or in consequence of: war (including undeclared or civil war), warlike action by a military force (including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents), insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority, except as provided in **Coverage Section I Property – Conditions 6. Civil Authority Clause.** This Exclusion does not apply to loss or damage to the **PROPERTY OF THE ASSURED** caused secretly by a foreign enemy or agent of any government or sovereign power, when not in connection with the operations of armed forces in or against the country where the described location is situated;

E.    The investigation, defense, loss or damage, including loss of use, **BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE** caused by the release, discharge, dispersal, seepage or migration of **POLLUTANTS** anywhere, anytime, in any way, whether accidental or intentional, sudden or intermittent or continuous:

    (a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **ASSURED;**

    (b)    At or from any premises, site or location which is or was at any time used by or for any **ASSURED** or others for the handling, storage, disposal, processing or treatment of waste;

    (c)    Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **ASSURED** or any person or organization for whom any **ASSURED** may be legally responsible; or

    (d)    At or from any premises, site or location on which any **ASSURED** or any contractor or subcontractor working directly or indirectly on any **ASSURED'S** behalf are performing operations:

        (i)    If the **POLLUTANTS** are brought on or to the premises, site or location in connection with such operations by such **ASSURED**, contractor or subcontractor; or

        (ii)    If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS.**

    (e)    That are, or that are contained in any property that is:

        (i)    Being transported or towed by, handled, or handled for movement into, onto or from, an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability;** or

        (ii)    Otherwise in the course of transit by or on behalf of the **ASSURED;** or

    (iii) Being stored, disposed of, treated or processed in or upon an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability**; or

  (f)  Before the **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are moved from the place where they are accepted by the **ASSURED** for movement into or onto an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability**;  or

  (g)  After the **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are moved from an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability** to the place where they are finally delivered, disposed of or abandoned by the **ASSURED**.

(1)  The investigation, defense, loss or damage, including loss of use, caused by the release, discharge or dispersal of **POLLUTANTS** anywhere, anytime, in any way, whether accidental or intentional, sudden or intermittent or continuous for any loss, cost or expense arising out of any:

  (a)  Request, demand, or other order that any **ASSURED** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**; or

  (b)  Claim or **SUIT** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **POLLUTANTS**;

**Except:**

  1.  This exclusion does not apply to the reverse of flow of sewage into any building from a sewage facility, fixed conduit or sanitary sewer that the **ASSURED** owns, operates or maintains; and

As respects **Coverage Section II General Liability** only:

  2.  Subparagraph E.(a) **only** of this exclusion does not apply to **BODILY INJURY, PERSONAL INJURY** or PROPERTY DAMAGE arising out of heat, smoke or fumes from a "hostile fire" as defined below;

    As used in this Extension, the definition of **PROPERTY DAMAGE** excludes loss of use.

    As used in this Extension, a "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

  3.  This exclusion does not apply to **BODILY INJURY, PERSONAL INJURY or  PROPERTY DAMAGE** arising out of the use, handling, storage, discharge, dispersal, release or escape of chemicals when introduced by an **ASSURED** into such **ASSURED'S** drinking water system solely for the purpose of purifying or treating such drinking water; provided that the chemicals' generally accepted use is for the purification or treatment of drinking water.

  4.  This exclusion does not apply to **BODILY INJURY, PERSONAL INJURY  or   PROPERTY DAMAGE** arising out of the use, handling, storage, discharge, dispersal, release or escape of chemicals when used in the day-to-day operation and/or maintenance of swimming pools owned or operated by an **ASSURED**; provided that the chemicals' generally accepted use is for the operation/maintenance of swimming pools.

  5.  This exclusion does not apply to **BODILY INJURY, PERSONAL INJURY  or  PROPERTY DAMAGE** arising out of the application of pesticides, or herbicides provided such application is performed by employees of the **NAMED ASSURED** who are properly licensed or certified by a federal or state agency to apply those chemicals, pesticides or herbicides; and where the

application or use is in strict compliance with all federal, state, and local laws, statutes, regulations, ordinances, or the like; and where the application or use is in compliance with industry standards for application or use.

As respects **Coverage Section III AUTOMOBILE Liability** only:

6. Subparagraph (e) of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **POLLUTANTS** that are needed for, or result from the normal electrical, hydraulic or mechanical functioning of an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability** or its parts, if:

    (a) The **POLLUTANTS** escape, seep, migrate, or are discharged, dispersed or released directly from an **AUTOMOBILE** part designed by its manufacturer to hold, store, receive or dispose of such **POLLUTANTS**; and

    (b) The **BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE** does not arise out of the operation of any equipment defined as **MOBILE EQUIPMENT**.

7. Paragraphs 7(c) and 7(d) of this exclusion do not apply to accidents that occur away from premises owned by or rented to an **ASSURED** with respect to **POLLUTANTS** not in or upon an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability** if:

    (c) The **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are upset, overturned or damaged as a result of the maintenance or use of an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability**; and

    (d) The discharge, dispersal, seepage, migration, release or escape of the **POLLUTANTS** is caused directly by such upset, overturn or damage.

As respects **Coverage Section VIII Law Enforcement Liability** only:

8. This exclusion does not apply to **BODILY INJURY, PERSONAL INJURY,** or **PROPERTY DAMAGE** resulting from **LAW ENFORCEMENT ACTIVITIES** and due to the use of teargas, mace or similar substances by an **ASSURED** within the scope of their employment by the **NAMED ASSURED.** This coverage extension applies only if the **NAMED ASSURED'S** operations meet all the standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

F. Loss of, damage to, or loss of use of **PROPERTY OF THE ASSURED, BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE**, directly or indirectly caused by the presence of asbestos or lead in any form, except as covered in **Coverage Section I Property – Insuring Agreements** and **Coverage Section V Part A Workers' Compensation for a Qualified Self-Insured – Insuring Agreements;**

G. Any claim based upon the **ASSURED'S** failure to comply with the Federal Employee Retirement Income Security Act of 1974 (ERISA), including subsequent amendments or any similar federal, state or local law or regulations;

H. Any claim arising out of investment activities, or the administration of self-insurance funds, except as covered in **Coverage Section VII Crime;**

I. **Nuclear Incident:**

    (a) Loss or damage to **PROPERTY OF THE ASSURED**, or liability from **PROPERTY DAMAGE, BODILY INJURY** or **PERSONAL INJURY** accruing to the **ASSURED** directly or indirectly from, any and all forms of radioactive **CONTAMINATION;**

(b) Any loss or damage to **PROPERTY OF THE ASSURED**, or liability from **PROPERTY DAMAGE, BODILY INJURY** or **PERSONAL INJURY** accruing to the **ASSURED** directly or indirectly, from any Pool of Insurers or Reinsurers formed for the purpose of covering atomic or Nuclear Energy risks;

(c) Any loss or liability accruing to the **ASSURED**, directly or indirectly, for physical damage of **PROPERTY OF THE ASSURED** including **BUSINESS INTERRUPTION** or consequential loss arising out of such physical damage, in addition to **PROPERTY DAMAGE, BODILY INJURY,** or **PERSONAL INJURY,** due to:

  (i) **NUCLEAR REACTOR** power plants including all auxiliary property on this site, or

  (ii) Any **NUCLEAR MATERIALS**, or the dispersal or discharge of **NUCLEAR MATERIALS,** at any **NUCLEAR FACILITY** owned by, or operated by or on behalf of, any **ASSURED**;

  (iii) Any other **NUCLEAR REACTOR** installation, including laboratories handling radioactive materials in connection with reactor installations, and critical facilities as such;

  (iv) Installations for fabricating complete fuel elements or for processing substantial quantities of, **NUCLEAR MATERIALS** and for reprocessing, salvaging, chemically separating, storing or disposing of **SPENT NUCLEAR FUEL** or **WASTE** materials, or

  (v) Installations other than those listed above using substantial quantities of radioactive isotopes or other products of nuclear fission;

  (vi) Any **NUCLEAR MATERIALS** contained in spent fuel or **WASTE** and at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **ASSURED**; or

  (vii) Loss which arises out of the furnishing by an Assured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **NUCLEAR FACILITY**;

(d) Any loss or damage or liability resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIALS** and with respect to which:

  (i) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

  (ii) The **ASSURED** is, or had this Policy not been issued, would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

(e) Any loss relating to expenses incurred with respect to:

  (i) Immediate medical or surgical relief or first aid;

  (ii) **BODILY INJURY, PERSONAL INJURY, PROPERTY DAMAGE,** or **PROPERTY OF THE ASSURED** resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIALS** and arising out of the operation of **NUCLEAR FACILITY** by any person or organization.

**DEFINITIONS** as used in this Exclusion:

(1) **CONTAMINATION** means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of **NUCLEAR MATERIALS, SPENT NUCLEAR FUEL** or **WASTE,** whether permanent or transient in any **ENVIRONMENT.**

(2)   **ENVIRONMENT** includes any person, any real or personal property, animals, crops and vegetation, land including land under the building, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to, any of the above owned, or controlled, or occupied by any **ASSURED**.

(3)   **HAZARDOUS PROPERTIES** include radioactive, toxic or explosive properties.

(4)   **NUCLEAR FACILITY** means:

   (a)   Any **NUCLEAR REACTOR**;

   (b)   Any equipment or device designed or used for separating the isotopes of uranium or plutonium, or processing or utilizing spent fuel, or handling, processing or packaging **WASTE**;

   (c)   Any equipment or device used for the processing, fabricating or alloying of **NUCLEAR MATERIALS** in the custody of the **ASSURED** at the premises where such equipment or device is located;

   (d)   Any structure, basin, excavation, premises or place prepared or used for the storage of **WASTE**, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

(5)   **NUCLEAR MATERIALS** means, source material, special nuclear material, byproduct material and have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

(6)   **NUCLEAR REACTOR** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

(7)   **SPENT NUCLEAR FUEL** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **NUCLEAR REACTOR**.

(8)   **WASTE** means any waste material (1) containing byproduct material from any ore processed primarily for its source material content and (2) resulting from the operation by any person or organization of any **NUCLEAR FACILITY** included within the definition of **NUCLEAR FACILITY**.

**J.**   Any loss, damage, cost, claim, expense, **BODILY INJURY, MEDICAL PAYMENTS**, or liability of whatsoever nature directly or indirectly caused by, resulting from or in any way involving **FUNGAL PATHOGENS**. This exclusion shall apply regardless of any other cause or event that contributes concurrently or in sequence to the loss, damage, cost, claim, expense, **BODILY INJURY, MEDICAL PAYMENTS**, or liability.

This exclusion shall not apply to:

   (a)   **Coverage Section I Property**; but only when such loss arises directly from a peril not otherwise excluded under **Coverage Section I Property**.

   (b)   **Coverage Section V Part A Excess Workers' Compensation for a Qualified Self-Insurer — Insuring Agreements**; but only when coverage for losses arising from **FUNGAL PATHOGENS** is required by law or regulation.

   (c)   **Coverage Section II General Liability**; **BODILY INJURY** or **PROPERTY DAMAGE** arising from the **NAMED ASSURED'S** Food Products

K.  Any claim, including defense of same, arising directly or indirectly from any actual or alleged **SEXUAL ABUSE or SEXUAL HARASSMENT** of any person by any **ASSURED**, or anyone to whom the **NAMED ASSURED** is obligated by virtue of a written contract or agreement; except as covered in  Coverage **Section II General Liability – Insuring Agreements C.   SEXUAL HARASSMENT Liability and D. SEXUAL ABUSE Liability, Coverage Section IV Public Officials Miscellaneous Liability – Insuring Agreements C. SEXUAL HARASSMENT Liability and D.  SEXUAL ABUSE Liability, and Coverage Section VIII Law Enforcement Liability – Insuring Agreements C. SEXUAL HARASSMENT Liability** and **D. SEXUAL ABUSE Liability** –

L.  Loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any **ACT OF TERRORISM**, and/or the threat thereof, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

Loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any **ACT OF TERRORISM**.

This exclusion will apply to any loss or claim unless specific limits and a **SELF INSURED RETENTION** are listed under **Coverage Section IX Terrorism.**

M.  Loss of, damage to, or loss of use of **PROPERTY OF THE ASSURED, BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE**, and any loss or claim directly or indirectly caused by or arising out of:

(a)  Loss, theft, loss of use of, corruption, or inability to access or manipulate tangible or intangible **ELECTRONIC DATA** or paper data, whether owned by the **ASSURED** or others and including but not limited to any handheld or portable device with user-generated content.

(b)  Loss, theft, breach, publication, unauthorized access, disclosure or use, collection or disposal of any person's or organization's tangible or intangible **ELECTRONIC DATA** or paper data including but not limited to private, confidential or personal identifying information, medical, financial, employment, health and educational information which triggers any local, state or federal privacy regulations, as well as patents, trade secrets, processing methods or customer lists.

(c)  Any claim for return or reimbursement of any sums or monetary value of any electronic fund transfers or transactions which is lost or diminished during the transfer, unless covered under the definition of computer theft under **Coverage Section VII Crime.**

(d)  Any threat or series of threats to commit an intentional act against a computer network or system for purposes of demanding money or other tangible or intangible value from the **ASSURED;**

(e)  Cyberterrorism or any intrusive or disruptive activities against any computer system or network, or the explicit threat to use such activities with the intention to cause harm, by any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

In no event will this insurance provide coverage for any breach notification; credit, identity and health monitoring and restoration costs; public relations costs; compliance audits, data requests, legal fees; and any local, state, federal or industry or professional organization's investigation, enforcement, remediation or monitoring costs and any fines, penalties, claims, proceedings or **SUITS** arising directly or indirectly from (a –e) above.

L00169972073102518

**N.**   Loss, damage, cost or expense arising out of the failure of any **ASSURED** to adequately supply gas, oil, water, electricity or steam.

### General Policy Definitions

**1.**   **ACT OF TERRORISM** means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

**2.**   **ASSURED** means not only the **NAMED ASSURED** as stated on the **Declarations**, but also includes any past, present or future officials; members of boards or commissions; and trustees, directors, officers, volunteers, or employees of the **NAMED ASSURED** while acting within the scope of their duties as such. **ASSURED** shall also mean any person, organization, trustee or estate to whom the **NAMED ASSURED** is obligated by virtue of a written contract or written mutual aid agreement or other written agreement to provide insurance such as is offered by this Policy, but only in respect to acts or operations by or on behalf of the **NAMED ASSURED,** and subject to the limitations on coverage contained in any such written contract or written mutual aid agreement or other written agreement.

**3.**   **AUTOMOBILE** means any motor vehicle intended or designed for highway use, trailer or semi-trailer, including its equipment and any other equipment permanently attached thereto, but **AUTOMOBILE** does not include **MOBILE EQUIPMENT**. However, self-propelled vehicles with the following types of permanently attached equipment are considered **AUTOMOBILE:**

Equipment designed primarily for:

(a)   Snow removal;

(b)   Road maintenance, but not construction or resurfacing; or

(c)   Street cleaning.

**4.**   **BODILY INJURY** means physical injury (including death) to any person, and any mental anguish or shock, sickness, disease, disability or death associated with or arising from such physical injury.

**5.**   **EARTHQUAKE** means seismic geologic activity, which causes movement in the earth's surface including loss or damage from any other cause or event that contributes concurrently or in any sequence to the loss, except direct loss of or damage to **PROPERTY OF THE ASSURED** caused by ensuing fire and/or explosion. If more than one **EARTHQUAKE** shock occurs within any period of one hundred and sixty-eight (168) hours during the **PERIOD OF INSURANCE,** such **EARTHQUAKE** shock is deemed to be a single **EARTHQUAKE OCCURRENCE.**

**6.**   **ELECTRONIC DATA** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, cloud computing platforms, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**7.**   **EMPLOYEE BENEFIT PROGRAMS** means group life insurance, group accident or health insurance, pension plans, profit sharing plans, employee savings and investment plans, employee stock   subscription plans, travel or vacation plans, workers' compensation, unemployment insurance, social security, disability benefits insurance, employee welfare benefit plans and welfare plans, and any other similar **EMPLOYEE BENEFIT PROGRAMS.**

**8.**   **EMPLOYMENT PRACTICE VIOLATION** means:

Pkg2016.1

(a)     Refusal to employ;

(b)     Termination of employment;

(c)     Practices, policies, acts or omissions such as Coercion, Demotion, Failure to Promote, Evaluation, Reassignment, Discipline, Humiliation, Retaliation, Libel, Slander, Defamation of Character, Harassment (other than **SEXUAL HARASSMENT**), including Violation of Civil Rights or Discrimination by the **ASSURED**, which are employment related;

(d)     Any act relating to the selection, supervision or dismissal of any **ASSURED**.

All claims based on or arising out of the same **EMPLOYMENT PRACTICE VIOLATION** or a series of related **EMPLOYMENT PRACTICE VIOLATIONS** by one or more **ASSUREDS** shall be deemed one **EMPLOYMENT PRACTICE VIOLATION**. Only one (1) Policy issued by Underwriters, one (1) **SELF INSURED RETENTION**, and one (1) **EXCESS LIMIT OF INSURANCE** is applicable to any one **EMPLOYMENT PRACTICE VIOLATION**.

9.     **FLOOD AND SURFACE WATER** means:

(a)     Waves, surge, storm surge, and all other movement of tide or tidal waters; or

(b)     The accumulation and movement of rain, melting snow or melting ice, including run-off; or

(c)     The rising (including the overflowing or breaking of banks, boundaries, berms, retaining walls or levees) of any body of water; including but not limited to ponds, lakes, reservoirs, creeks, streams, rivers, bayous, canals, inlets, harbors, bays, seas, oceans, storm water drains and drainage ditches, viaducts, aqueducts, and other similar bodies of water; whether the bodies of water and their boundaries are man-made or naturally occurring; and whether or not the preceding (a), (b) or (c) is a result, direct or indirect, of any man-made, mechanical, natural, unnatural or catastrophic **OCCURRENCE**, happening, cause or event.

10.     **FUNGAL PATHOGENS** means any fungus or mycota or any byproduct or type of infestation produced by such fungus or mycota, including but not limited to, mold, mildew, mycotoxins, spores or any biogenic aerosols.

11.     **LAW ENFORCEMENT ACTIVITIES** means the activities of any **ASSURED** while acting as a law enforcement official, officer, auxiliary officer, employee or volunteer of a law enforcement agency or department of the **NAMED ASSURED**. **LAW ENFORCEMENT ACTIVITIES** does not include **EMPLOYMENT PRACTICE VIOLATIONS**.

12.     **LOSS FUND,** if applicable, means the aggregate United States Dollar amount specified in the **Schedule of SELF INSURED RETENTIONS** to be paid by the **ASSURED** for covered loss amounts incurred during the **PERIOD OF INSURANCE** within the **ASSURED'S SELF INSURED RETENTION**.

13.     **MAINTENANCE DEDUCTIBLE** means that United States Dollar amount specified in the **Schedule of SELF INSURED RETENTIONS** which the **ASSURED** is obligated to pay of the **ULTIMATE NET LOSS** prior to the application of the applicable **SELF INSURED RETENTION**. The **MAINTENANCE DEDUCTIBLE** is not considered part of the **SELF INSURED RETENTION**, and does not accrue to the exhaustion of the **LOSS FUND**.

14.     **MEDICAL PAYMENTS** means reasonable expenses for first aid, medical, surgical, X-ray and dental services, ambulance, hospital, professional nursing and funeral services as are necessary as a result of an **OCCURRENCE** not otherwise excluded on account of **BODILY INJURY** provided the **MEDICAL PAYMENTS** are incurred within one (1) year of the **OCCURRENCE**.

15. **MOBILE EQUIPMENT** means any of the following types of land vehicles, including any attached machinery or equipment:

    (a)    Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    (b)    Vehicles maintained for use solely on or next to premises the **ASSURED** owns or rents;

    (c)    Vehicles that travel on crawler treads;

    (d)    Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        (i)    Power cranes, shovels, loaders, diggers or drills; or

        (ii)    Road construction or resurfacing equipment such as graders, scrapers or rollers;

    (e)    Vehicles not described in (a), (b), (c), or (d) above, that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (i)    Air compressors, pumps and generators including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment;  or

        (ii)    Cherry pickers and similar devices used to raise or lower workers;

    (f)    Vehicles not described in (a), (b), (c), or (d) above, maintained primarily for purposes other than the transportation of persons or cargo.

16. **NAMED ASSURED** means the person and/or organization first named in Item 1. of the **Declarations** of this Policy.

17. **NAMED WINDSTORM** means a storm system that has been declared a Tropical Depression, Tropical Storm or Hurricane by the National Hurricane Center of the National Oceanic and Atmospheric Administration. As regards a **NAMED WINDSTORM**, an **OCCURRENCE** shall mean all Windstorm or Hail losses and ensuing rain damage, sustained by the insured occurring during any period of seventy-two (72) consecutive hours arising out of and directly occasioned by the **NAMED WINDSTORM**.

18. **PERIOD OF INSURANCE** means the length of time that the Policy is in force as stated in Item 3 of the **Declarations** as the Effective Date and Expiration Date.

19. **PERSONAL INJURY** means any Injury (other than **BODILY INJURY** or **PROPERTY DAMAGE**) arising out of one or more of the following:

Wrongful Entry; Wrongful Eviction; Malicious Prosecution; Humiliation; Piracy;  Infringement or Misappropriation of any Intellectual Property Rights (including: Copyrights; Patents; Trademarks; Service Marks; and Advertising, Broadcasting, and Publishing Ideas); Invasion of Rights of Privacy; Libel; Slander; Defamation of Character; Disparagement of Property; Erroneous Service of Civil Papers; False Arrest; False Imprisonment; and Detention.

Injury includes: Mental Anguish, Shock, Sickness, Disease, Disability or Death, which do not arise from **BODILY INJURY** or **PROPERTY DAMAGE**.

L00169972076102518

In addition, as respects to **LAW ENFORCEMENT LIABILITY** only, **PERSONAL INJURY** also includes any Injury (other than **BODILY INJURY** or **PROPERTY DAMAGE**) arising out of Discrimination or Violation of Civil Rights.

20. **POLLUTANTS** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals, liquids, solids, gases, thermal pollutants, waste, and all other irritants, or contaminants. Waste includes materials to be recycled, reconditioned or reclaimed.

21. .PROPERTY DAMAGE means direct damage to or destruction or loss of property, including all resulting loss of use of property, excluding, however, damage to the **PROPERTY OF THE ASSURED**.

22. **PROPERTY OF THE ASSURED or ASSURED'S PROPERTY** means all Real and Personal Property which is in the care, custody or control of the **ASSURED** or which the **ASSURED** owns or agrees to insure by any contractual agreement normal to its operation, including: leasehold improvements and betterments; Personal Property in transit; Property in the course of construction, installation, repair, renovation and the like; **AUTOMOBILES; ACCOUNTS RECEIVABLE; DATA PROCESSING SYSTEMS; DATA PROCESSING MEDIA; FINE ARTS; VALUABLE PAPERS; and MOBILE EQUIPMENT**. However, **PROPERTY OF THE ASSURED** and **ASSURED'S PROPERTY** do not include third party **AUTOMOBILES** left in the **ASSURED'S** care, custody and control, as more fully described in **Coverage Section III AUTOMOBILE Liability – Insuring Agreements E. - Garagekeeper's Legal Liability**.

23. **RECOVERY** means all claims, **SUITS** or other causes of action that any **ASSURED** has against any person or entity resulting from a covered loss; any right of subrogation, whether the **ASSURED'S** or Underwriters resulting from a covered loss; and any rights that any **ASSURED** has to the monetary value of any damaged Property, whether tangible or intangible, for which a claim for total loss or damage is made under the Policy.

24. **SELF INSURED RETENTION** means that United States Dollar amount specified in the **SCHEDULE OF SELF INSURED RETENTIONS** which the **ASSURED** is obligated to pay of the **ULTIMATE NET LOSS**, after the application of any applicable **MAINTENANCE DEDUCTIBLE**, and before the **Specific Excess Limit of Insurance** of this Policy responds to the same loss.

25. **SEXUAL ABUSE** means any actual, attempted or alleged criminal sexual conduct of a person by another person, or persons acting in concert, regardless if criminal charges or proceedings are brought, which causes physical injuries and/or mental anguish. **SEXUAL ABUSE** also includes actual, attempted or alleged: sexual molestation, sexual assault, sexual exploitation or sexual injury.

But **SEXUAL ABUSE** does not include **SEXUAL HARASSMENT**.

26. **SEXUAL HARASSMENT** means any actual, attempted or alleged unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature of a person by another person, or persons acting in concert, which causes mental anguish:

But **SEXUAL HARASSMENT** does not include **SEXUAL ABUSE**.

27. **SUBLIMIT** means the maximum amount of **ULTIMATE NET LOSS** as specified in the **Schedule of Specific Excess Limits of Insurance** that may be attributable to a Coverage Subsection for any one **OCCURRENCE** or **CLAIM**. **SUBLIMITS** and any Aggregate Limits applicable to them are part of, and not in addition to, the **SELF INSURED RETENTION**, Specific Excess Limit of Insurance and Annual Aggregate Limit for the Coverage Section which they are a part of. Where a **SUBLIMIT** is specified as being "ground up", such **SUBLIMIT** is inclusive of, and may be contained within, the **SELF INSURED RETENTION**. Ground up **SUBLIMIT** payments within the **SELF INSURED**

**RETENTION** shall contribute to the erosion of the **LOSS FUND**, if applicable, and will form part of the overall **ULTIMATE NET LOSS** for the **OCCURRENCE** or **CLAIM**.

28.   **SUIT** means a civil proceeding in which injuries or damages are alleged. **SUIT** includes:

    (a)   An arbitration proceeding in which such damages are claimed and to which the **ASSURED** must submit or does submit with or without Underwriters consent; or

    (b)   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **ASSURED** submits with or without Underwriters consent.

29.   **THIRD PARTY CLAIM ADMINISTRATOR** means a duly qualified and competent firm that administers on behalf of the **ASSURED** all claims under this Policy, which shall include claims processing, adjustment, field investigation, data collection and reporting duties, including **LOSS FUND** tracking if a limit is stated in the **Declarations** under **Excess Loss Fund Protection**, in accordance with all statutory and regulatory standards and in accordance with all accepted industry standards and practices.

30.   **ULTIMATE NET LOSS** means the total sum which the **ASSURED** is obligated to pay because of loss or damage covered under any Coverage Section of this Policy, either through adjudication or compromise, after first making proper deductions for all subrogation, **RECOVERY(IES)** and salvages.

    **ULTIMATE NET LOSS** also includes:

    (a)   Premium on attachment, appeal or similar bonds (but without any obligation on the part of Underwriters to apply for or furnish such bonds); or

    (b)   Expenses of lawyers, private investigators and other persons for litigation, settlement, adjustment and investigation of claims and SUITS which are paid as a consequence of any loss or damage covered hereunder.

However, the **ULTIMATE NET LOSS** does not include:

    (c)   Any costs, fees and other expenses incurred by the **ASSURED** for litigation, settlement, adjustment and investigation of claims or **SUITS** for any loss or damage not covered under any Section of this Policy;

    (d)   Payment for any judgments or acts deemed uninsurable by law;

    (e)   Contractual fees paid to the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** by the **ASSURED** for services rendered in administering, investigating or settlement of any claim for loss or damage;

    (f)   Payments, including salaries and expenses, to any employee or official of the **ASSURED** for services rendered in administering any claim for loss or damage; or

    (g)   Expenses incurred by the ASSURED or the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** in the hiring of experts or other specialists to establish the existence or value of a covered claim or **OCCURRENCE** unless specifically provided for in the Policy or agreed to in advance by Underwriters.

Underwriters are liable only for the **ULTIMATE NET LOSS** in excess of the applicable **MAINTENANCE DEDUCTIBLE** and **SELF INSURED RETENTION**, and not more than the **Specific Excess Limit of Insurance.** Underwriters' duty to indemnify ends when the applicable **Specific Excess Limit of Insurance** is exhausted by the payment of the **ULTIMATE NET LOSS.**

L00169972078102518

31. **UNMANNED AIRCRAFT** means an aircraft that is not designed, manufactured or modified after manufacture to be controlled directly by a person from within or on the aircraft.

32. **WRONGFUL ACT** means any actual or alleged error or mis-statement, omission, act or neglect or breach of duty due to misfeasance, malfeasance, and non-feasance, Discrimination, and Violation of Civil Rights by the **ASSURED.**

All claims based on or arising out of the same **WRONGFUL ACT** or a series of related **WRONGFUL ACTS** by one or more **ASSUREDS** shall be deemed one **WRONGFUL ACT**. Only one Policy issued by Underwriters, one **SELF INSURED RETENTION**, and one **Specific Excess Limit of Insurance** is applicable to any one **WRONGFUL ACT.**

## Coverage Section I Property

### Coverage Section I Property – Insuring Agreements

**A.**    **PROPERTY OF THE ASSURED** (except **AUTOMOBILES** and Personal Property in transit)**:** Underwriters agree, subject to the Policy limitations, terms and conditions to indemnify the **ASSURED** for All Risks of Direct Physical Loss or Damage, as more fully defined by the term **ULTIMATE NET LOSS**, occurring during the **PERIOD OF INSURANCE** to all Real and Personal Property, wherever located and identified in Schedules on file with Underwriters, unless provided for by the **Automatic Acquisition Clause.**

**B.**    **AUTOMOBILE PHYSICAL DAMAGE:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for All Risks of Direct Physical Loss or Damage, as more fully defined by the term **ULTIMATE NET LOSS**, occurring during the **PERIOD OF INSURANCE** to **AUTOMOBILES** owned by the **ASSURED** or on which the **ASSURED** has an obligation to provide insurance, wherever located.

**C.**    **EXTRA EXPENSE:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for **EXTRA EXPENSE,** due to the suspension of operations caused by Direct Physical Loss or Damage insured hereunder, occurring during the **PERIOD OF INSURANCE** to the **PROPERTY OF THE ASSURED** at the premises described in the Schedule of Locations on file with Underwriters.

**D.**    **Transit:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for All Risks of Direct Physical Loss or Damage, occurring during the **PERIOD OF INSURANCE** to Personal **PROPERTY OF THE ASSURED,** or property held by the **ASSURED** in trust or on commission or in the care, custody or control of the **ASSURED** or for which the **ASSURED** may be held legally liable, while in due course of transit.

**E.**    **BUSINESS INTERRUPTION:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for the actual loss of **BUSINESS INCOME** and **RENTAL VALUE** due to the necessary suspension of **OPERATIONS** during the **PERIOD OF RESTORATION.** The suspension must be caused by Direct Physical Loss or Damage insured hereunder, occurring during the **PERIOD OF INSURANCE** to the **PROPERTY OF THE ASSURED** at the premises described in the Schedule of Locations on file with Underwriters.

### Coverage Section I Property – Specific Excess Limits of Insurance

Underwriters' **Specific Excess Limit of Insurance** per **OCCURRENCE** for **Coverage Section I Property** is limited to, and not to exceed, the Specific Excess Limits as stated in the **Schedule of Specific Excess Limits of Insurance** over the **SELF INSURED RETENTION,** as stated in the **Schedule of SELF INSURED RETENTIONS.**

If an Annual Aggregate applies to any coverage hereunder, the total Aggregate **Excess Limit of Insurance** for such coverage under this Coverage Section shall not exceed the Annual Aggregate limit as stated in the applicable Coverage Section of **the Schedule of Specific Excess Limits of Insurance.**

### Coverage Section I Property – Conditions

Amounts paid by Underwriters under any of the following clauses are part of, and not in addition to, Underwriters **Specific Excess Limit of Insurance** per OCCURRENCE for **Coverage Section I Property** as stated in the **Schedule of Specific Excess Limits of Insurance** in the **Declarations** including any applicable Annual Aggregate.

**Pkg2016.1**

1.   **Valuation:**

   (a) **Real and Personal Property (except ACCOUNTS RECEIVABLE, AUTOMOBILES, DATA PROCESSING, FINE ARTS, MOBILE EQUIPMENT AND VALUABLE PAPERS):**

   Underwriters will indemnify the **ASSURED** for loss or damage based on the lesser of the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to, but not superior to, or more extensive, than its condition when new, provided that the **ASSURED** has commenced repairs, rebuilding, or replacement within two years of the date of loss or damage; and subject to the following conditions:

However, the following conditions apply:

   If property damaged or destroyed covered Real or Personal Property is not repaired, rebuilt or replaced within two years after loss or damage, Underwriters shall not be liable for any amount to repair, rebuild, or replace in excess of the **ACTUAL CASH VALUE** of the property damaged or destroyed.

   The **ASSURED** may, at its discretion, elect to apply any **RECOVERY** for rebuilding or replacement due under this Section towards a new capital expenditure provided that:

   i.   The new capital expenditure is made within two years of the date of loss or damage;

   ii.  The new capital expenditure is in lieu of, and not in addition to, the Real or Personal Property damaged; and

   iii. The actual cost of the new capital expenditure is equal to, or greater than, the cost to rebuild or replace the Real or Personal Property damaged.

   If the **ASSURED** decides to replace destroyed or damaged property on another site, cost of such site is not included.

   (b) **ACCOUNTS RECEIVABLE:** Underwriters will indemnify the **ASSURED** for actual  loss sustained for sums due the **ASSURED**, including the expenses reasonably incurred in re-establishing the records of **ACCOUNTS RECEIVABLE:**

   i.   When there is proof that a covered loss has occurred but the **ASSURED** cannot accurately establish the total amount of **ACCOUNTS RECEIVABLE** outstanding as of the date of such loss, such amount shall be based on the **ASSURED'S** monthly statements and shall be computed as follows:

      (1) Determine the total of the average monthly amounts of **ACCOUNTS RECEIVABLE** at the end of the twelve (12) months immediately preceding the month in which the loss or damage occurs;

      (2) Adjust that total for any normal fluctuations in the amount of **ACCOUNTS RECEIVABLE** for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

   ii.  There shall be deducted from the total amount of **ACCOUNTS RECEIVABLE**, however established:

      (1) The amount of accounts not lost or damaged;

      (2) The amount of the accounts the **ASSURED** is able to collect or re-establish;

(3) An amount to allow for probable bad debts that the **ASSURED** is normally unable to collect;

(4) All unearned interest and services charges.

(c) **AUTOMOBILE:** Underwriters will indemnify the **ASSURED** based on the lesser of the cost to repair the **AUTOMOBILE**, or the **ACTUAL CASH VALUE** of the **AUTOMOBILE** at the time of loss; including the cost to rent a vehicle of like kind.

(d) **DATA PROCESSING:** Underwriters will indemnify the **ASSURED** for:

    i.   **DATA PROCESSING SYSTEMS** based upon the lesser of the actual cost to replace or repair the property. If the property is replaced, based upon the most closely equivalent property available similar in kind and function to that insured hereunder.

    ii..  **DATA PROCESSING MEDIA** based upon the lesser of the actual cost to replace, repair or reproduce the property, or if not replaced, repaired or reproduced, the blank hardware value of the **DATA PROCESSING MEDIA**. If the property is replaced, based upon the most closely equivalent property available similar in kind and function to that insured hereunder.

(e) **FINE ARTS:** Underwriters will indemnify the **ASSURED** based on the lesser of the cost to repair the property, or if not repairable the replacement cost, or if not replaceable the appraised or market value.

(f) **MOBILE EQUIPMENT:** Underwriters will indemnify the **ASSURED** for loss or damage based on the lesser of the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to, but not superior to, or more extensive, than its condition when new.

(g) **VALUABLE PAPERS:** Underwriters will indemnify the **ASSURED** based on the lesser of the cost to replace, repair or reproduce the property with other of like kind, or if not replaced, repaired or reproduced the blank value of the **VALUABLE PAPERS**.

(h) **Vacant Buildings:** Underwriters will indemnify the **ASSURED** based on the lesser of the cost to repair a covered building or the **ACTUAL CASH VALUE** of a covered building that has been vacant for a period of more than ninety (90) consecutive days at the time of loss.

Vacant means a covered building that is abandoned.

A covered building that is unoccupied is not considered vacant. A covered building is considered unoccupied when the building contains contents to conduct the **ASSURED'S** customary operations, but such operations are temporarily suspended.

A covered building under construction or renovation is not considered vacant.

2. **Expense to Reduce or Prevent Loss:** Underwriters will indemnify the ASSURED for expenses necessarily incurred to reduce or prevent any loss under this Policy, not exceeding, however, the amount by which the loss under this [insurance] is thereby reduced.

3. **Debris Removal:** In the event of a direct physical loss or damage to the property covered under this Policy, Underwriters will indemnify the **ASSURED** for expenses incurred in removal of debris, and the cost of clean-up (other than **POLLUTANTS**) of the insured property destroyed or damaged, from the premises of the **ASSURED**.

4. **Asbestos and Lead Clean Up and Removal:** Notwithstanding **General Policy Exclusion F.** in this Policy, Underwriters agree to extend **Coverage Section I Property** to cover expense to remove damaged asbestos or lead from any structure due to the enforcement of any law or

Pkg2016.1

ordinance regulating asbestos or lead, when the asbestos or lead is itself damaged by a Peril not otherwise excluded under this Policy, and then only to the extent of such damage.

5. **Architects' and Engineers' Fees:** This Policy covers the additional assessment involving architects' and engineers' fees for consultations arising from losses resulting from a Peril not otherwise excluded under this Policy.

6. **Civil Authority Clause:** Notwithstanding anything contained in this Policy, property which is insured under this Policy is also covered against the risk of damage or destruction by civil authority during a conflagration, and for the purpose of retarding the same; provided that neither such conflagration or destruction is caused or contributed to by war (including undeclared or civil war), warlike action by a military force (including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents), insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these. This coverage includes damage or destruction by civil authority during a conflagration, and for the purpose of retarding the same, if caused by terrorists or secretly by a foreign enemy or agent of any government or sovereign power, when not in connection with the operations of armed forces in or against the country where the described location is situated.

7. **Ordinance Deficiency Clause:** If Building property is damaged or destroyed by Perils not otherwise excluded under this Policy, Underwriters shall be liable for the increased cost to repair or reconstruct that Building property, including the undamaged part of that Building property, but only when the increased cost is a consequence of enforcement of any federal, state or municipal law, ordinance or code which necessitates such increased cost to repair or reconstruct to meet the minimum of such requirements. If demolition is required to comply with such enforcement, Underwriters shall also be liable for such additional cost, including the cost to demolish and clear undamaged parts of the Building property. Underwriters will not pay such increased cost to repair or reconstruct if the Building property is not repaired or reconstructed.

8. **Automatic Acquisition Clause:** This insurance is automatically extended to cover additional property and/or interests of the **ASSURED**, usual and/or incidental to the operations of the **ASSURED**, which do not exceed the Newly Acquired Property Reporting Limit stated in the **Schedule of Specific Excess Limits of Insurance**, and which are acquired, or for which the **ASSURED** becomes legally liable, during the **PERIOD OF INSURANCE** under this Policy.

This Policy is further extended to cover additional property and/or interests of the **ASSURED**, usual and/or incidental to the operations of the **ASSURED**, when newly acquired property values exceed the Newly Acquired Property Reporting Limit stated in the **Schedule of Specific Excess Limits of Insurance**, provided the **ASSURED** reports details of said property and/or interests to Underwriters for premium consideration within ninety (90) consecutive days from the date the **ASSURED** acquires or becomes legally liable for the property provided that the property is acquired or interests secured during the **PERIOD OF INSURANCE** under this Policy.

9. **Unintentional Errors and Omissions:** The property insured under this Policy, and its insured value, is the property and values shown on the Schedule of Values on file with Underwriters, as submitted by the **ASSURED** prior to the inception of this Policy.

If any **PROPERTY OF THE ASSURED** is omitted or undervalued because of negligence, error or oversight of the **ASSURED**, Underwriters will accept that property provided it is usual or incidental to the **ASSURED'S** operations. Such omission will not prejudice the **ASSURED'S** right of RECOVERY under this Policy; except that for any **PROPERTY OF THE ASSURED** unintentionally omitted from the Schedule of Values on file with Underwriters, Underwriters shall not be liable for any amount to repair, rebuild, or replace in excess of the **ACTUAL CASH VALUE** of the property until payment of any applicable additional premium for the **PERIOD OF INSURANCE** that the **PROPERTY OF THE ASSURED** was unintentionally omitted from the Schedule of Values on file

Pkg2016.1

with Underwriters by the **ASSURED**, as calculated by Underwriters, has been paid. Upon receipt of payment of the additional premium by Underwriters, the liability of Underwriters will revert to its liability as outlined in **Coverage Section I Property – Conditions 1.(a).** The **ASSURED** agrees to report to Underwriters any omission of property as soon as practicable after it is discovered.

10. **Joint Loss Clause:** In the event of damage to or destruction of property, at a location designated in this Policy and also designated in a boiler and machinery insurance policy and there is a disagreement between the insurers with respect to:

(a) Whether such damage or destruction was caused by a Peril insured against by this Policy or by an accident insured against by such boiler and machinery insurance Policy; or

(b) The extent of participation of this Policy and of such boiler and machinery insurance policy in a loss which is insured against, partially or wholly, by any or all policies.

Underwriters shall, upon written request of the **NAMED ASSURED**, pay to the **NAMED ASSURED** one-half of the amount of loss which is in disagreement, but in no event more than Underwriters would have paid if there had been no boiler and machinery insurance Policy in effect, subject to the following conditions:

i. The amount of the loss which is in disagreement after making provisions for any undisputed claims payable under the said policies and after the amount of loss is agreed upon by the **ASSURED** and the insurers, is limited to the minimum amount remaining payable by any or all policies;

ii. The boiler and machinery insurer shall simultaneously pay to the **ASSURED** one-half of said amount which is in disagreement;

iii. The payments by the insurers hereunder and acceptance of the same by the **ASSURED** signify the agreement of the insurers to submit to and proceed with arbitration within ninety (90) consecutive days of such payments. The arbitrators shall be three in number, one of which shall be appointed by the boiler and machinery insurer and one of whom shall be appointed by Underwriters hereon and the third appointed by consent of the other two arbitrators, the decision by the arbitrators shall be binding on the insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

iv. The **ASSURED** agrees to cooperate in connection with such arbitration but not to intervene within;

v. The provisions of this clause shall not apply unless such other Policy issued by the boiler and machinery insurance company contains a similar clause or is similarly endorsed;

vi. Acceptance by the **ASSURED** of sums paid pursuant to the provisions of this clause including an arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the **ASSURED** against any of the insurers.

### Coverage Section I Property – Exclusions

**In addition to the General Exclusions of this Policy, this Coverage Section does not insure against:**

A. Any claim for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of this Policy, whether or not a limit is stated in the **Schedule of Specific Excess Limits of Insurance;**

B.   Loss by moth, termite, or other insect(s); by vermin; by wear or tear; by rust, erosion, corrosion or other gradual deterioration; or by wet rot, dry rot or **FUNGAL PATHOGEN**, unless a loss from a peril not otherwise excluded ensues, and then only for direct loss or damage caused by such peril;

C.   Loss as a result of lack of proper maintenance;

D.   Loss of use (except as respects **Coverage Section I Property – Insuring Agreements B. AUTOMOBILE Physical Damage and C. EXTRA EXPENSE** and **MOBILE EQUIPMENT**), delay or loss of markets;

E.   Direct loss by breakdown of machinery and/or explosion of steam boilers, steam pipes, steam engines or steam turbines, unless a loss from a peril not otherwise excluded ensues, and then only for direct loss or damage caused by such peril. This exclusion does not apply to loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass;

F.   Loss of electrical appliances or devices of any kind, including wiring, arising from electrical injury or disturbance to the said electrical appliances or devices or wiring from artificially generated electrical current unless fire and/or explosion ensues, and then only for direct loss or damage caused by such ensuing fire and/or explosion, except as may be covered under **DATA PROCESSING**;

G.   Loss resulting from variation of humidity or temperature, shrinkage, evaporation, loss of weight or leakage in respect of a temperature controlled environment: unless a loss from a peril not otherwise excluded ensues, and then only for direct loss or damage caused by such peril;

H.   Loss by normal settling, normal shrinkage, or expansion of foundations, floors or ceilings;

I.   Inventory shortage, mysterious disappearances or loss resulting from any kind of infidelity or dishonesty on the part of the **ASSURED** or any employees; whether alone or in collusion with others;

J.   Penalties for non-completion or delay as respects property in course of construction or undergoing renovation;

K.   Loss by mechanical derangement, inherent defect or latent defect; unless a loss from a peril not otherwise excluded ensues, and then only for direct loss or damage caused solely by such ensuing peril;

L.   Loss resulting from processing or faulty workmanship with regard to all Property, unless a loss from a peril not otherwise excluded ensues, and then only for direct loss or damage caused solely by such ensuing peril;

M.   Loss of or damage to animals;

N.   Loss of or damage to aircraft including **UNMANNED AIRCRAFT**;

O.   Loss of or damage to watercraft over fifty (50) feet;

P.   Loss of or damage to standing timber, growing crops, land and land value;

Q.   Loss of or damage to accounts, bills, currency, money, notes, securities, deeds, evidences of debts;

R.   Loss of or damage to underground pipes, sewers, flues and drains outside of the covered building, unless as otherwise listed on the Schedule of Values on file with Underwriters;

S.  Loss of or damage to **ACCOUNTS RECEIVABLE** due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning, or as covered under **DATA PROCESSING**;

T.  Loss of or damage to:

(a) **DATA PROCESSING MEDIA** due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning;

(b) **DATA PROCESSING SYSTEMS** and **DATA PROCESSING MEDIA** due to dryness or dampness of atmosphere, extremes of temperature, corrosion, rust unless directly resulting from physical damage to the **DATA PROCESSING SYSTEM'S** air conditioning facilities caused by a Peril not otherwise excluded hereunder directly resulting therefrom;

(c) **DATA PROCESSING SYSTEMS** and **DATA PROCESSING MEDIA** due to loss of or damage to **DATA PROCESSING MEDIA** for accounts, bills, evidences of debt, **VALUABLE PAPERS**, records, abstracts, deeds, manuscripts or other documents, except as they may be converted to **DATA PROCESSING** form, and then only in that form;

(d) **DATA PROCESSING SYSTEMS** and **DATA PROCESSING MEDIA** due to loss or damage caused by error in machine programming or instructions to machine.

U.  Loss of or damage to electrical transmission and distribution lines outside of a covered building, unless as otherwise listed on the Schedule of Values on file with Underwriters.

V.  Loss due to or resulting from **FLOOD AND SURFACE WATER** for any Property in Flood Zone A, Zone AO, Zone AH, Zones A1-A30, Zone AE, Zone A99, Zone AR, Zone AR/AE, Zone AR/AO, Zone AR/A1-A30, Zone AR/A, Zone V, Zone VE, and Zones V1-V30 or to any other Flood Zone with a designation that begins with the letter A or V.

W.  Direct loss due to freeze as result of any intentional or negligent failure to:

(a) Properly and sufficiently maintain heat in any unoccupied or vacant building or property, regardless of the length of or reason for any unoccupancy or vacancy, in accordance with all applicable standards or guidelines.

(b) Properly and sufficiently protect machinery, pipes, other systems and/or equipment in accordance with all applicable standards, guidelines or manufacturer's instructions.


<u>**Coverage Section I Property -- Definitions**</u>

1.  **ACCOUNTS RECEIVABLE** means the sums due the **ASSURED** from customers; interest charges on any loan to offset impaired collections pending repayment of such sums; collection expense in excess of normal collection cost.

2.  **ACTUAL CASH VALUE** means the present day value of the cost to repair, rebuild, or replace property at the time of loss after first deducting for any physical wear and tear, and obsolescence of the property.

3.  **DATA PROCESSING** means the **ELECTRONIC DATA PROCESSING SYSTEMS** and **DATA PROCESSING MEDIA** owned, leased or rented, or under the control of the **ASSURED** or for which the **ASSURED** is liable.

4.  **DATA PROCESSING MEDIA** means the recording or storage devices such as films, tapes, discs, drums or cells, used for **ELECTRONIC DATA PROCESSING**.

5.    **DATA PROCESSING SYSTEMS** means the equipment and its component parts.

6.    **FINE ARTS** means paintings, etchings, pictures, tapestries, and other bona fide works of art including but not limited to statuary, marbles, bronzes, antique furniture, rare books, antique silver, rare manuscripts, porcelains, rare glass, and bric-a-brac of rarity, historical value or artistic merit.

7.    **OCCURRENCE** means an accident or accidental happening or accidental event or a series of related accidents or accidental happenings or accidental events involving one or more **ASSUREDS** which results in a direct physical damage or loss to the **PROPERTY OF THE ASSURED** that is both unexpected and unintended by the ASSURED(S). Only one Policy, one **SELF INSURED RETENTION**, and one **Specific Excess Limit of Insurance** is applicable to any one **OCCURRENCE**.

8.    **VALUABLE PAPERS** means written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, but does not mean money or securities.

## Coverage Section I Property — EXTRA EXPENSE

If property under **Coverage Section I Property** is damaged or destroyed by Perils insured against during the **PERIOD OF INSURANCE** which necessitates the incurrence of **EXTRA EXPENSE**, Underwriters will be liable for this **EXTRA EXPENSE**, not exceeding the actual loss sustained, and not exceeding such length of time, hereinafter referred to as the **PERIOD OF RESTORATION**. It is further agreed that this Extension in coverage does not increase, but just forms part of, Underwriters' **Specific Excess Limit of Insurance** as shown in the Schedule of Specific Excess Limits of Insurance.

This Extension also includes loss to **DATA PROCESSING** when (1) the premises in which the property is located is so damaged as to prevent access to such property or (2) as a direct result of a Peril insured against, the air conditioning system or electrical system necessary for the operation of the **DATA PROCESSING SYSTEMS** is so damaged as to reduce or suspend the **ASSURED'S** ability to actually perform the operations normally performed by the **DATA PROCESSING SYSTEMS**. **EXTRA EXPENSE** for **DATA PROCESSING** includes the expense of using other property or facilities of other concerns or other necessary emergency expenses.

## Coverage Section I Property — EXTRA EXPENSE Conditions

1.    **Resumption of Operations:**   It is a condition of this Policy that as soon as practical, the ASSURED will resume **NORMAL** business operations and dispense with **EXTRA EXPENSE**.

2.    **Interruption by Civil Authority:** Coverage hereunder is extended to include actual loss sustained when access to the premises in which the **PROPERTY OF THE ASSURED** is located is prohibited by order of civil authority as a direct result of loss caused by a Peril insured against.

## Coverage Section I Property — EXTRA EXPENSE Exclusions

In addition to **General Policy — Exclusions** and **Coverage Section I Property — Exclusions**, this Extension does not insure against:

A.    The suspension, lapse or cancellation of any lease, license, contract or order beyond the **PERIOD OF RESTORATION**;

**B.**     Interference at premises by strikers or other persons with the rebuilding, repairing or replacing of the property damaged or destroyed, or with the resumption or continuation of business;

**C.**     Loss of income, profits or earnings;

**D.**     The cost of repairing or replacing any of the Real or Personal Property covered hereunder, or the cost of research or other expense necessary to replace or restore damaged or destroyed books of account, abstracts, drawings, card index systems or other records (including film, tape, disc, drum, cell or other magnetic recordings or **DATA PROCESSING MEDIA**), that have been damaged or destroyed by the Perils insured against, except cost in excess of the normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing loss under this Policy. In no event shall such excess cost exceed the amount by which the total **EXTRA EXPENSE** loss otherwise payable under this Policy is thereby reduced;

**E.**     Loss resulting from theft of any property which at the time of loss is not an integral part of a building or structure (except direct loss by pillage and looting occurring during and at the immediate place or a riot or civil commotion), unless loss by a Peril covered under this Policy ensues from theft or attempted theft, and then Underwriters are liable for only such ensuing loss;

**F.**     Any other consequential loss.

### Coverage Section I Property — EXTRA EXPENSE Definitions

**1.**     **EXTRA EXPENSE** means the excess (if any) of the total cost incurred during the **PERIOD OF RESTORATION** chargeable to the continuance of the **ASSURED'S** operations, over and above the total cost that would normally have been incurred to conduct those operations during the same period had there been no direct physical loss or damage to the property.

Any salvage value of property obtained for temporary use during the **PERIOD OF RESTORATION** which remains after resumption of **NORMAL** operations, will be taken into consideration in the adjustment of any loss incurred.

**2.**     **NORMAL** means the condition that would have existed had no loss occurred.

**3.**     **PERIOD OF RESTORATION** means the period of time that:

(a)   Begins after a direct physical loss or damage to the **ASSURED'S** property; and

(b)   Ends the earlier of:

    (i)   The date when the property or such part of property that was damaged or destroyed at the Schedule of Locations on file with Underwriters is repaired, rebuilt or replaced with reasonable speed or similar quality; or

    (ii)   The date when the property or such part of property that was damaged or destroyed could have been repaired, rebuilt or replaced with the exercise of due diligence; or

    (iii)   The date when business is resumed at a new permanent location or at the same repaired, rebuilt or replaced location.

**PERIOD OF RESTORATION** does not include any increased period required due to the enforcement of any ordinance or law that:

(c)   Regulates the construction, use or repair, or requires the tearing down of any property; or

(d) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to; or assess the effects of **POLLUTANTS**.

The **PERIOD OF RESTORATION** is not limited by the expiration date of this Policy.

## Coverage Section I Property – Transit

This Policy covers Personal **PROPERTY OF THE ASSURED** or property held by the **ASSURED** in trust or on commission or in the care, custody or control of the **ASSURED** or for which the **ASSURED** may be held legally liable while in due course of transit against All Risks of Direct Physical Loss or Damage to the property insured occurring during the **PERIOD OF INSURANCE** of this Policy (including general average and salvage charges on shipments covered while waterborne). It is further agreed that this Extension in coverage does not increase, but just forms part of, Underwriters **Specific Excess Limits of Insurance** as shown in the **Schedule of Specific Excess Limits of Insurance**.

The **ASSURED** may accept ordinary Bills of Lading or receipts insured by carriers including those containing released and/or partially released value provisions, but the **ASSURED** shall not agree to release carriers from their common law or statutory liability.

## Coverage Section I Property – Transit Exclusions

In addition to **General Policy – Exclusions** and **Coverage Section I Property – Exclusions**, this Extension does not insure against:

**A.** Shrinkage, evaporation, loss of weight, leakage, breakage of glass or other fragile articles, marring, scratching, exposure to light, or change in color, texture or flavor, unless such loss is caused by a Peril not otherwise excluded in this Policy;

**B.** Loss caused by or resulting from misappropriation, conversion, infidelity or any dishonest act on the part of the **ASSURED** or other party of interest, or employees or agents or others to whom the property may be delivered or entrusted (carriers for hire excepted);

**C.** Loss caused by breakdown or derangement of refrigerating units;

**D.** Shipments by mail after delivery into the custody of any governmental postal service.

## Coverage Section I Property – BUSINESS INTERRUPTION

If property under **Coverage Section I Property** is damaged or destroyed by Perils insured against during the **PERIOD OF INSURANCE** which necessitates suspension of operations, Underwriters will be liable for loss of **BUSINESS INCOME** and **RENTAL VALUES** not exceeding the actual loss sustained, and not exceeding such length of time, hereinafter referred to as the **PERIOD OF RESTORATION**. It is further agreed that this Extension in coverage does not increase, but just forms part of, Underwriters **Specific Excess Limits of Insurance** as shown in the **Schedule of Specific Excess Limits of Insurance**.

### Coverage Section I Property – BUSINESS INTERRUPTION Conditions

1.  **Valuation:** Underwriters will indemnify the **ASSURED** for the amount of **BUSINESS INCOME** or **RENTAL VALUES** loss based on:

    (a) The Net Income of the business before the direct physical loss or damage occurred;

Pkg2016.1

(b) The likely Net Income of the business if no loss or damage occurred;

(c) The operating expenses including payroll expenses, necessary to resume **OPERATIONS** with the same quality of service that would have existed if no direct physical loss or damage occurred; and

(d) Other relevant sources of information including:

    (i)   Financial records and accounting procedures;

    (ii)  Bills, invoices, and other vouchers;

    (iii) Deeds, liens or contracts.

2. **Resumption of OPERATIONS**: Underwriters will reduce the amount of the **ASSURED'S BUSINESS INCOME** or **RENTAL VALUES** loss to the extent the **ASSURED** can resume **OPERATIONS**, with reasonable speed, in whole or in part, by using damaged or undamaged property at the described scheduled premises or elsewhere.

   If the **ASSURED** does not resume **OPERATIONS** with reasonable speed, or does not resume **OPERATIONS** in whole or in part, Underwriters will indemnify the **ASSURED** for a **BUSINESS INCOME** or **RENTAL VALUES** loss based on the length of time it would have taken to resume **OPERATIONS** with reasonable speed, or to resume **OPERATIONS** in whole or in part.

3. **Interruption by Civil Authority**: Coverage hereunder is extended to include actual loss sustained when access to the premises in which the **PROPERTY OF THE ASSURED** is located is prohibited by order of civil authority as a direct result of loss caused by a Peril insured against.

4. **Expenses to Reduce Loss**: If there is a **BUSINESS INCOME** or **RENTAL VALUES** loss Underwriters will indemnify the **ASSURED** for expenses necessarily incurred to reduce further loss of **BUSINESS INCOME** or **RENTAL VALUES**. The total loss payment for **BUSINESS INCOME** or **RENTAL VALUES** loss, and expense to reduce loss will not be more than the **BUSINESS INCOME** or **RENTAL VALUES** loss that would have been payable under this Extension if the expenses to reduce loss had not been incurred.

5. **BUSINESS INCOME**: If the necessary suspension of the **ASSURED'S OPERATIONS** produces a **BUSINESS INCOME** loss payable under this Policy, Underwriters will indemnify the **ASSURED** for the actual loss of **BUSINESS INCOME** incurred during the **PERIOD OF RESTORATION** that would have existed if no direct physical loss or damage had occurred.  This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance**.

6. **RENTAL VALUES**: If the necessary suspension of the **ASSURED'S OPERATIONS** produces a **RENTAL VALUES** loss payable under this Policy, Underwriters will indemnify the **ASSURED** for the actual loss of **RENTAL VALUES** incurred during the **PERIOD OF RESTORATION**, and up to ninety (90) consecutive days thereafter, that would have existed if no direct physical loss or damage had occurred. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance**.

<u>**Coverage Section I Property – BUSINESS INTERRUPTION Exclusions**</u>

In addition to **General Policy – Exclusions** and **Coverage Section I Property – Exclusions**, this Extension does not insure against:

A.   The suspension, lapse or cancellation of any lease, license, contract or order beyond the **PERIOD OF INSURANCE**;

B.  Interference at premises by strikers or other persons with the rebuilding, repairing or replacing the property damaged or destroyed or with the resumption or continuation of business;

C.  Enforcement of any local or state ordinance or law regulating the construction, repair or demolition of buildings or structures;

D.  Any other consequential loss.

### Coverage Section I Property – BUSINESS INTERRUPTION Definitions

1.  **BUSINESS INCOME** means the:

    (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

    (b) Continuing normal operating expenses incurred, including payroll.

2.  **BUSINESS INTERRUPTION** means the loss sustained during the suspension of **OPERATIONS** as a result of direct physical damage to the property insured.

3.  **OPERATIONS** means:

    (a) The **ASSURED'S** business activities occurring at the scheduled premises; and

    (b) The tenantability of the scheduled premises, (only if coverage for **BUSINESS INTERRUPTION** includes **RENTAL VALUES**).

4.  **PERIOD OF RESTORATION** means the period of time that:

    (a) Begins after a direct physical loss or damage to the **ASSURED'S** property; and

    (b) Ends on the earlier of:

        (i)  The date when the property or such part of property that was damaged or destroyed at the Schedule of Locations on file with Underwriters is repaired, rebuilt or replaced with reasonable speed or similar quality; or

        (ii) The date when the property or such part of property that was damaged or destroyed could have been repaired, rebuilt or replaced with the exercise of due diligence; or

        (iii) The date when business is resumed at a new permanent location or at the same repaired, rebuilt or replaced location.

    **PERIOD OF RESTORATION** does not include any increase period required due to the enforcement of any ordinance or law that:

    (c) Regulates the construction, use or repair, or requires the tearing down of any property; or

    (d) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**.

    The **PERIOD OF RESTORATION** is not limited by the Expiration Date of this Policy.

5.  **RENTAL VALUES** means the:

(a) Total anticipated rental income from tenant occupancy at the premises in the Schedule of Locations on file with Underwriters as furnished and equipped by the **ASSURED**; and

(b) Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be the **ASSURED'S** obligations; and

(c) Fair **RENTAL VALUES** for any portion of the premises stated in the Schedule of Locations on file with Underwriters, which is occupied by the **ASSURED**.

## Coverage Section II General Liability
### Coverage Section II General Liability -- Insuring Agreements

A.  **General Liability:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for all sums which the **ASSURED** is legally obligated to pay by reason of the liability imposed upon the **ASSURED** by law or assumed by the **ASSURED** under contract or agreement, for damage direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY** or **BODILY INJURY**, suffered or alleged to have been suffered by any person(s) or organization(s), and/or **PROPERTY DAMAGE** or the loss of use thereof, arising out of an **OCCURRENCE** from any cause including **HOST LIQUOR LIABILITY** and/or **LIQUOR LIABILITY**, and **INCIDENTAL MEDICAL MALPRACTICE** (except **INCIDENTAL MEDICAL MALPRACTICE**, arising out of **LAW ENFORCEMENT ACTIVITIES**) occurring during the **PERIOD OF INSURANCE**.

B.  **Premises MEDICAL PAYMENTS:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for all reasonable **MEDICAL PAYMENTS** incurred by the **ASSURED** to others (except employees of the **ASSURED** injured in the course of their employment, and to and for students), as are necessary at the time of an **OCCURRENCE** on account of **BODILY INJURY** occurring during the **PERIOD OF INSURANCE**. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance under Coverage Section II General Liability**.

C.  **SEXUAL HARASSMENT Liability:** Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions, to indemnify the **NAMED ASSURED** for all sums which the **NAMED ASSURED** is legally obligated to pay, as more fully defined by the term **ULTIMATE NET LOSS**, for the liability on the part of the **NAMED ASSURED**, including liabilities arising from negligent hiring, training and supervision, arising out of any **OCCURRENCE** resulting from any actual or alleged acts by any past, present or future official, board or commission member, trustee, director, employee or volunteer worker, of the **NAMED ASSURED** or other person or persons of **SEXUAL HARASSMENT** first committed during the **PERIOD OF INSURANCE** against another person who is not an **ASSURED** under this Policy. This provision applies only to the liability of the **NAMED ASSURED** to pay any settlement, verdict or judgment; providing that the sole liability imposed on the **NAMED ASSURED** does not arise from any contractual duty to indemnify a past, present or future official, board or commission member, trustee, director, employee or volunteer worker of the **NAMED ASSURED**. This coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for **SEXUAL HARASSMENT** Liability is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section II General Liability.**

Underwriters will not make payment for any loss, **OCCURRENCE**, **SUIT** or for any **DEFENSE COSTS** for any past, present or future official, board or commission member, trustee, director, employee or volunteer worker of the **NAMED ASSURED** or other person or persons in respect of actual or alleged **SEXUAL HARASSMENT**; however, with respect only to this **Coverage Section II General Liability -- Insuring Agreement C SEXUAL HARASSMENT**, Underwriters agree, subject to all other Policy limitations, terms and conditions, that as to any loss, **OCCURRENCE** or **SUIT** for any actual or alleged **SEXUAL HARASSMENT** against another person who is not an **ASSURED** under this Policy alleged to have been committed by a past, present or future official, board or commission member, trustee, director, employee or volunteer worker of the **NAMED ASSURED** only, Underwriters will indemnify that official, board or commission member, trustee, director, employee or volunteer worker of the **NAMED ASSURED** for all reasonable **DEFENSE COSTS** to the extent such **DEFENSE COSTS** are incurred prior to the date on which, by either agreement, admission, or settlement of a loss or by an adjudication, it is determined that the official, board or commission member, trustee, director, employee or volunteer worker of the **NAMED ASSURED** committed an act of **SEXUAL HARASSMENT**. Coverage only applies if the act of **SEXUAL HARASSMENT** was first committed during the **PERIOD OF INSURANCE**. Further, this coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for **SEXUAL HARASSMENT**

Liability is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section II General Liability.**

**D.** **SEXUAL ABUSE Liability:** Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions, to indemnify the **NAMED ASSURED** for all sums which the **NAMED ASSURED** is legally obligated to pay, as more fully defined by the term **ULTIMATE NET LOSS**, for the liability on the part of the **NAMED ASSURED**, including liabilities arising from negligent hiring, training and supervision, out of any **OCCURRENCE** resulting from any actual or alleged acts by past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** or other person or persons of **SEXUAL ABUSE** first committed during the **PERIOD OF INSURANCE** against another person who is not an **ASSURED** under this Policy. This provision applies only to the liability of the **NAMED ASSURED** to pay any settlement, verdict or judgment; providing that the sole liability imposed on the **NAMED ASSURED** does not arise from any contractual duty to indemnify an past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED**. This coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for **SEXUAL ABUSE** Liability is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section II General Liability.**

Underwriters will not make payment for any loss, **OCCURRENCE, SUIT** or for any **DEFENSE COSTS** for past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** or other person or persons in respect of actual or alleged **SEXUAL ABUSE**; however, with respect only to this **Coverage Section II General Liability – Insuring Agreement D. SEXUAL ABUSE**, Underwriters agree, subject to all other Policy limitations, terms and conditions, that as to any loss, **OCCURRENCE** or **SUIT** for any actual or alleged **SEXUAL ABUSE** against another person who is not an **ASSURED** under this Policy alleged to have been committed by a past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** only, Underwriters will indemnify that official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** for all reasonable **DEFENSE COSTS** to the extent such **DEFENSE COSTS** are incurred prior to the date on which, by either agreement, admission, or settlement of a loss or by an adjudication, it is determined that the official, board or commission member, trustee, director, employee, or volunteer worker committed of the **NAMED ASSURED** an act of **SEXUAL ABUSE**. Coverage only applies if the act of **SEXUAL ABUSE** was first committed during the **PERIOD OF INSURANCE**. Further, this coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for **SEXUAL ABUSE** Liability is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section II General Liability.**

Neither this coverage nor any subsequent coverage provided by Underwriters will apply to any **SEXUAL ABUSE** involving the same official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** or other person or persons which occurred after the **DISCOVERY** by any of the **NAMED ASSURED'S** officials, trustees, directors, officers or partners of any actual, attempted or pending alleged **SEXUAL ABUSE** by said perpetrator.

Following **DISCOVERY** of any actual, attempted or pending alleged **SEXUAL ABUSE** during the **PERIOD OF INSURANCE**, the **NAMED ASSURED** shall give notification of such **DISCOVERY** to Underwriters as soon as practicable but no more than 120 consecutive days after the initial **DISCOVERY**, and in any event within the **PERIOD OF INSURANCE** or sixty (60) consecutive days after the expiration of the **PERIOD OF INSURANCE** during which the **OCCURRENCE** of SEXUAL ABUSE first took place; whichever is later. Any failure to comply with this provision for any reason whatsoever will result in the absolute exclusion of any resulting **SEXUAL ABUSE** claim or claims, irrespective of whether Underwriters have been prejudiced by said failure.

L0016997/0004102318

E.   **Damage to Premises Rented to the ASSURED:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for all sums which the **ASSURED** is legally obligated to pay for loss or damage caused by fire, explosion, smoke, riot or civil commotion occurring during the **PERIOD OF INSURANCE** to premises rented to the **ASSURED** or temporarily occupied by the **ASSURED** with the permission of the owner. This coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for **Damage to Premises Rented to the ASSURED** is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section II General Liability**.

### Coverage Section II General Liability – Excess Limits of Insurance

Underwriters' **Specific Excess Limit of Insurance** per **OCCURRENCE** for **Coverage Section II General Liability** is limited to, and not to exceed, the Specific Excess Limits as stated in the **Schedule of Specific Excess Limits of Insurance**, over the **SELF INSURED RETENTION**, as stated in the **Schedule of SELF INSURED RETENTIONS**.

If an Annual Aggregate applies to any coverage under this Coverage **Section II General Liability**, the total Aggregate **Excess Limit of Insurance** for such coverage under this Coverage Section combined during the **PERIOD OF INSURANCE** shall not exceed the Annual Aggregate limit as stated in the applicable Coverage Section of the **Schedule of Specific Excess Limits of Insurance**.

### Coverage Section II General Liability – Exclusions

**In addition to the General Policy – Exclusions, this Coverage Section does not insure against:**

A.   Any claim for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of this Policy, whether or not a limit is stated in the **Schedule of Specific Excess Limits of Insurance**;

B.   **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL INJURY** which the **ASSURED** intended or expected; unless resulting from:

   (a)   **BODILY INJURY** resulting from the use of reasonable force to protect persons or property;

   (b)   Corporal punishment (unless providing coverage for corporal punishment is prohibited by law).

   (c)   **Coverage Section II General Liability – Insuring Agreements C. SEXUAL HARASSMENT Liability** and **Coverage Section II General Liability – Insuring Agreements D. SEXUAL ABUSE Liability**; but only to the extent that coverage for **SEXUAL HARASSMENT** and **SEXUAL ABUSE** is specifically given, and only if a **SUBLIMIT** for **SEXUAL HARASSMENT** and **SEXUAL ABUSE** coverage is stated in the **Schedule of Specific Excess Limits of Insurance.**

C.   Liability arising out of the ownership, maintenance or use, including loading or unloading, of watercraft over 50 feet, except with respect to use of same where operations are performed by independent contractors;

D.   Damage to or destruction of **PROPERTY OF THE ASSURED**;

E.   Liability arising out of the ownership, maintenance, loading or unloading, use or operations of any aircraft including **UNMANNED AIRCRAFT**, airfields, runways, hangars, buildings, or other properties in connection with aviation activities, other than premises liability in buildings to which the general public is admitted;

Pkg2016.1

F. Any claim for which the **ASSURED** may be held liable under any Workers' Compensation, unemployment compensation, disability benefits law, employers' liability or under any similar law; or to **BODILY INJURY** to any employee of the **ASSURED**; or to any liability for indemnity or contribution brought by any party against the **ASSURED** for **BODILY INJURY** to any employee of an **ASSURED**;

G. The cost of any investigation, disciplinary or criminal proceedings against an individual **ASSURED** except that Underwriters may, at their own option and expense, associate counsel in the defense of any such investigation, criminal or disciplinary proceeding. Should Underwriters elect to associate counsel, such elections shall not constitute a waiver or estoppel of any rights Underwriters may have pursuant to the terms, conditions, exclusions and limitations of this Policy;

H. Any claim arising from **WRONGFUL ACTS** and/or **EMPLOYMENT PRACTICE VIOLATIONS**;

I. Any claim arising from **LAW ENFORCEMENT ACTIVITIES**;

J. Any claim arising out of Medical Malpractice, but not to exclude **INCIDENTAL MEDICAL MALPRACTICE**.

### Coverage Section II General Liability — Definitions

1. **DISCOVERY** of any actual, attempted or pending alleged **SEXUAL ABUSE** shall exist when any of the **NAMED ASSURED'S** officials, trustees, directors, officers, partners or any person that the **NAMED ASSURED** has made responsible in an official capacity to prevent **SEXUAL ABUSE** has taken receipt, learned, or in the exercise of reasonable care should have known:

   (a) of any lawsuit alleging **SEXUAL ABUSE**; or

   (b) of any demand for money or services based upon alleged **SEXUAL ABUSE**; or

   (c) of any criminal investigation or prosecution alleging **SEXUAL ABUSE**; or

   (d) of any allegation by an alleged victim or by a parent or guardian of the alleged victim of **SEXUAL ABUSE**, whether the allegation is or is not accompanied by a demand for money or services; or

   (e) of any report from any other person alleging **SEXUAL ABUSE**, and a person or group designated by the **NAMED ASSURED** to investigate the allegation has investigated and as a result of the investigation has recommended that any action of any kind be taken by or on behalf of the **NAMED ASSURED** with respect either to the alleged **ASSURED** or the alleged victim; or

   (f) that the alleged **ASSURED** has admitted to acts of **SEXUAL ABUSE**.

2. **DEFENSE COSTS** means the expenses incurred for the investigation and defense of an **OCCURRENCE** or **SUIT** arising out of the **SEXUAL HARASSMENT** or **SEXUAL ABUSE** or a series of related **SEXUAL HARASSMENTS** or **SEXUAL ABUSES** by one or more **ASSUREDS**. However, the salaries, expense and administrative cost of the **ASSURED** or the **ASSURED'S** **THIRD PARTY CLAIM ADMINISTRATOR** are not included within the meaning of **DEFENSE COSTS**.

3. **HOST LIQUOR LIABILITY** and/or **LIQUOR LIABILITY** means indemnification for the **ASSURED'S** liability for the sale or distribution of alcoholic beverage by reason of any local, State or Federal liquor control laws in force at the time of the **OCCURRENCE**.

4.    INCIDENTAL MEDICAL MALPRACTICE means BODILY INJURY or PERSONAL INJURY arising out of the rendering of or failure to render emergency and/or first aid medical services which shall be understood to include, but not limited to, the dispensing of medication and/or the administering of inoculations and/or blood tests and the like (i.e.: medicines/tests normally administered by a Healthcare Department that are preventative in nature and do not require advanced medical diagnosis) but where there are no overnight stays.

However, INCIDENTAL MEDICAL MALPRACTICE does not include services provided by:

(a)  a hospital or emergency room facility;

(b)  a physician, medical doctor, osteopath, chiropractor, resident, extern, or intern;

(c)  a psychiatrist;

(d)  a pharmacist;

(e)  a dentist, orthodontist, or periodontist.

5    OCCURRENCE means an accident or a happening or event or a continuous or repeated exposure to conditions which results in BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, SEXUAL HARASSMENT or SEXUAL ABUSE during the PERIOD OF INSURANCE.

All BODILY INJURIES, PERSONAL INJURIES or SEXUAL HARASSMENT or SEXUAL ABUSE to one or more persons and/or PROPERTY DAMAGE arising out of an accident or a happening or event or a continuous or repeated exposure to conditions shall be deemed one OCCURRENCE. Only one Policy, one SELF INSURED RETENTION, and one Specific Excess Limit of Insurance is applicable to any one OCCURRENCE.

## Coverage Section III AUTOMOBILE Liability

### Coverage Section III AUTOMOBILE Liability – Insuring Agreements

**A.**  **AUTOMOBILE Liability:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for all sums which the **ASSURED** is obligated to pay by reason of the liability imposed upon the **ASSURED** by law or assumed by the **ASSURED** under contract or agreement, including non-owned and hired **AUTOMOBILES**, for damages direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, arising out of any **OCCURRENCE** on account of **BODILY INJURY** or **PERSONAL INJURY**, suffered or alleged to have been suffered by any person(s) or organization(s) and/or **PROPERTY DAMAGE**, arising out of the ownership, operation, maintenance or use of an **AUTOMOBILE**, occurring during the **PERIOD OF INSURANCE**.

**B.**  **AUTOMOBILE MEDICAL PAYMENTS:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for all reasonable **MEDICAL PAYMENTS** incurred by the **ASSURED** to others (except employees of the **ASSURED** injured in the course of their employment) as are necessary at the time of an **OCCURRENCE** on account of **BODILY INJURY** arising out of the ownership, operation, maintenance or use of an **AUTOMOBILE** occurring during the **PERIOD OF INSURANCE**. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance**.

**C.**  **Uninsured Motorist/Underinsured Motorist:** Uninsured/Underinsured Motorist Coverage is afforded in respect of any **OCCURRENCE** at least to the minimum extent required by the law of the State in which each owned or hired **AUTOMOBILE** is principally garaged. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance**.

**D.**  **No Fault Insurance:** No Fault insurance is afforded in respect of any **OCCURRENCE** at least to the minimum extent required by the law of the State in which each owned or hired **AUTOMOBILE** is principally garaged. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance**.

**E.**  **Garagekeeper's Legal Liability:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for all sums which the **ASSURED** is legally obligated to pay for loss or damage occurring during the **PERIOD OF INSURANCE** to **AUTOMOBILES** left in the **ASSURED'S** care for which the **ASSURED** is legally obligated. This coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for **Garagekeeper's Legal Liability** is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section III Automobile Liability.**

### Coverage Section III AUTOMOBILE Liability – Specific Excess Limits of Insurance

Underwriters' **Specific Excess Limit of Insurance** per OCCURRENCE for **Coverage Section III AUTOMOBILE Liability** is limited to, and not to exceed the Specific Excess Limits as stated in the **Schedule of Specific Excess Limits of Insurance**, over the **SELF INSURED RETENTION**, as stated in the **Schedule of SELF INSURED RETENTIONS**.

If an Annual Aggregate applies to any coverage under this **Coverage Section III AUTOMOBILE Liability**, the total Aggregate **Excess Limit of Insurance** for such coverage under this Coverage Section combined during the **PERIOD OF INSURANCE** shall not exceed the Annual Aggregate limit as stated in the applicable Coverage Section of the **Schedule of Specific Excess Limits of Insurance**.

### Coverage Section III AUTOMOBILE Liability – Exclusions

**In addition to General Policy – Exclusions, this Coverage Section does not insure against:**

A.   Any claims for damages, whether direct or consequential, or for any cause of action which is covered under any other Coverage Section of this Policy, whether or not a limit is stated in the **Schedule of Excess Limits of Insurance**;

B.   Any claim that is paid or is payable to or for the **ASSURED** under any Worker's Compensation, disability benefits law, employers' liability or under any similar law or to **BODILY INJURY** to any employee or to any liability for indemnity or contribution brought by any party for **BODILY INJURY** to any employee;

C.   Covered **AUTOMOBILES** used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity;

### Coverage Section III AUTOMOBILE Liability – Definitions

1.   **OCCURRENCE** means an accident or a happening or event or a continuous or repeated exposure to conditions which results in **BODILY INJURY, PROPERTY DAMAGE**, or **PERSONAL INJURY** during the **PERIOD OF INSURANCE**.

All **BODILY INJURIES** or **PERSONAL INJURIES** to one or more persons and/or **PROPERTY DAMAGE** arising out of an accident or a happening or event or a continuous or repeated exposure to conditions shall be deemed one **OCCURRENCE**. Only one Policy, one **SELF INSURED RETENTION**, and one **Specific Excess Limit of Insurance** is applicable to any one **OCCURRENCE**.

2.   **ASSURED** means not only the **ASSURED** as defined in the **GENERAL POLICY DEFINITIONS**, but under this **Coverage Section III AUTOMOBILE Liability** also includes any person while using an owned or hired **AUTOMOBILE** with the permission of the **ASSURED**.

Pkg2016.1

## Coverage Section IV Public Officials Miscellaneous Liability

### This is a Claims Made Section

### Coverage Section IV Public Officials Miscellaneous Liability — Insuring Agreements

Coverage is provided for one or more of the coverage options in this Coverage Section only if a **Specific Excess Limit of Insurance** is stated in the **Schedule of Specific Excess Limits of Insurance**, and a **SELF INSURED RETENTION** is stated in the **Schedule of SELF INSURED RETENTIONS** for each Coverage chosen.

A.   **Errors & Omissions:** Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions, to indemnify the **ASSURED** for all sums for which the **ASSURED** is legally obligated to pay, as more fully defined by the term **ULTIMATE NET LOSS**, by reason of a **WRONGFUL ACT**. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance**.

This coverage applies only if a **CLAIM** for damages, because of a **WRONGFUL ACT**, is "first made" against the **ASSURED** during the **PERIOD OF INSURANCE**. The **WRONGFUL ACT** must have first occurred on or after Retroactive Date shown in the **Schedule of Specific Excess Limits of Insurance**, but in no event any later than the last day of the **PERIOD OF INSURANCE**. The **CLAIM** must be reported to Underwriters as soon as practical but in no event later than sixty (60) consecutive days following the expiration of the **PERIOD OF INSURANCE**, or during the based on or arising out of one **WRONGFUL ACT** shall be considered "first made" when the first of such **CLAIMS** is made to the **ASSURED**. A **CLAIM** shall not be prejudiced if the **ASSURED,** through clerical oversight or clerical mistake, fails to notify Underwriters within the time provided for under this Coverage Section.

B.   **Employment Practice Liability:** Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions, to indemnify the **ASSURED** for all sums for which the **ASSURED** is legally obligated to  pay, as more fully defined by the term **ULTIMATE NET LOSS**, by reason of an **EMPLOYMENT   PRACTICE  VIOLATION**, including  mental  anguish  resulting  from  an **EMPLOYMENT PRACTICE VIOLATION**. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance**.

This coverage applies only if a **CLAIM** for damages, because of an **EMPLOYMENT PRACTICE VIOLATION**, is "first made" against the **ASSURED** during the **PERIOD OF INSURANCE**. The **EMPLOYMENT PRACTICE VIOLATION** must have first occurred on or after Retroactive Date shown in the **Schedule of Specific Excess Limits of Insurance**, but in no event any later than the last day of the **PERIOD OF INSURANCE**. The **CLAIM** must be reported to Underwriters as soon as practical but in no event later than sixty (60) consecutive days following the expiration of the **PERIOD OF INSURANCE**, or during the Extended Reporting Period applicable to this coverage, if any. All **CLAIMS** based on or arising out of one **EMPLOYMENT PRACTICE VIOLATION** shall be considered "first made" when the first of such **CLAIMS** is made to the **ASSURED**. A **CLAIM** shall not be prejudiced if the **ASSURED**, through clerical oversight or clerical mistake, fails to notify Underwriters within the time provided for under this Coverage Section.

C.   **SEXUAL HARASSMENT Liability:** Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions, to indemnify the **NAMED ASSURED** for all sums for which the **NAMED ASSURED** is legally obligated to pay, as more fully defined by the term **ULTIMATE NET LOSS**, by reason of **SEXUAL HARASSMENT** by any past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** to an **ASSURED**. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance**.

This coverage applies only if a **CLAIM** for damages, because of **SEXUAL HARASSMENT**, is "first made" against the **ASSURED** during the **PERIOD OF INSURANCE**. The **SEXUAL HARASSMENT** must have first occurred on or after Retroactive Date shown in the **Schedule of Specific Excess Limits of Insurance**, but in no event any later than the last day of the **PERIOD OF INSURANCE**. The **CLAIM** must be reported to Underwriters as soon as practical but in no event later than sixty (60) consecutive days following the expiration of the **PERIOD OF INSURANCE**, or during the Extended Reporting Period applicable to this coverage, if any. A **CLAIM** shall not be prejudiced if the **ASSURED**, through clerical oversight or clerical mistake, fails to notify Underwriters within the time provided for under this Coverage Section. All **CLAIMS** based on or arising out of one **SEXUAL HARASSMENT** shall be considered first made when the first of such **CLAIMS** is made to the **ASSURED**, regardless of:

(a)   The number of persons **SEXUALLY HARASSED**;

(b)   The number of locations where the **SEXUAL HARASSMENT** occurred;

(c)   The number of acts of **SEXUAL HARASSMENT** prior to or after the first **CLAIM** is made; or

(d)   The period of time over which the **SEXUAL HARASSMENT** took place, whether the **SEXUAL HARASSMENT** is during, before or after the **PERIOD OF INSURANCE**. However, only acts of **SEXUAL HARASSMENT** that take place after the Retroactive Date and before the end of the **PERIOD OF INSURANCE** are covered.

Underwriters will not make payment for any loss, **CLAIM** or for any **DEFENSE COSTS** for any past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** in respect of actual or alleged **SEXUAL HARASSMENT** to an **ASSURED**. However, with respect only to this Insuring Agreement C., Underwriters agree, subject to all other Policy limitations, terms and conditions, that as to any **CLAIM** or **SUIT** for **SEXUAL HARASSMENT** against an **ASSURED** by any past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED**, Underwriters will indemnify that official, board or commission member, trustee, director, employee, or volunteer worker for all reasonable **DEFENSE COSTS** to the extent such **DEFENSE COSTS** are incurred prior to the date on which, by either agreement, admission, or settlement of a **CLAIM** or by an adjudication, it is determined that the official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** committed an act of **SEXUAL HARASSMENT** against an **ASSURED**. This coverage forms part of the overall **SEXUAL HARASSMENT LIABILITY** limit and not in addition thereof as stated in the **Schedule of Specific Excess Limits of Insurance**.

**D.**     **SEXUAL ABUSE Liability:** Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions, to indemnify the **NAMED ASSURED** for all sums for which the **NAMED ASSURED** is legally obligated to pay, as more fully defined by the term **ULTIMATE NET LOSS**, by reason of **SEXUAL ABUSE** by past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the **NAMED ASSURED** to an **ASSURED**. This coverage applies only if a **SUBLIMIT** is stated in the **Schedule of Specific Excess Limits of Insurance.**

This coverage applies only if a **CLAIM** for damages, because of **SEXUAL ABUSE**, is "first made" against the **ASSURED** during the **PERIOD OF INSURANCE**. The **SEXUAL ABUSE** must have first occurred on or after Retroactive Date shown in the **Schedule of Specific Excess Limits of Insurance**, but in no event any later than the last day of the **PERIOD OF INSURANCE**. The **CLAIM** must be reported to Underwriters as soon as practical but in no event later than sixty  (60) consecutive days following the expiration of the **PERIOD OF INSURANCE**, or during the Extended Reporting Period applicable to this coverage, if any.

All **CLAIMS** based on or arising out of one **SEXUAL ABUSE** shall be considered first made when the first of such **CLAIMS** is made to the **ASSURED**, regardless of:

(a) The number of persons SEXUALLY ABUSED;

(b) The number of locations where the SEXUAL ABUSE occurred;

(c) The number of acts of SEXUAL ABUSE prior to or after the first CLAIM is made; or

(d) The period of time over which the SEXUAL ABUSE took place, whether the SEXUAL ABUSE is during, before or after the PERIOD OF INSURANCE. However, only acts of SEXUAL ABUSE that take place after the Retroactive Date and before the end of the PERIOD OF INSURANCE are covered.

Underwriters will not make payment for any loss, CLAIM or for any DEFENSE COSTS for any past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the NAMED ASSURED in respect of actual or alleged SEXUAL ABUSE to an ASSURED. However, with respect only to this Coverage Section IV Public Officials Miscellaneous Liability - Insuring Agreement D. SEXUAL ABUSE liability. Underwriters agree, subject to all other Policy limitations, terms and conditions, that as to any CLAIM or SUIT for SEXUAL ABUSE against an ASSURED by any past, present or future official, board or commission member, trustee, director, employee, or volunteer worker of the NAMED ASSURED, Underwriters will indemnify that official, board or commission member, trustee, director, employee, or volunteer worker of the NAMED ASSURED for all reasonable DEFENSE COSTS to the extent such DEFENSE COSTS are incurred prior to the date on which, by either agreement, admission, or settlement of a CLAIM or by an adjudication, it is determined that the official, board or commission member, trustee, director, employee, or volunteer worker committed an act of SEXUAL ABUSE against an ASSURED. This coverage forms part of the overall SEXUAL ABUSE LIABILITY limit and not in addition thereof as stated in the Schedule of Specific Excess Limits of Insurance.

Neither this coverage nor any subsequent coverage provided by Underwriters will apply to any SEXUAL ABUSE involving the same official, board or commission member, trustee, director, employee, or volunteer worker which occurred after the DISCOVERY by any of the NAMED ASSURED'S officials, trustees, directors, officers or partners of any actual, attempted or pending alleged SEXUAL ABUSE by said perpetrator.

Following DISCOVERY of any actual, attempted or pending alleged SEXUAL ABUSE during the PERIOD OF INSURANCE, the NAMED ASSURED shall give notification of such DISCOVERY to Underwriters as soon as practicable but no more than one hundred and twenty (120) consecutive days after the initial DISCOVERY, and in any event within sixty (60) consecutive days following the expiration of the PERIOD OF INSURANCE or any Extended Reporting Period. Any failure to comply with this provision for any reason whatsoever will result in the absolute exclusion of any resulting SEXUAL ABUSE CLAIM or CLAIMS, irrespective of whether Underwriters have been prejudiced by said failure.

### Coverage Section IV Public Officials Miscellaneous Liability – Specific Excess Limits of Insurance

Underwriters' Specific Excess Limit of Insurance per CLAIM for any coverage under Coverage Section IV – Public Officials Miscellaneous Liability is limited to, and not to exceed, the Specific Excess Limits as stated in the Schedule of Specific Excess Limits of Insurance, over the SELF INSURED RETENTION as stated in the Schedule of SELF INSURED RETENTIONS.

If an Annual Aggregate applies to any coverage under this Coverage Section IV Public Officials Miscellaneous Liability, the total Aggregate Excess Limit of Insurance for such coverage under this Coverage Section combined during the PERIOD OF INSURANCE shall not exceed the Annual Aggregate limit as stated in the applicable Coverage Section of the Schedule of Specific Excess Limits of Insurance.

**Coverage Section IV Public Officials Miscellaneous Liability -- Conditions**

**A.     Basic Extended Reporting Period:**

A Basic Extended Reporting Period is automatically provided without additional charge.  This period starts with the end of the **PERIOD OF INSURANCE**, and lasts for sixty (60) consecutive days.

If, however, this Policy and this Coverage Section is succeeded by similar Claims Made insurance coverage, with any insurer, on which the Retroactive Date is the same as or earlier than the Retroactive Date shown in the applicable Coverage Section of the **Schedule of Specific Excess Limits of Insurance** of this Policy, the succeeding Policy shall be deemed to be a renewal of this Policy, and the **ASSURED** shall have no right to an Extended Reporting Period from Underwriters.

The Basic Extended Reporting Period does not apply to **CLAIMS** that are covered under any subsequent insurance applicable to this Coverage Section which the **ASSURED** purchases, or that would have been covered but for exhaustion of the amount of insurance applicable to such **CLAIMS**.

**B.     Supplemental Extended Reporting Period:**

Underwriters will provide an Extended Reporting Period, as described below, if:

(a)  This Policy or this Coverage Section of this Policy is cancelled or non-renewed;  or

(b)  Underwriters renew or replace this Policy, or this Coverage Section of this Policy, with insurance that does not apply to a **WRONGFUL ACT, EMPLOYMENT PRACTICE VIOLATION, SEXUAL HARASSMENT** or **SEXUAL ABUSE** on a Claims Made basis.

A Supplemental Extended Reporting Period of one (1) year duration is available but only by endorsement to this Policy and for an additional premium not to exceed 100% of the annual premium for this Coverage Section. This supplemental period starts when the Basic Extended Reporting Period ends.

The **ASSURED** must give Underwriters a written request for the endorsement within thirty (30) consecutive days after the end of the **PERIOD OF INSURANCE**. The Supplemental Extended Reporting Period will not go into effect unless the **ASSURED** pays the additional premium within thirty (30) consecutive days. This endorsement will set forth the terms consistent with the Coverage Section.

Underwriters shall determine the additional premium in accordance with its applicable rules, rates and underwriting practices. Coverage for **CLAIMS** received during such Supplemental Extended Reporting Period is excess over any other valid and collectible insurance available under any other policies.

Extended Reporting Periods do not reinstate or increase the applicable **SELF INSURED RETENTION**, the **LOSS FUND**, the applicable **Specific Excess Limit of Insurance**, or the **Excess Loss Fund Protection**.

Extended Reporting Periods do not extend the **PERIOD OF INSURANCE** or change the scope of coverage provided within this Coverage Section. They apply to **CLAIMS** arising out of a **WRONGFUL ACT, EMPLOYMENT PRACTICE VIOLATION, SEXUAL HARASSMENT** or **SEXUAL ABUSE** that take place before the end of the **PERIOD OF INSURANCE** that this Policy and this Coverage Section are in force. Once in effect, Extended Reporting Periods may not be canceled.

Pkg2016.1

C.   **Reporting to Underwriters:**

For the purposes of compliance with the reporting requirements of this Coverage Section, the **ASSURED'S** reporting of a **CLAIM** to the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** shall be considered reporting of the **CLAIM** to Underwriters, provided that:

(a) The **CLAIM** is reported to the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** no later than sixty (60) consecutive days following the expiration of the **PERIOD OF INSURANCE** or the applicable **Extended Reporting Period**, if any; and

(b) The **CLAIM**, if not otherwise reportable to Underwriters pursuant to **General Policy Condition 7**, appears on the **ASSURED'S** list of **CLAIMS** or loss run, as reported by the **THIRD PARTY CLAIM ADMINISTRATOR** to Underwriters, that includes all **CLAIMS** for the **PERIOD OF INSURANCE** or applicable **Extended Reporting Period**, if any.

### Coverage Section IV Public Officials Miscellaneous Liability – Exclusions

**In addition to General Policy Exclusions, this Coverage Section does not insure against:**

A.   Any **CLAIM** for damages, whether direct or consequential, for **BODILY INJURY, PERSONAL INJURY,** or **PROPERTY DAMAGE;** or for any cause of action which is covered under any other Coverage Section of this Policy;

B.   Any **CLAIM** based upon or attributable to any **ASSURED** gaining in fact any personal profit or advantage to which they were not legally entitled including remuneration paid in violation of law as determined by the Courts;

C.   Any **CLAIM** based upon or attributable to the rendering or failure to render any opinion, treatment, consultation or service unless acting within the scope of their duties as an **ASSURED;**

D.   Any **CLAIM** arising out of or in any way involving any employee benefit plan, except as covered under this **Coverage Section IV – Public Officials Miscellaneous Liability – Insuring Agreements B. Employment Practice Liability** for discrimination;

E.   **CLAIMS, SUITS,** proceedings, demands, or actions seeking relief or redress in any form other than monetary damages, including defense of same; or any loss, fees, costs or expenses which the **ASSURED** may be obligated to pay to any third-party as a result of any adverse judgment for declaratory relief or administrative relief or injunctive relief, except that this exclusion shall not apply to any **CLAIM** made to the Equal Employment Opportunity Commission (E.E.O.C.), or such similar federal, state or local administrative agency established to handle or adjudicate **EMPLOYMENT PRACTICE VIOLATIONS** that involve or arise from alleged employment discrimination other than **CLAIMS** brought under the federal Fair Labor Standards Act or similar state act or law;

F.   Any cost, civil fine, penalty or expense against any **ASSURED** arising from any complaint or enforcement action from any federal, state or local governmental regulatory agency;

G.   Any **CLAIM** for which an **ASSURED** is entitled to indemnity under any Policy or policies the term of which has expired prior to the inception date of this Policy, or for which an **ASSURED** would be entitled to indemnity except for the exhaustion of the limit of such prior insurance;

H.   Any **CLAIM** arising out of any pending or prior litigation or hearing, as well as future **CLAIMS** arising out of any pending or prior litigation or hearing. If this Policy is a renewal of a Policy issued by Underwriters, this exclusion shall only apply with respect to **CLAIMS** arising out of any pending

or prior litigation or hearing, prior to the effective date of the first Policy issued and continuously renewed by Underwriters.

I.     Any **CLAIM** brought as a counter-**CLAIM** or cross **CLAIM** by an **ASSURED** against any other **ASSURED** however, this exclusion does not apply to **EMPLOYMENT PRACTICE VIOLATIONS**;

J.     Any **CLAIM** alleging, based upon, arising out of or attributable to breach of any express, implied, actual or constructive contract, agreement, warranty, guarantee or promise, unless liability would have attached to the **ASSURED** even in the absence of such contract, agreement, warranty, guarantee or promise. However, this exclusion shall not apply to **CLAIMS** alleging violation of employment contracts brought by employees or officials;

K.     Any **CLAIM** for the return of money or property, other than **PROPERTY OF THE ASSURED**, that is being held by the **ASSURED**, or that is in the care, custody, or control of the **ASSURED**;

L.     Any **CLAIM** for the return of any fees, taxes, assessments, or other similar payments made to the **ASSURED**.

M.     Any **CLAIM** arising from **LAW ENFORCEMENT ACTIVITIES**.

### Coverage Section IV Public Officials Miscellaneous Liability — Definitions

1.     **CLAIM** means all notices or **SUITS** demanding payment of money based on, or arising out of the same **WRONGFUL ACT, SEXUAL HARASSMENT** or **SEXUAL ABUSE** or a series of related **WRONGFUL ACTS, SEXUAL HARASSMENT** or **SEXUAL ABUSE** by one or more **ASSUREDS**.

     However, as respects to **EMPLOYMENT PRACTICE LIABILITY, CLAIM** means: all notices or **SUITS** demanding payment of money, or charges filed with the Equal Employment Opportunity Commission or comparable federal, state or local administrative agency based on, or arising out of the same **EMPLOYMENT PRACTICE VIOLATION** or a series of related **EMPLOYMENT PRACTICE VIOLATIONS** by one or more **ASSUREDS**.

2.     **DEFENSE COSTS** means the expenses incurred for the investigation and defense of a **CLAIM** or **SUIT** arising out of the same **EMPLOYMENT PRACTICE VIOLATION, WRONGFUL ACT, SEXUAL HARASSMENT** or **SEXUAL ABUSE** or a series of related **EMPLOYMENT PRACTICE VIOLATIONS, WRONGFUL ACTS, SEXUAL HARASSMENTS** or **SEXUAL ABUSES** by one or more **ASSUREDS**. However, the salaries, expense and administrative cost of the **ASSURED** or the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** are not included within the meaning of **DEFENSE COSTS**.

3.     **DISCOVERY** of any actual, attempted or pending alleged **SEXUAL ABUSE** shall exist when any of the **NAMED ASSURED'S** officials, trustees, directors, officers, partners or any person that the **NAMED ASSURED** has made responsible in an official capacity to prevent **SEXUAL ABUSE** has taken receipt, learned, or in the exercise of reasonable care should have known:

     (a)   Of any lawsuit alleging **SEXUAL ABUSE**; or

     (b)   Of any demand for money or services based upon alleged **SEXUAL ABUSE**; or

     (c)   Of any criminal investigation or prosecution alleging **SEXUAL ABUSE**; or

     (d)   Of any allegation by an alleged victim or by a parent or guardian of the alleged victim of **SEXUAL ABUSE**, whether the allegation is or is not accompanied by a demand for money or services; or

L00169972105102518

(e)   Of any report from any other person alleging **SEXUAL ABUSE**, and a person or group designated by the **NAMED ASSURED** to investigate the allegation has investigated and as a result of the investigation has recommended that any action of any kind be taken by or on behalf of the **NAMED ASSURED** with respect either to the alleged **ASSURED** or the alleged victim; or

(f)   That the alleged **ASSURED** has admitted to acts of **SEXUAL ABUSE**.

Pkg2016.1

### Coverage Section V Excess Workers' Compensation and Employers' Liability for a Qualified Self-Insurer

**Who is Insured**: Under this Coverage Section, the **NAMED ASSURED** as stated in the Declarations. If the **NAMED ASSURED** is a partnership or joint venture, each partner or member of the joint venture is insured only in the capacity as employer of employees of the partnership or joint venture.

### Coverage Section V Excess Workers' Compensation and Employers' Liability for a Qualified Self-Insurer SELF INSURED RETENTION and Specific Excess Limits of Insurance

**SELF INSURED RETENTION**: The **ASSURED** will pay all sums up to the amount stated in the **Schedule of SELF INSURED RETENTIONS**.

Underwriters will indemnify the **NAMED ASSURED** for **ULTIMATE NET LOSS** resulting from any one **ACCIDENT** or disease for **Coverage Section V Workers' Compensation and Employers' Liability** for the **Specific Excess Limit of Insurance** stated in the **Schedule of Specific Excess Limits of Insurance** over the **SELF INSURED RETENTION** stated in the **Schedule of SELF INSURED RETENTIONS**. The **SELF INSURED RETENTION** and **Specific Excess Limit of Insurance** apply to sums paid by the **NAMED INSURED** as a Qualified Self Insurer of Workers' Compensation and Employers' Liability as follows:

(1)   To one or more employees because of **BODILY INJURY** or death in any one **ACCIDENT**.

(2)   To any one employee for **BODILY INJURY** or death by disease.

The most Underwriters will indemnify the **NAMED ASSURED** will not change regardless of the number of persons or organizations who are **ASSUREDS**, claims made or **SUITS** brought against any or all persons or organizations who are **ASSUREDS**, or persons or organizations making a claim or bringing a **SUIT**.

### Coverage Section V Part A Excess Workers' Compensation For a Qualified Self-Insurer — Insuring Agreements

A.   Underwriters agree to indemnify the **ASSURED** promptly when due for those sums that the **ASSURED** shall become legally obligated to pay as a Qualified Self-Insurer under **WORKERS' COMPENSATION LAW**, subject to the terms of this Policy, this Coverage Section and the exclusions that follow.

This insurance applies to **BODILY INJURY** by **ACCIDENT** or **BODILY INJURY** by disease including resulting death, provided:

(1)   The **BODILY INJURY** by **ACCIDENT** occurs during the **PERIOD OF INSURANCE** this Policy and this coverage are in force;   or

(2)   The **BODILY INJURY** by disease is caused or aggravated by the conditions of employment by the **ASSURED**. The employee's last day of last exposure to those conditions of that employment causing or aggravating such **BODILY INJURY** by disease must occur during the **PERIOD OF INSURANCE** this Policy and this coverage are in force.

B.   **Other STATES Excess Workers' Compensation Extension:** This coverage Extension applies in other **STATES** than the **STATE** of hire if an employee of the **ASSURED** is injured in such a **STATE** and if the work of such injured employee of the **ASSURED** was within the scope of such employee's

L00169972107102518

employment, at the direction of the **ASSURED**, and was temporary and transitory in such other **STATE** provided the **ASSURED** is not insured or a Qualified Self-Insurer in such other **STATE**.

All other terms, conditions and exclusions applicable to **Coverage Section V Part A Workers' Compensation** shall apply to this coverage Extension.

<u>Coverage    Section    V    Part    A    Excess    Workers' Compensation   For a Qualified Self-Insurer – Exclusions</u>

**In addition to General Policy Exclusions, this Coverage Section does not insure against:**

A.   Any claims, whether direct or consequential, or any cause of action which is covered under any other Coverage Section of this Policy;

B.   Loss payable under the **WORKERS' COMPENSATION LAW** of any STATE if the **ASSURED** is protected from the loss by any other insurance;

C.   Punitive or exemplary claims because of:

(a)  **BODILY INJURY** to any employee;

(b)  The **ASSURED'S** conduct or the conduct of anyone acting for the **ASSURED** in investigation, trial or settlement, or failure to pay, or delay in payment of any Workers' Compensation claim;

(c)  The **ASSURED'S** failure to comply with any health or safety law or regulation or any **WORKERS' COMPENSATION LAW**;

D.   Any payments made by the **ASSURED** arising out of operations for which the **ASSURED** has rejected any **WORKERS' COMPENSATION LAW**;

E.   Any assessment made upon self-insurers, whether imposed by statute, regulation or otherwise.

<u>Coverage  Section  V  Part  B  Employers' Liability – Insuring Agreement</u>

Underwriters agree to indemnify the **ASSURED** promptly for **DAMAGES** that the **ASSURED** is legally obligated to pay as a Qualified Self-Insurer of Employers' Liability, subject to the terms of this Policy, this Coverage Section and the exclusions that follow.

This insurance applies to **BODILY INJURY** by **ACCIDENT** or disease which arises out of and in the course of the injured employee's employment by the **ASSURED**, provided:

(1)  The **BODILY INJURY** by **ACCIDENT** occurs during the period this Policy and this coverage are in force;   or

(2)  The **BODILY INJURY** by disease is caused or aggravated by the conditions of employment by the **ASSURED**.  The employee's last day of last exposure to those conditions of that employment causing or aggravating such **BODILY INJURY** by disease must occur during the period this Policy and this coverage are in force and employment by the **ASSURED** is necessary or incidental to work conducted by the **ASSURED** in the STATE of hire, or as covered under the **Coverage Section V Other STATES Excess Workers' Compensation Extension**.

<u>Coverage  Section  V  P art  B  Employers' Liability – Exclusions</u>

**In addition to General Policy Exclusions, this Coverage Section does not insure against:**

Pkg2016.1

A.   Any claims, whether direct or consequential, or for any cause of action which is covered under any other Coverage Section of this Policy;

B.   Liability assumed under a contract or agreement; however, this exclusion does not apply to a warranty that the **ASSURED'S** work will be done in a workmanlike manner;

C.   Punitive or exemplary **DAMAGES**;

D.   **BODILY INJURY** to an employee while employed in violation of law;

E.   **DAMAGES** arising out of operations for which the **ASSURED** or the **ASSURED'S** supervisory personnel have:

   (a)  Violated or failed to comply with any **WORKERS' COMPENSATION LAW**;

   (b)  Rejected any **WORKERS' COMPENSATION LAW**;

   (c)  Intentionally caused or aggravated **BODILY INJURY**;

F.   Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

G.   **BODILY INJURY** occurring outside the United States of America, its territories or possessions. This exclusion does not apply to **BODILY INJURY** to a citizen or resident of the United States of America who is temporarily working outside of the United States of America, its territories or possessions for the **ASSURED**;

H.   Any obligation imposed by the:

   (a)  Merchant Marine Act of 1920 known as the Jones Act, 46 U.S. Code, Section 688, 1970;

   (b)  Federal Employers' Liability Act (F.E.L.A.), 45 U.S. Code, Sections 51-60, 1970;

   (c)  U.S. Longshoremen's and Harbor Workers' Compensation Act (U.S.L. & H. Act);

   (d)  Defense Base Act, U.S. Code (1946) Title 42, Sections 1651-54, Public Law. 77th Congress, as amended;

   (e)  Outer Continental Shelf Lands Act, U.S. Code (1946) Title 33, Sections 901-49 as extended by Act of August 7, 1953, Public Law 212, 83rd Congress; or Section 8171, Public Law 85-538, 85th Congress.

### Coverage Section V Excess Workers' Compensation and Employers' Liability f o r a Qualified Self-Insurer – Definitions

1.   **ACCIDENT** means each accident or **OCCURRENCE** or series of accidents or occurrences arising out of any one event. An **ACCIDENT** is deemed to end 72 hours after the event commences. Each subsequent 72 hours is deemed to be a separate **ACCIDENT** period. Disease means an **ACCIDENT** only if it results in **BODILY INJURY** directly caused from that **ACCIDENT**.

2.   **DAMAGES** means those amounts which the **ASSURED** is obligated to pay due to **BODILY INJURY** by **ACCIDENT** or disease for:

   (a)  Which the **ASSURED** is liable to a third party by reason of a claim, **SUIT**, or proceeding against the **ASSURED** to recover **DAMAGES** obtained from the third party;

(b) Care and loss of services of an injured employee of the **ASSURED**;

(c) Consequential **BODILY INJURY** to a spouse, child, parent, brother or sister of the injured employee of the **ASSURED**;

provided such **DAMAGES** in (a), (b), and (c) above are the direct consequence of **BODILY INJURY** that arises out of and in the course of the injured employee's employment by the **ASSURED**;

(d) **BODILY INJURY** to an employee of the **ASSURED** arising out of and in the course of employment, claimed against the **ASSURED** in a capacity other than as employer.

3.   **STATE** means any **STATE** of the United States of America and the District of Columbia.

4.   **SUIT** means a civil proceeding in which **BODILY INJURY** is alleged.  **SUIT** includes:

(a) An arbitration proceeding in which such **BODILY INJURY** is claimed and to which the **ASSURED** must submit,  or

(b) Any other alternative dispute resolution proceeding in which such **BODILY INJURY** is claimed and to which the **ASSURED** submits to with Underwriters' consent.

5.   **WORKERS' COMPENSATION LAW** means the workers' or workmen's compensation law and occupational disease law of each **STATE** of hire, or as covered under **Coverage Section V Other STATES Excess Workers' Compensation** and includes any amendments to those laws which are in effect during the **PERIOD OF INSURANCE**. It does not include provisions of any law that provides non-occupational disability benefits.

## Coverage Section VI Employee Benefits Liability

### This is a Claims Made Section

### Coverage Section VI Employee Benefits Liability – Insuring Agreement

Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions to indemnify the **ASSURED** for all sums for which the **ASSURED** is legally obligated to pay, as more fully defined by the term **ULTIMATE NET LOSS**, by reason of a **NEGLIGENT ACT, ERROR OR OMISSION** committed in the **ADMINISTRATION** of the **ASSURED'S EMPLOYEE BENEFIT PROGRAMS**.

This coverage applies only if a **CLAIM** for damages, because of a **NEGLIGENT ACT, ERROR OR OMISSION**, is first made against the **ASSURED** during the **PERIOD OF INSURANCE**. The **NEGLIGENT ACT, ERROR OR OMISSION** must have first occurred on or after Retroactive Date shown in the **Schedule of Specific Excess Limits of Insurance**, but in no event any later than the last day of the **PERIOD OF INSURANCE**. The **CLAIM** must be reported to Underwriters as soon as practical but in no event later than sixty (60) consecutive days following the expiration of the **PERIOD OF INSURANCE**, or during the **EXTENDED REPORTING PERIOD** applicable to this coverage, if any. All **CLAIMS** based on or arising out of one **NEGLIGENT ACT, ERROR OR OMISSION** shall be considered "first made" when the first of such **CLAIMS** is made to the **ASSURED**. A **CLAIM** shall not be prejudiced if the **ASSURED,** through clerical oversight or clerical mistake, fails to notify Underwriters within the time provided for under this Coverage Section.

### Coverage Section VI Employee Benefits Liability – Specific Excess Limits of Insurance

Underwriters' **Specific Excess Limit of Insurance** per **CLAIM** for **Coverage Section VI Employee Benefits Liability** is limited to and not to exceed the Specific Excess Limits as stated in the **Schedule of Specific Excess Limits of Insurance**, over the **SELF INSURED RETENTION**, as stated in the **Schedule of SELF INSURED RETENTIONS**.

If an Annual Aggregate applies to any coverage under this Coverage Section, the total Aggregate **Excess Limit of Insurance** for such coverage under this Coverage Section combined during the **PERIOD OF INSURANCE** shall not exceed the Annual Aggregate limit as stated in the applicable Coverage Section of the **Schedule of Specific Excess Limits of Insurance**.

### Coverage Section VI Employee Benefits Liability – Conditions

1.   **Basic Extended Reporting Period:**

A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the **PERIOD OF INSURANCE**, and lasts for sixty (60) consecutive days.

If, however, this Policy and this Coverage Section is immediately succeeded by similar Claims Made insurance coverage, with any insurer, on which the Retroactive Date is the same as or earlier than the Retroactive Date shown in the applicable Coverage Section of the **Schedule of Specific Excess Limits of Insurance** of this Policy, the succeeding Policy shall be deemed to be a renewal of this Policy, and the **ASSURED** shall have no right to an Extended Reporting Period from Underwriters.

The Basic Extended Reporting Period does not apply to **CLAIMS** that are covered under any subsequent insurance applicable to this Coverage Section which the **ASSURED** purchases, or that would have been covered but for exhaustion of the amount of insurance applicable to such **CLAIMS**.

2. **Supplemental Extended Reporting Period:**

Underwriters will provide an Extended Reporting Period, as described below, if:

(a) This Policy or this Coverage Section of this Policy is canceled or non-renewed; or

(b) Underwriters renew or replace this Policy, or this Coverage Section of this Policy, with insurance that does not apply to a **NEGLIGENT ACT, ERROR OR OMISSION** on a Claims Made basis.

A Supplemental Extended Reporting Period of one (1) year duration is available but only by endorsement to this Policy and for an additional premium not to exceed 100% of the annual premium for this Coverage Section. This supplemental period starts when the Basic Extended Reporting Period ends.

The **ASSURED** must give Underwriters a written request for the endorsement within thirty (30) consecutive days after the end of the **PERIOD OF INSURANCE**. The Supplemental Extended Reporting Period will not go into effect unless the **ASSURED** pays the additional premium within thirty (30) consecutive days. This endorsement will set forth the terms consistent with the Coverage Section.

Underwriters shall determine the additional premium in accordance with its applicable rules, rates and underwriting practices. Coverage for **CLAIMS** received during such Supplemental Extended Reporting Period is excess over any other valid and collectible insurance available under any other policies.

Extended Reporting Periods do not reinstate or increase the applicable **SELF INSURED RETENTION**, the **LOSS FUND**, the applicable **Specific Excess Limit of Insurance**, or the **Excess Loss Fund Protection**.

Extended Reporting Periods do not extend the **PERIOD OF INSURANCE** or change the scope of coverage provided within this Coverage Section. They apply to **CLAIMS** arising out of a **NEGLIGENT ACT, ERROR OR OMISSION** that take place before the end of the period that this Policy and this Coverage Section are in force. Once in effect, Extended Reporting Periods may not be canceled.

3. **Reporting to Underwriters:**

For the purposes of compliance with the reporting requirements of this Coverage Section, the **ASSURED'S** reporting of a **CLAIM** to the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** shall be considered reporting of the **CLAIM** to Underwriters, provided that:

(a) The **CLAIM** is reported to the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** no later than sixty (60) consecutive days following the expiration of the **PERIOD OF INSURANCE** or the applicable Extended Reporting Period, if any; and

(b) The **CLAIM**, if not otherwise reportable to Underwriters pursuant to **GENERAL POLICY CONDITION 7**, appears on the **ASSURED'S** list of **CLAIMS** or loss run, as reported by the **THIRD PARTY CLAIM ADMINISTRATOR** to Underwriters, that includes all **CLAIMS** for the **PERIOD OF INSURANCE** or applicable Extended Reporting Period, if any.

<u>**Coverage Section VI Employee Benefits Liability – Exclusions**</u>

**In addition to General Policy Exclusions, this Coverage Section does not insure against:**

A.   Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other Coverage Section of the Policy, whether or not a limit is stated in the **Schedule of Specific Excess Limits of Insurance;**

B.   Any **NEGLIGENT ACT, ERROR OR OMISSION** by, or at, the direction of the **ASSURED** that are dishonest, fraudulent, criminal or malicious;

C.   **BODILY INJURY, PERSONAL INJURY,** or **PROPERTY DAMAGE;**

D.   Any **CLAIM** based upon the **ASSURED'S** failure to comply with the federal Employee Retirement Income Security Act of 1974 (ERISA), including subsequent amendments or any similar federal, state or local law(s) or regulations;

E.   Any **CLAIM** for failure of performance of a contract by any **ASSURED**, Insurer or Self Insurer;

F.   Any **CLAIM** based upon the **ASSURED'S** failure to comply with any law concerning worker's compensation, unemployment insurance, social security, or disability benefits;

G.   Any **CLAIM** based upon failure of investments, including but not limited to, stocks, bonds, funds, to perform as represented by an **ASSURED;**

H.   Any **CLAIM** based upon advice given by an **ASSURED** to participate or not participate in any stock subscription plans;

I.   Any **CLAIM** arising out of actual or alleged discrimination including but not limited to discrimination based on race or national origin, religion or creed, age, sex, physical disability, military status, or employment practices whether or not any of the foregoing violated any federal, state or local government law(s) or regulation(s) prohibiting such discrimination.

### Coverage Section VI Employee Benefits Liability — Definitions

1.   **ADMINISTRATION** means:

   (a)  Giving counsel to employees with respect to **EMPLOYEE BENEFIT PROGRAMS;**

   (b)  Interpreting **EMPLOYEE BENEFIT PROGRAMS;**

   (c)  Handling of records in connection with **EMPLOYEE BENEFIT PROGRAMS;** and

   (d)  Effecting enrollment, termination, or cancellation of employees under **EMPLOYEE BENEFIT PROGRAMS;**

   Provided all such acts are authorized by the **NAMED ASSURED.**

2.   **CLAIM** means all notices or **SUITS** demanding payment of money based on, or arising out of the same **NEGLIGENT ACT, ERROR OR OMISSION** or a series of related **NEGLIGENT ACTS, ERRORS OR OMISSIONS** by one or more **ASSUREDS.**

3.   **NEGLIGENT ACT**, ERROR OR OMISSION means the failure to execute required actions, or mistaken actions committed in the **ADMINISTRATION** of the **ASSURED'S EMPLOYEE BENEFIT PROGRAMS.**

   All **CLAIMS** based on or arising out of the same **NEGLIGENT ACT, ERROR OR OMISSION** or a series of related **NEGLIGENT ACTS, ERRORS OR OMISSIONS** by one or more **ASSUREDS** shall be deemed one **NEGLIGENT ACT, ERROR OR OMISSION.** Only one Policy, one **SELF**

Pkg2016.1

L0016997211510251 8

**INSURED RETENTION,** and one **Specific Excess Limit of Insurance** is applicable to any one NEGLIGENT ACT, ERROR OR OMISSION.

## Coverage Section VII Crime

### Coverage Section VII Crime – Insuring Agreement

Coverage is provided for one or more of the coverage options in this Coverage Section only if a **Specific Excess Limit of Insurance** is stated in the **Schedule of Specific Excess Limits of Insurance**, and a **SELF INSURED RETENTION** is stated in the **Schedule of SELF INSURED RETENTIONS** for each Coverage chosen.

Coverage in this Section is for loss or damage caused by the Perils Covered in each Coverage Section.

### Coverage Section VII Crime – Specific Excess of Limits of Insurance

Underwriters' **Specific Excess Limit of Insurance** per **OCCURRENCE** for **Coverage Section VII – Crime** is limited to, and not to exceed, the Specific Excess Limits as stated in the **Schedule of Specific Excess Limits of Insurance.**

If an Annual Aggregate applies to any coverage under this Coverage Section, the total Aggregate **Excess Limit of Insurance** for such coverage under this Coverage Section combined during the **PERIOD OF INSURANCE** shall not exceed the Annual Aggregate limit as stated in the applicable Coverage Section of the **Schedule of Specific Excess Limits of Insurance.**

In the event more than one Coverage Subsection could apply to a loss for which coverage is provided in this Coverage Section, only the **SELF INSURED RETENTION** for the Coverage Subsection that results in the largest **ULTIMATE NET LOSS** will be applied.

### Coverage Section VII Crime – MONEY and SECURITIES

A.    **MONEY and SECURITIES Coverage:** Underwriters will indemnify the **NAMED ASSURED** for loss of **MONEY** or **SECURITIES** owned by the **NAMED ASSURED** or for which the **ASSURED** is liable as a direct result of loss or damage caused by the Perils Insured occurring during the **PERIOD OF INSURANCE** whilst inside the **PREMISES** or in **BANKING PREMISES.**

    1. **PERILS INSURED:**

    (a)    **THEFT**
    (b)    Disappearance
    (c)    Destruction
    (d)    **BURGLARY**
    (e)    **ROBBERY**
    (f)    **COMPUTER THEFT**

B.    **MONEY and SECURITIES Coverage Extension:** Underwriters will indemnify the **NAMED ASSURED** under this Coverage Subsection for:

    1.    Damage to, a safe, vault, cash register, cash box or cash drawer located inside the **PREMISES** resulting directly from an actual or attempted **THEFT** of, or unlawful entry into such containers;

    2.    Loss of **MONEY** or **SECURITIES** outside the **PREMISES** in the care and custody of a **MESSENGER;**

    3.    Loss of **MONEY** or **SECURITIES** outside the **PREMISES** in the care and custody of an armored vehicle company. However, the **NAMED ASSURED** will be indemnified only the amount of loss that the **NAMED ASSURED** cannot recover:

Pkg2016.1

(a)   Under the **NAMED ASSURED'S** contract with the armored motor vehicle company; and

(b)   From any insurance or indemnity carried by, or for the benefit of customers of the armored motor vehicles company.

**C.**   **Duties in the Event of a Loss:** If the ASSURED has reason to believe that any loss of, or loss from damage to, **MONEY** or **SECURITIES** involves a violation of law, the **ASSURED** must notify the appropriate law enforcement authorities.

### Coverage Section VII Crime – MONEY and SECURITIES Exclusions

In addition to **Coverage Section VII Crime – Exclusions**, and the **General Policy Exclusions**, there is no coverage under **MONEY and SECURITIES** for:

**A.**   Loss of **MONEY** or **SECURITIES** after they have been transferred or surrendered to a person or place outside the **PREMISES** based upon unauthorized instructions or as a result of a threat to do bodily harm or damage to any property;

But, this exclusion does not apply to loss of **MONEY** or **SECURITIES** while outside the **PREMISES** or in **BANKING PREMISES** or in the care and custody of a **MESSENGER** if the **ASSURED**:

(a)   Had no knowledge of any threat at the time the conveyance began; or

(b)   Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**1.**   Loss resulting from the giving or surrendering of property in any exchange or purchase;

**2.**   Loss of property in any **MONEY** operated device unless the amount of **MONEY** deposited in it is recorded by a continuous recording instrument in the device;

**3.**   Loss resulting from **DISHONEST ACTS** of any of the **NAMED ASSURED'S EMPLOYEES**.

### Coverage Section VII Crime – MONEY and SECURITIES Definitions:

**1.**   **BANKING PREMISES** means the interior of that portion of any building occupied by a banking institution, similar safe depository, automatic teller machine (ATM), or similar banking device.

**2.**   **BURGLARY** means the taking of **MONEY** or **SECURITIES** from inside the **PREMISES** by a person unlawfully entering or leaving the **PREMISES** as evidenced by marks of forcible entry or exit.

**3.**   **COMPUTER THEFT** means **THEFT** of **MONEY** or **SECURITIES** following and directly related to the use of any computer to fraudulently cause a transfer of that **MONEY** or **SECURITIES** from inside the **PREMISES** or **BANKING PREMISES** to a person (other than a **MESSENGER**) outside those **PREMISES** or to a place outside those **PREMISES**.

**4.**   **DISHONEST ACTS** means dishonest or fraudulent acts committed with the intent to cause the **NAMED ASSURED** to sustain loss or damage and to obtain financial benefit for the **EMPLOYEE** or for any other **EMPLOYEE**, person or organization.

**5.**   **EMPLOYEE(S)** means any person:

(a) While in the service of the **NAMED ASSURED** (and for thirty (30) consecutive days after termination of service); and ·

(b) Whom the **NAMED ASSURED** has the right to direct and control while performing services for the **NAMED ASSURED**.

6. **MESSENGER** means the **ASSURED** while having care and custody of the **MONEY** or **SECURITIES** outside the **PREMISES**.

7. **MONEY** means:

(a) Currency, coins, and bank notes in current use and having a face value; and

(b) Travelers checks, register checks and **MONEY** orders held for sale to the public.

But **MONEY** does not include **SECURITIES**.

8. **OCCURRENCE** means an act or series of related acts involving one or more persons; or an act or event, or a series of related acts or events not involving any person.

9. **PREMISES** means the interior of that portion of any building that the **ASSURED'S** occupies in conducting the **ASSURED'S** business.

10. **ROBBERY** means the taking of **MONEY** or **SECURITIES** from the care and custody of a person by one who has:

(a) Caused or threatened to cause that person bodily harm; or

(b) Committed an obviously unlawful act witnessed by that person.

11. **SECURITIES** means negotiable and non-negotiable instruments or contracts representing either **MONEY** or other property and includes:

(a) Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

(b) Evidences of debt issued in connection with credit or charge cards, which cards are not issued by the **ASSURED**.

But **SECURITIES** does not include **MONEY**.

12. **THEFT** means any act of stealing.

### Coverage Section VII Crime – Forgery or Alteration

A. **Forgery or Alteration Coverage:** Underwriters will indemnify the **NAMED ASSURED** for loss involving **INSTRUMENTS** resulting directly from the Perils insured, occurring during the **PERIOD OF INSURANCE**.

1. **PROPERTY COVERED: INSTRUMENTS**

2. **Perils Insured:** Forgery or alteration of, on, or in any **INSTRUMENT**.

B. **Forgery or Alteration Coverage Extension:** Underwriters will indemnify the **NAMED ASSURED** under this Section for loss due to the **ASSURED'S** good faith acceptance of:

Pkg2016.1

1.  Any United States or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

2.  Counterfeit United States or Canadian paper currency; or

3.  In exchange for merchandise, money or services or as part of a normal business transaction.

C.  **Duties in the Event of a Loss:** If the **ASSURED** has reason to believe that any loss of, or loss from damage to **PROPERTY COVERED** involves a violation of law, the **ASSURED** must notify the appropriate law enforcement authorities.

D.  **Facsimile Signatures:** Mechanically reproduced facsimile signatures will be treated the same as handwritten signatures.

E.  **Proof of Loss:** The **NAMED ASSURED** must include with proof of loss, any covered **INSTRUMENT** involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

### Coverage Section VII Crime – Forgery or Alteration Exclusions

A.  Loss resulting from **DISHONEST ACTS** of any of the **NAMED ASSURED'S EMPLOYEES.**

### Coverage Section VII Crime – Forgery or Alteration Definitions

1.  **INSTRUMENTS** means checks, drafts, promissory notes, or similar written promises, orders or directions to pay a certain sum in money that are:

    (a) Made or drawn by or drawn upon the **NAMED ASSURED;**

    (b) Made or drawn by one acting as the **NAMED ASSURED'S** agent; or that are purported to have been so made or drawn.

2.  **DISHONEST ACTS** means dishonest or fraudulent acts committed with the intent to cause the **NAMED ASSURED** to sustain loss or damage and to obtain financial benefit for the **EMPLOYEE** or for any other **EMPLOYEE**, person or organization.

3.  **EMPLOYEE(S)** means any person:

    (a) While in the service of the **NAMED ASSURED** (and for thirty (30) consecutive days after termination of service); and

    (b) Whom the **NAMED ASSURED** has the right to direct and control while performing services for the **NAMED ASSURED.**

4.  **OCCURRENCE** means all loss caused by a person or in which that person is involved, whether the loss involves one or more **covered INSTRUMENTS.**

### Coverage Section VII Crime – EMPLOYEE Dishonesty

A.  **EMPLOYEE Dishonesty Coverage:** Underwriters will indemnify the **NAMED ASSURED** for the loss of or damage to Real or business Personal Property, including **MONEY and SECURITIES**, and

**INSTRUMENTS** owned or held by the **NAMED ASSURED**, or for which the **NAMED ASSURED** is liable, occurring during the **PERIOD OF INSURANCE**.

1. **PROPERTY COVERED:** Real or business Personal Property, including **MONEY** and **SECURITIES**, and **INSTRUMENTS** owned or held by the **NAMED ASSURED**, or for which the **NAMED ASSURED** is liable.

2. **Perils Covered:** Direct loss of or damage to **PROPERTY COVERED** resulting from **DISHONEST ACTS** committed by any of the **NAMED ASSURED'S EMPLOYEES**, acting alone or in collusion with other persons, which occur within the **PERIOD OF INSURANCE**.

B. **EMPLOYEE Dishonesty Coverage Extension:** Underwriters will indemnify the **NAMED ASSURED** under this Coverage Subsection for loss caused to the **NAMED ASSURED** through failure of any of the **NAMED ASSURED'S EMPLOYEES**, acting alone or in collusion with others and occurring during the **PERIOD OF INSURANCE** to perform faithfully his or her duties as prescribed by law or to account properly for all monies and property received by virtue of his or her position of employment when such failure has as its direct and immediate result a loss of **PROPERTY COVERED**.

C. **Duties in the Event of a Loss:** If the **ASSURED** has reason to believe that any loss of, or loss from damage to **PROPERTY COVERED** involves a violation of law, the **ASSURED** must notify the appropriate law enforcement authorities.

D. **EMPLOYEE Dishonesty Supplemental Coverage:** The Supplemental Coverage applies only if this **EMPLOYEE Dishonesty Coverage** renews prior dishonesty coverage and is effective on the expiration or termination date of the prior coverage.

Underwriters will indemnify the **ASSURED** for loss that would have been covered by the prior insurance, except that the time to discover the loss had expired, and which would be covered by this Policy had it been in effect when the acts or events causing the loss or damage occurred. This coverage is limited to the lesser of the limits applicable to the prior insurance or the **Specific Excess Limit of Insurance** of this coverage. This Supplemental Coverage is part of, and not in addition to the **Specific Excess Limit of Insurance** for **EMPLOYEE Dishonesty Coverage**.

E. **Loss Payment:** The **Specific Excess Limit of insurance** shown is the most that will be paid for an **OCCURRENCE** even though it may occur over more than one **PERIOD OF INSURANCE**.

### Coverage Section VII Crime – EMPLOYEE Dishonesty Exclusions

In addition to **Coverage Section VII Crime – Exclusions**, and the **General Policy Exclusions**, there is no coverage under this Coverage Subsection **EMPLOYEE Dishonesty** for:

A. Damage where the only proof of the loss or amount of the loss is dependent upon an inventory or a profit and loss computation;

B. Any part of a loss involving any **EMPLOYEE** occurring after discovery of any fraudulent or **DISHONEST ACTS** committed by the **EMPLOYEE** whether before or after being employed by the **ASSURED**. This only includes discovery by an **ASSURED** not in collusion with the **EMPLOYEE**;

C. Loss that is not discovered within one (1) year after the end of the **PERIOD OF INSURANCE**;

D. Legal expenses or any indirect loss.

Pkg2016.1

### Coverage Section VII Crime — EMPLOYEE Dishonesty Definitions:

1.  **DISHONEST ACTS** means dishonest or fraudulent acts committed with the intent to cause the **NAMED ASSURED** to sustain loss or damage and to obtain financial benefit for the **EMPLOYEE** or for any other **EMPLOYEE**, person or organization.

2.  **EMPLOYEE(S)** means any person:

    (a) While in the service of the **NAMED ASSURED** (and for thirty (30) consecutive days after termination of service); and

    (b) Whom the **NAMED ASSURED** has the right to direct and control while performing services for the **NAMED ASSURED**.

3.  **INSTRUMENTS** means checks, drafts, promissory notes, or similar written promises, orders or directions to pay a certain sum in **MONEY** that are:

    (a) Made or drawn by or drawn upon the **NAMED ASSURED**;

    (b) Made or drawn by one acting as the **NAMED ASSURED'S** agent; or that are purported to have been so made or drawn.

4.  **MONEY** means:

    (a) Currency, coins, and bank notes in current use and having a face value; and

    (b) Travelers checks, register checks and **MONEY** orders held for sale to the public.

    But **MONEY** does not include **SECURITIES**.

5.  **OCCURRENCE** means all loss or damage caused by **DISHONEST ACTS**, whether involving one or more **EMPLOYEES**, or as the result of a single act or series of acts.

6.  **SECURITIES** mean negotiable and non-negotiable **INSTRUMENTS** or contracts   representing either **MONEY** or other property and includes:

    (a) Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    (b) Evidences of debt issued in connection with credit or charge cards, which cards are not issued by the **ASSURED**.

    But **SECURITIES** does not include **MONEY**.

### Coverage Section VII Crime — Conditions

Extensions in coverage do not increase, but just form part of, Underwriters' **Specific Excess Limits of Insurance** as shown in the **Schedule of Specific Excess Limits of Insurance**.

1.  **No Benefit to Bailee:** The Insurance afforded herein shall not inure directly or indirectly to the benefit of any carrier or other Bailee for hire.

2.  **Valuation:**

    (a) **MONEY:** Face value.

Pkg2016.1

(b)  **SECURITIES:** actual cash value at the close of business on the day the loss was discovered.

3.   **Property other than MONEY and SECURITIES:** actual cash value at the time of loss with deduction for depreciation. The valuation is limited to the cost to repair or replace with property of equivalent kind and quality, to the extent practicable.

## Coverage Section VII Crime – Exclusions

**In addition to General Policy Exclusions, this Coverage Section does not insure against:**

A.   Any claim for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of the Policy, whether or not a limit is stated in the **Schedule of Specific Excess Limits of Insurance;**

B.   Loss resulting from accounting or arithmetical errors or omissions;

C.   Loss resulting from an **ASSURED'S**, or anyone acting on an **ASSURED'S** express or implied authority, being induced by any **DISHONEST ACT** to voluntarily part with title to or possession of any property;

D.   Any loss, caused by order of any civil authority, including seizure, confiscation or destruction of property, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

Pkg2016.1

## Coverage Section VIII Law Enforcement Liability

### Coverage Section VIII Law Enforcement Liability — Insuring Agreements

A.   **Law Enforcement Liability:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for all sums which the **ASSURED** is legally obligated to pay by reason of the liability imposed upon the **ASSURED** by law for damage, direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, on account of **PERSONAL INJURY** or **BODILY INJURY** or **PROPERTY DAMAGE** or the loss of use thereof suffered or alleged to have been suffered by any person(s) or organization(s) resulting from **LAW ENFORCEMENT ACTIVITIES**, including **INCIDENTAL MEDICAL MALPRACTICE** and **MOONLIGHTING** arising out of an **OCCURRENCE** during the **PERIOD OF INSURANCE**.

B.   **Reimbursement of DEFENSE COSTS incurred prior to denial or declination of coverage:** With respect only to this Coverage Section and **Insuring Agreement A. Law Enforcement Liability**, Underwriters agree, subject to all other Policy limitations, terms and conditions, that as to any claim or **SUIT** for which coverage is denied based solely upon Coverage Section VIII Law Enforcement Exclusions B, Underwriters will indemnify the **ASSURED** for all reasonable **DEFENSE COSTS** arising out of an **OCCURRENCE** to the extent such **DEFENSE COSTS** are incurred prior to the date on which said declination of coverage is communicated to the **ASSURED**.

C.   **SEXUAL HARASSMENT Liability:** Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions, to indemnify the **NAMED ASSURED** for all sums which the **NAMED ASSURED** is legally obligated to pay, as more fully defined by the term **ULTIMATE NET LOSS** for the liability on the part of the **NAMED ASSURED**, including liabilities arising from negligent hiring, training and supervision, arising out of an **OCCURRENCE** resulting from any actual or alleged acts by past, present or future law enforcement officials, officers, auxiliary officers, employees or volunteers of a law enforcement agency or department of the **NAMED ASSURED** or other person or persons of **SEXUAL HARASSMENT** first committed during the **PERIOD OF INSURANCE** against another person who is not an **ASSURED** under this Policy. This provision applies only to the liability of the **NAMED ASSURED** to pay any settlement, verdict or judgment; providing that the sole liability imposed on the **NAMED ASSURED** does not arise from any contractual duty to indemnify a law enforcement official, officer, auxiliary officer, employee or volunteer of a law enforcement agency or department of the **NAMED ASSURED**. This coverage applies only if a SUBLIMIT and SELF INSURED RETENTION for SEXUAL HARASSMENT Liability is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section VIII Law Enforcement Liability**.

Underwriters will not make payment for any loss, **OCCURRENCE**, **SUIT** or for any **DEFENSE COSTS** for any past, present or future law enforcement officials, officers, auxiliary officers, employees or volunteers of a law enforcement agency or department of the **NAMED ASSURED** or other person or persons in respect of actual or alleged **SEXUAL HARASSMENT**; however, with respect only to this **Coverage Section VIII Insuring Agreement C.** Underwriters agree, subject to all other Policy limitations, terms and conditions, that as to any loss, **OCCURRENCE** or **SUIT** for any actual or alleged **SEXUAL HARASSMENT** against another person who is not an **ASSURED** under this Policy alleged to have been committed by a law enforcement official, officer, auxiliary officer, employee or volunteer of a law enforcement agency or department of the **NAMED ASSURED** only, Underwriters will indemnify that law enforcement official, officer, auxiliary officer, employee or volunteer of the **NAMED ASSURED** for all reasonable **DEFENSE COSTS** to the extent such **DEFENSE COSTS** are incurred prior to the date on which, by either agreement, admission, or settlement of a loss or by an adjudication, it is determined that the law enforcement official, officer, auxiliary officer, employee or volunteer of the **NAMED ASSURED** committed an act of **SEXUAL HARASSMENT**. Coverage only applies if the act of **SEXUAL HARASSMENT** was first committed during the PERIOD OF INSURANCE. Further, this coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for SEXUAL HARASSMENT Liability is stated in the **Schedule**

of Specific Excess Limits of Insurance and the Schedule of SELF INSURED RETENTIONS under Coverage Section VIII LAW ENFORCEMENT ACTIVITIES.

D.  **SEXUAL ABUSE Liability:** Underwriters agree, subject to the Policy limitations, exclusions, terms and conditions, to indemnify the **NAMED ASSURED** for all sums which the **NAMED ASSURED** is legally obligated to pay, as more fully defined by the term **ULTIMATE NET LOSS** for the liability on the part of the **NAMED ASSURED,** including liabilities arising from negligent hiring, training and supervision, arising out of an **OCCURRENCE** resulting from any actual or alleged acts by any past, present or future law enforcement officials, officers, auxiliary officers, employees or volunteers of a law enforcement agency or department of the **NAMED ASSURED** or other person or persons of **SEXUAL ABUSE** first committed during the **PERIOD OF INSURANCE** against another person who is not an **ASSURED** under this Policy. This provision applies only to the liability of the **NAMED ASSURED** to pay any settlement, verdict or judgment; providing that the sole liability imposed on the **NAMED ASSURED** does not arise from any contractual duty to indemnify a law enforcement official, officer, auxiliary officer, employee or volunteer of a law enforcement agency or department of the **NAMED ASSURED**. This coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for **SEXUAL ABUSE** Liability is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section VIII Law Enforcement Liability.**

Underwriters will not make payment for any loss, **OCCURRENCE, SUIT** or for any **DEFENSE COSTS** for past, present or future law enforcement officials, officers, auxiliary officers, employees or volunteers of a law enforcement agency or department of the **NAMED ASSURED** of the **NAMED ASSURED** or other person or persons in respect of actual or alleged **SEXUAL ABUSE**; however, with respect only to this **Coverage Section VIII Insuring Agreement D,** Underwriters agree, subject to all other Policy limitations, terms and conditions, that as to any loss, **OCCURRENCE** or **SUIT** for any actual or alleged **SEXUAL ABUSE** against another person who is not an **ASSURED** under this Policy alleged to have been committed by a law enforcement official, officer, auxiliary officer, employee or volunteer of a law enforcement agency or department of the **NAMED ASSURED** only, Underwriters will indemnify that law enforcement official, officer, auxiliary officer, employee or volunteer of the **NAMED ASSURED** for all reasonable **DEFENSE COSTS** to the extent such **DEFENSE COSTS** are incurred prior to the date on which, by either agreement, admission, or settlement of a loss or by an adjudication, it is determined that law enforcement official, officer, auxiliary officer, employee or volunteer committed of the **NAMED ASSURED** an act of **SEXUAL ABUSE.** Coverage only applies if the act of **SEXUAL ABUSE** was first committed during the **PERIOD OF INSURANCE.** Further, this coverage applies only if a **SUBLIMIT** and **SELF INSURED RETENTION** for **SEXUAL ABUSE Liability** is stated in the **Schedule of Specific Excess Limits of Insurance** and the **Schedule of SELF INSURED RETENTIONS** under **Coverage Section VIII Law Enforcement Liability.**

Neither this coverage nor any subsequent coverage provided by Underwriters will apply to any **SEXUAL ABUSE** involving the same law enforcement official, officer, auxiliary officer, employee or volunteer of a law enforcement agency or department of the **NAMED ASSURED** or other person or persons which occurred after the **DISCOVERY** by any of the **NAMED ASSURED'S** officials, trustees, directors, officers or partners of any actual, attempted or pending alleged **SEXUAL ABUSE** by said perpetrator.

Following **DISCOVERY** of any actual, attempted or pending alleged **SEXUAL ABUSE** during the **PERIOD OF INSURANCE,** the **NAMED ASSURED** shall give notification of such **DISCOVERY** to Underwriters as soon as practicable but no more than 120 consecutive days after the initial **DISCOVERY,** and in any event within the **PERIOD OF INSURANCE** or sixty (60) consecutive days after the expiration of the **PERIOD OF INSURANCE** during which the **OCCURRENCE** of **SEXUAL ABUSE** first took place; whichever is later. Any failure to comply with this provision for any reason whatsoever will result in the absolute exclusion of any resulting **SEXUAL ABUSE** claim or claims, irrespective of whether Underwriters have been prejudiced by said failure.

**Coverage Section VIII Law Enforcement Liability – Specific Excess Limits of Insurance**

Underwriters' **Specific Excess Limit of Insurance** per **OCCURRENCE** for **Coverage Section VIII Law Enforcement Liability** is limited to, and not to exceed, the Specific Excess Limits as stated in the **Schedule of Specific Excess Limits of Insurance**, over the **SELF INSURED RETENTION**, as stated in the **Schedule of SELF INSURED RETENTIONS**.

If an Annual Aggregate applies to any coverage under this Coverage Section, the total Aggregate **Excess Limit of Insurance** for such coverage under this Coverage Section combined during the **PERIOD OF INSURANCE** shall not exceed the Annual Aggregate limit as stated in the applicable Coverage Section of **Schedule of Specific Excess Limits of Insurance**.

**Coverage Section VIII Law Enforcement Liability – Exclusions**

**In addition to General Policy Exclusions, this Coverage Section does not insure against:**

A.   Any **CLAIM** for damages, whether direct or consequential, or for any cause of action which is covered under any other Section of this Policy, whether or not a limit is stated in the **Schedule of Specific Excess Limits of Insurance;**

B.   Any **CLAIM** or **SUIT** for **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL INJURY,** including any award of attorney's fees and costs, resulting from:

(a)  Any knowing and intentional violation of any subsection of Title 42 of the U.S. Code, including but not limited to 42 U.S.C'§ 1981 thru 42 U.S.C. §1989 and 42 U.S.C. §1997; or

(b)  Any knowing and intentional deprivation of any rights protected under the United   States Constitution or the Constitution of any State, Territory, or Protectorate of the United States; or

(c)  Any act which is not reasonably related to the execution and/or enforcement of the law; or

(d)  Any act committed with the knowledge and intent to cause **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL INJURY,** or which could reasonably be expected to cause **BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL INJURY** unless the act of the **ASSURED** was reasonably necessary to lawfully prevent injury to persons or damage to property.

However, Exclusion B. shall not apply to:

i.   Any liability on the part of the **NAMED ASSURED,** including liabilities from negligent hiring, training or supervision, arising out of an act by any other **ASSURED** resulting from **LAW ENFORCEMENT ACTIVITIES** and excluded herein, but this provision applies only to the liability of the **NAMED ASSURED** to pay any settlement, verdict or judgment; providing that the sole liability imposed on the **NAMED ASSURED** does not arise from any contractual duty to indemnify an **ASSURED.**

ii.  **Coverage Section VIII Law Enforcement Liability – Insuring Agreement C. SEXUAL HARASSMENT Liability and Coverage Section VIII Insuring Agreement D. SEXUAL ABUSE LIABILITY;** but only to the extent that coverage for **SEXUAL HARASSMENT** and **SEXUAL ABUSE** is specifically given, and only if a **SUBLIMIT** for **SEXUAL HARASSMENT** and **SEXUAL ABUSE** coverage is stated in the **Schedule of Specific Excess Limits of Insurance.**

C.   Liability arising out of the ownership, maintenance or use, including loading or unloading, of watercraft over 50 feet;

Pkg2016.1

**D.**     Damage to or destruction of **PROPERTY OF THE ASSURED;**

**E.**     Liability arising out of the ownership, maintenance, loading or unloading, use or operations of any aircraft including **UNMANNED AIRCRAFT**, airfields, runways, hangars, buildings or other properties in connection with aviation activities;

**F.**     Any obligation for which the **ASSURED** may be held liable under any Workers' Compensation, unemployment compensation, disability benefits law, employers' liability or under any similar law; or to **BODILY INJURY** to any employee of the **ASSURED**; or to any liability for indemnity or contribution brought by any party against the **ASSURED** for **BODILY INJURY** to any employee of an **ASSURED;**

**G.**     The cost of any investigation, disciplinary or criminal proceedings against an individual **ASSURED** except that Underwriters may, at their own option and expense, associate counsel in the defense of any such investigation, criminal or disciplinary proceeding. Should Underwriters elect to associate counsel, such elections shall not constitute a waiver or estoppel of any rights Underwriters may have pursuant to the terms, conditions, exclusions and limitations of this Policy;

**H.**     Any **CLAIM** arising from **WRONGFUL ACTS** except as provided under this Section for Discrimination or Violation of Civil Rights arising out of **LAW ENFORCEMENT ACTIVITIES;**

**I.**     **CLAIMS, SUITS,** proceedings, demands, or actions seeking relief or redress in any form other than monetary damages, including defense of same; or any loss, fees, costs or expenses which the **ASSURED** may be obligated to pay to any third-party as a result of any adverse judgment for declaratory relief or administrative relief or injunctive relief, including **CLAIMS** brought under the federal Fair Labor Standards Act or similar state act or law;

### Coverage Section VIII Law Enforcement Liability – Definitions

**1.**     **CLAIM** means all notices or **SUITS** demanding payment of money based on, or arising out of the same **OCCURRENCE** or a series of related **OCCURRENCES** by one or more **ASSUREDS.**

**2.**     **DEFENSE COSTS** mean the expenses incurred for the investigation and defense of a **CLAIM** or **SUIT** alleging **BODILY INJURY, PERSONAL INJURY, PROPERTY DAMAGE,** **SEXUAL HARASSMENT** or **SEXUAL ABUSE** resulting only from **LAW ENFORCEMENT ACTIVITIES.** However, the salaries, expense and administrative cost of the **ASSURED** or the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** are not included within the meaning of **DEFENSE COSTS.**

**3.**     **DISCOVERY** of any actual, attempted or pending alleged **SEXUAL ABUSE** shall exist when any of the **NAMED ASSURED'S** officials, trustees, directors, officers, partners or any person that the **NAMED ASSURED** has made responsible in an official capacity to prevent **SEXUAL ABUSE** has taken receipt, learned, or in the exercise of reasonable care should have known:

(a)     Of any lawsuit alleging **SEXUAL ABUSE;** or

(b)     Of any demand for money or services based upon alleged **SEXUAL ABUSE;** or

(c)     Of any criminal investigation or prosecution alleging **SEXUAL ABUSE;** or

(d)     Of any allegation by an alleged victim or by a parent or guardian of the alleged victim of **SEXUAL ABUSE**, whether the allegation is or is not accompanied by a demand for money or services; or

(e)     Of any report from any other person alleging **SEXUAL ABUSE**, and a person or group designated by the **NAMED ASSURED** to investigate the allegation has investigated and as a result of the investigation has recommended that any action of any kind be taken by or on behalf of the **NAMED ASSURED** with respect either to the alleged **ASSURED** or the alleged victim; or

(f)     That the alleged **ASSURED** has admitted to acts of **SEXUAL ABUSE**.

4.     **INCIDENTAL MEDICAL MALPRACTICE** means **BODILY INJURY** or **PERSONAL INJURY** arising out of the rendering of or failure to render emergency and/or first aid medical services which shall be understood to include, but not limited to, the dispensing of medication and/or the administering of inoculations and/or blood tests and the like (i.e.: medicines/tests normally administered by a Healthcare Department that  are preventative in nature and do not require advanced medical diagnosis) but where there are no overnight stays in a medical facility. However, **INCIDENTAL MEDICAL MALPRACTICE** does not include services provided by:

(a)  A hospital or emergency room facility;

(b)  A physician, medical doctor, osteopath, chiropractor, resident, extern, or intern;

(c)  A psychiatrist;

(d)  A pharmacist;

(e)  A dentist, orthodontist, or periodontist.

5.     **OCCURRENCE** means an accident or a happening or event or a continuous or repeated exposure to conditions which results in **BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, SEXUAL HARASSMENT** or **SEXUAL ABUSE** during the **PERIOD OF INSURANCE**.

All **BODILY INJURIES, PERSONAL INJURIES** or **SEXUAL HARASSMENT** or **SEXUAL ABUSE** to one or more persons and/or **PROPERTY DAMAGE** arising out of an accident or a happening or event or a continuous or repeated exposure to conditions shall be deemed one **OCCURRENCE**. Only one Policy, one **SELF INSURED RETENTION**, and one **Specific Excess Limit of Insurance** is applicable to any one **OCCURRENCE**.

6.     **MOONLIGHTING** means any other employment, or extra-duty assignment that enforces the law or protects persons or property, approved by the **NAMED ASSURED'S** police department, sheriff agency, or other law enforcement organization.

## Coverage Section IX Terrorism

### Coverage Section IX Terrorism – Insuring Agreements

Coverage is provided for one or more of the Coverage Subsections in this Coverage Section only if a corresponding **Specific Excess Limit of Insurance** is stated in the **Schedule of Specific Excess Limits of Insurance**, and a **SELF INSURED RETENTION** is stated in the **Schedule of SELF INSURED RETENTIONS**.

Coverage in this Section is for loss or damage caused by an **ACT OF TERRORISM** or series of **ACTS OF TERRORISM**, as defined herein per coverage section.

### Coverage Section IX Terrorism – Specific Excess Limits of Insurance

Underwriters' **Specific Excess Limit of Insurance** per **OCCURRENCE** or claim for **Coverage Section IX Terrorism** is limited to, and not to exceed, the Specific Excess Limits as stated in the **Schedule of Specific Excess Limits of Insurance**, over the **SELF INSURED RETENTION**, as stated in the **Schedule of SELF INSURED RETENTIONS**.

If an Annual Aggregate applies to any Coverage Subsection under this Coverage Section, the total Aggregate **EXCESS LIMIT OF INSURANCE** for such Coverage Subsection under this Coverage Section combined during the **PERIOD OF INSURANCE** shall not exceed the Annual Aggregate limit as stated in the applicable Coverage Subsection of the **Schedule of Specific Excess Limits of Insurance**.

### Coverage Section IX Terrorism – Property Terrorism

**Property Terrorism Coverage:** Underwriters agree, subject to the Policy limitations, terms and conditions to indemnify the **ASSURED** for physical loss or physical damage by an **OCCURRENCE, ACT OF TERRORISM** or series of **ACTS OF TERRORISM**, as herein defined, occurring during the **PERIOD OF INSURANCE** to all Real and Personal Property, wherever located, and identified in Schedules on file with Underwriters (hereinafter referred to as the "Schedule").

This Policy also covers, within the sum insured, expenses incurred in the removal of debris of property covered hereunder which may be directly destroyed or damaged by an **ACT OF TERRORISM** or series of **ACTS OF TERRORISM**. The cost of removal of debris shall not be considered in determination of the valuation of the property covered.

### Coverage Section IX – Terrorism – Property Terrorism Conditions

1. **Protection Maintenance:** It is agreed that any protection provided by the **ASSURED** for the safety of the insured property shall be maintained in good order throughout the currency of this Policy and shall be in use at all relevant times, and that such protection shall not be withdrawn or varied to the detriment of the interests of Underwriters without their consent.

2. **Valuation:** It is understood that, in the event of loss or damage, settlement shall be based upon the cost of repairing, replacing or reinstating (whichever is the least) on the same site, or nearest available site (whichever incurs the least cost) with material of like kind and quality without deduction for depreciation, subject to the following provisions: -

   (a) The repairs, replacement or reinstatement (all hereinafter referred to as "replacement") must be executed with due diligence and dispatch;

(b) Until replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to the **ACTUAL CASH VALUE**, as defined under **Coverage Section I Property**, at the time of loss;

(c) If replacement with material of like kind and quality is restricted or prohibited by any by-laws, ordinance or law, any increased cost of replacement due thereto shall not be covered by this Policy.

Underwriters' liability for loss under this Policy including this Condition shall not exceed the smallest of the following amounts: -

(i) The amount of the Policy applicable to the destroyed or damaged property;

(ii) The replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use;

(iii) The amount actually and necessarily expended in replacing said property or any part thereof.

3. **Proof of Loss:** The **ASSURED** shall render a signed and sworn proof of loss within sixty (60) consecutive days after the **OCCURRENCE** of a loss (unless such period be extended by the written agreement of Underwriters) stating the time, place and cause of loss, the interest of the **ASSURED** and all others in the property, the sound value thereof and the amount of loss or damage thereto.

If Underwriters have not received such proof of loss within two (2) years of the expiry date of this Policy, they shall be discharged from all liability hereunder unless an extension has been specifically filed with Underwriters.

## Coverage Section IX Terrorism – Property Terrorism Exclusions

**In addition to General Policy Exclusions, this Coverage subsection does not insure against:**

A. Loss or damage arising directly or indirectly from nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination, however such nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination may have been caused.

B. Loss or damage occasioned directly or indirectly by war, invasion or warlike operations (whether war be declared or not), hostile acts of sovereign or government entities, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power or martial law or confiscation by order of any Government or public authority.

C. Loss by seizure or illegal occupation.

D. Loss or damage caused by confiscation, requisition, detention, legal or illegal occupation, embargo, quarantine, or any result of any order of public or government authority which deprives the **ASSURED** of the use or value of the **PROPERTY OF THE ASSURED**, nor for loss or damage arising from acts of contraband or illegal transportation or illegal trade.

E. Loss or damage directly or indirectly arising from or in consequence of the discharge of pollutants or contaminants, which pollutants and contaminants shall include but not be limited to any solid, liquid, gaseous or thermal irritant, contaminant of toxic or hazardous substance or any substance the presence, existence or release of which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

F. Loss or damage by chemical or biological release or exposure of any kind.

G. Loss or damage by attacks by electronic means (cyber) including computer hacking or the introduction of any form of computer virus.

H. Loss or damage caused by vandals or other persons acting maliciously or by way of protest or strikes, riots or civil commotion unless physical loss or damage is caused directly by an Act or series of Acts of Terrorism.

I. Loss or increased cost occasioned by any Public or Civil Authority's enforcement of any ordinance or law regulating the reconstruction, repair or demolition of any property insured hereunder which was not applicable prior to the Loss.

J. Any consequential loss or damage caused by any other ensuing cause, except where such ensuing cause is directly caused by an **ACT OF TERRORISM** or series of **ACTS OF TERRORISM**, or where business interruption coverage is provided in addition to this Policy.

K. Loss of use, delay or loss of markets, however caused or arising, and despite any preceding loss insured hereunder.

L. Loss or damage caused by cessation, fluctuation or variation in, or insufficiency of, water, gas or electricity supplies and telecommunications of any type or service.

M. Loss or increased cost as a result of threat or hoax, in the absence of physical damage due to an **ACT OF TERRORISM** or series of **ACTS OF TERRORISM**.

N. Loss or damage caused by or arising out of burglary, house – breaking, theft or larceny or caused by any person taking part therein.

O. Loss or damage caused to the following property:

    (a) Land or Land Values.

    (b) Power Transmission or feeder lines unless such Power Transmission or feeder lines are the responsibility of the **ASSURED**.

    (c) Aircraft or any other Aerial device, or watercraft.

    (d) Any land conveyance, including vehicles, locomotives or rolling stock, unless such land conveyance is declared hereon and solely whilst located at the property insured herein at the time of its damage.

    (e) Animals, plants and living things of all types.

## Coverage Section IX Terrorism – Property Terrorism Definitions

1. **ACT OF TERRORISM** means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

2. **OCCURRENCE** shall mean any one loss and/or series of losses arising out of and directly occasioned by one ACT or series of **ACTS OF TERRORISM** for the same purpose or cause. The duration and extent of any one **OCCURRENCE** shall be limited to all losses sustained by the **ASSURED** at the property insured herein during any period of seventy-two (72) consecutive hours arising out of the same purpose or cause. However no such period of seventy-two (72) consecutive hours may extend beyond the expiration of this Policy unless the **ASSURED** shall first sustain direct

Pkg2016.1

physical loss or damage by an ACT or series of ACTS OF TERRORISM prior to expiration and within said period of seventy-two (72) consecutive hours nor shall any period of seventy-two (72) consecutive hours commence prior to the attachment of this Policy.

## Coverage Section IX Terrorism – Liability Terrorism

This is a claims made and reported Coverage Subsection. This means that, subject to the terms and conditions of this Coverage Subsection, the coverage provided by this Coverage Subsection only covers claims first made against the ASSURED or a circumstance which could reasonably be expected to give rise to a claim during the period of insurance and reported to Underwriters in writing as soon as reasonably possible and in no event longer than sixty (60) consecutive days after the expiry of this Policy. CLAIMS EXPENSES that are incurred in defending any claim against the ASSURED will reduce, and may completely exhaust, the Limit of Liability available to pay damages. Please review the coverage provided by this Coverage Subsection carefully and discuss the coverage with your insurance agent or broker.

Liability Terrorism Coverage: Underwriters agree, subject to the Policy limitations, terms and conditions to indemnify the ASSURED for any damages and CLAIMS EXPENSES which the ASSURED shall become legally liable to pay because of any claim or claims for BODILY INJURY and/or PROPERTY DAMAGE, first made against the ASSURED during the PERIOD OF INSURANCE and reported to Underwriters in writing no later than sixty (60) consecutive days after the expiry of this Policy, caused by an ACT OF TERRORISM and/or SABOTAGE occurring during the PERIOD OF INSURANCE. This cover is subject to the terms, conditions and exclusions stated in this Policy.

Multiple ACTS OF TERRORISM and/or SABOTAGE which occur within a period of seventy-two (72) consecutive hours and which have or appear to have a related purpose or common leadership will be deemed to be one ACT OF TERRORISM and/or SABOTAGE.

All claims arising out of the same or a continuing ACT OF TERRORISM and/or SABOTAGE, including ACTS OF TERRORISM and/or SABOTAGE which have or appear to have a related purpose or common leadership, within a period of seventy-two (72) hours shall be considered a single claim and deemed to have been made at the time the first of such claims is reported to Underwriters and shall be subject to a single EXCESS LIMIT OF INSURANCE.

## Coverage Section IX Terrorism – Liability Terrorism Conditions

1. **PROOF OF LOSS:** The ASSURED shall render a signed and sworn proof of loss within sixty (60) consecutive days after the OCCURRENCE of a loss (unless such period be extended by the written agreement of Underwriters) stating the time, place and cause of loss, the interest of the ASSURED and all others in the property, the sound value thereof and the amount of loss or damage thereto.

   If Underwriters have not received such proof of loss within two (2) years of the expiry date of this Policy, they shall be discharged from all liability hereunder unless an extension has been specifically filed with Underwriters.

## Coverage Section IX Terrorism – Liability Terrorism Exclusions

This Policy does not apply to any actual or alleged loss, liability, injury, CLAIM EXPENSES, cost and expense arising directly or indirectly:-

A. from or as a result of nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination, however such nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination may have been caused;

Pkg2016.1

L0016997215010251 8

B.  from or as a result of war, invasion or warlike operations (whether war be declared or not), hostile acts of sovereign or government entities, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power or martial law or confiscation by order of any Government or public authority;

C.  from or as a result of seizure or illegal occupation unless caused directly by an insured **ACT OF TERRORISM** and/or **SABOTAGE;**

D.  from or as a result of confiscation, requisition, detention, legal occupation, embargo, quarantine, or any result of any order of public or government authority which deprives the **ASSURED** of the use or value of its property, nor for loss or damage arising from acts of contraband or illegal transportation or illegal trade;

E.  from or as a result of the discharge of **POLLUTANTS** or contaminant, which **POLLUTANTS** and contaminants shall include but not be limited to any solid, liquid, gaseous or thermal irritant, contaminant of toxic or hazardous substance or any substance the presence, existence or release of which endangers or threatens to endanger the health, safety or welfare of persons or the environment or loss, injury or damage directly or indirectly arising from chemical or biological release or exposure of any kind;

F.  from or as a result of attacks using electronic means including computer hacking or the introduction of any form of computer virus;

G.  from or as a result of vandals or other persons acting maliciously or by way of protest or strikes, riots or civil commotion unless caused directly by an insured **ACT OF TERRORISM** and/or **ACT OF SABOTAGE;**

H.  from or as a result of consequential loss, delay or loss of markets, failure to supply goods or services, or failure to perform however caused or arising, and despite any preceding loss insured hereunder;

I.  from or as a result of cessation, fluctuation or variation in, or insufficiency of, water, gas or electricity supplies, telecommunications or service of any type;

J.  from or as a result of threat or hoax;

K.  from or as a result of **BODILY INJURY** to employees or contract workers of the **ASSURED** or arising under any workers' compensation, unemployment compensation or disability laws, statutes, or regulation;

L.  from or as a result of **BODILY INJURY** or **PROPERTY DAMAGE** arising out of discrimination or humiliation;

M.  from or as a result of property:

(1) owned, leased, rented or occupied by the **ASSURED;** or

(2) in the care, custody or control of the **ASSURED;**

N.  from or as a result of fines, penalties, punitive damages, exemplary damages, or any additional damages resulting from the multiplication of compensatory damages;

O.  from or as a result of mental injury, anguish or shock where no **BODILY INJURY** has occurred to the claimant;

P.   from or as a result of **BODILY INJURY** and/or **PROPERTY DAMAGE** directly or indirectly relating to the actual, alleged or threatened presence of asbestos in any form;

Q.   from or as a result of any claims or circumstances disclosed on the Application for this insurance;

R.   from or as a result of any design, manufacture, assembly, sale trade, distribution or promotion of any product; and

S.   from or as a result of the rendering of or failure to render professional services.

Nothing contained in the above exclusions shall extend this Policy to cover any liability which would not have been covered had these exclusions not been incorporated herein.

### Coverage Section IX Terrorism -- Liability Terrorism Definitions

1.   **ACT OF TERRORISM** means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

2.   **ACT OF SABOTAGE** means an act or series of acts of deliberate damage or destruction of property by secret means committed for subversive, political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

3.   **CLAIM EXPENSES** means investigation, adjustment, appraisal, defense and appeal costs and expenses and pre and post judgment interest, paid or incurred by or on behalf of the **ASSURED**. The salaries, expenses or administrative costs of the **ASSURED** or its employees or any insurer shall not be included within the meaning of **CLAIM EXPENSES**.

4.   **OCCURRENCE** means any one loss and/or series of losses arising out of and directly occasioned by one **ACT** or series of related **ACTS OF TERRORISM** and/or **ACTS OF SABOTAGE** for the same purpose or cause. The duration and extent of any one **OCCURRENCE** shall be limited to all losses directly occasioned by one **ACT** or series of **ACTS OF TERRORISM** and/or **ACTS OF SABOTAGE** arising out of the same purpose or cause during any period of seventy-two (72) consecutive hours commencing at the time of the first such act and within a radius of ten (10) miles of the location of the first such **ACT OF TERRORISM** and/or **ACT OF SABOTAGE**.

However for the purposes of this Policy no period of seventy-two (72) consecutive hours shall commence prior to the attachment of this Policy.

### Coverage Section IX Terrorism -- Employers' Liability Terrorism

This is a claims made and reported Coverage Subsection. This means that, subject to the terms and conditions of this Coverage Subsection, the coverage provided by this Coverage Subsection only covers claims first made against the **ASSURED** or a circumstance which could reasonably be expected to give rise to a claim during the **PERIOD OF INSURANCE** and reported to Underwriters in writing as soon as reasonably possible and in no event longer than 90 consecutive days after the expiry of this Policy. **CLAIMS EXPENSES** that are incurred in defending any claim against the **ASSURED** will reduce, and may completely exhaust the Limit of Liability available to pay **DAMAGES**.

**Coverage:** Underwriters agree, subject to the Policy limitations, terms and conditions to indemnify the **ASSURED** for any **DAMAGES** which the **ASSURED** shall become legally liable to pay as compensation for **BODILY INJURY** to an **EMPLOYEE** of the **ASSURED** (other than the perpetrator(s) of the **ACT OF TERRORISM**) during the course of their employment in the business of the **ASSURED**, provided such **BODILY INJURY** is caused solely and directly by an **ACT OF TERRORISM** occurring during the **PERIOD OF INSURANCE** at the location named in the schedule.  Underwriters will also pay **CLAIMS EXPENSES**.

Multiple **ACTS OF TERRORISM** which occur within a period of 72 consecutive hours and which have or appear to have a related purpose or common leadership will be deemed to be one **ACT OF TERRORISM**.

All claims arising out of the same or a continuing **ACT OF TERRORISM**, including **ACTS OF TERRORISM** which have or appear to have a related purpose or common leadership, within a period of 72 hours shall be considered a single claim and deemed to have been made at the time the first of such claims is reported to Underwriters and shall be subject to a single **Specific Excess Limit of Insurance**.

<u>**Coverage Section IX Terrorism – Employers' Liability Terrorism  Conditions**</u>

1.   **Proof of Loss:** The **ASSURED** shall render a signed and sworn proof of loss within sixty (60) consecutive days after the occurrence of a loss (unless such period be extended by the written agreement of Underwriters) stating the time, place and cause of loss, the interest of the **ASSURED** and all others in the property, the sound value thereof and the amount of loss or damage thereto.

If Underwriters have not received such proof of loss within two (2) years of the expiry date of this Policy, they shall be discharged from all liability hereunder unless an extension has been specifically filed with Underwriters.

<u>**Coverage Section IX Terrorism – Employers' Liability Terrorism  Exclusions**</u>

This insurance does not cover **DAMAGES** or **CLAIMS EXPENSES** with respect to any claim directly or indirectly arising from, caused by or due to:

A.   Any **ACT OF TERRORISM** involving the emission, discharge, dispersal, release or escape of any chemical or biological agent;

B.   Any threat or hoax of an **ACT OF TERRORISM**;

C.   Any **ACT OF TERRORISM** by electronic means including computer hacking or the introduction into any computer of any form of corrupting, harmful or otherwise unauthorized instructions or code. This exclusion shall not apply to the detonation of any explosive bomb or missile which is controlled by any remote device or reliant upon electronic means in its launch, guidance or firing systems;

D.   Any **POLLUTANT OR CONTAMINANT**, however such **POLLUTANT OR CONTAMINANT** may have been introduced or arisen;

E.   Vandalism and malicious mischief, strikes, labor unrest, riots or civil commotion;

F.   War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power;

G.   Confiscation, nationalization, requisition or destruction of or damage to property by or under the order of any government or public or local authority;

Pkg2016.1

H.  Nuclear reaction, nuclear radiation or radioactive contamination, however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused;

I.  Injury caused by or resulting from the **ASSURED**'s recklessness or deliberate misconduct;

J.  Injury arising out of any breach of an obligation owed by the **ASSURED** as an employer including but not limited to **EMPLOYEE** claims of wrongful termination of employment, discrimination, harassment, false arrest, slander, invasion of privacy, assault or battery, or mental anguish or humiliation when asserted in connection with an employment related claim;

K.  Mental injury, anguish or shock where no actual physical injury has occurred to the claimant;

L.  Criminal, dishonest, fraudulent or malicious conduct by the **ASSURED**.

This insurance does not cover fines, penalties, punitive or exemplary **DAMAGES**, sanctions or any additional **DAMAGES** resulting from the multiplication of compensatory **DAMAGES**. Nothing contained in the above exclusions shall extend this Policy to cover any liability which would not have been covered had these exclusions not been incorporated herein.

### Coverage Section IX Terrorism – Employers' Liability Terrorism Definitions

1.  **ACT OF TERRORISM** means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes,

2.  **BODILY INJURY** means, for this coverage only, all physical injury to a third party human being, other than the perpetrator(s) of the **ACT OF TERRORISM**, including death, sickness, disease or disability and all consequent mental injury, anguish or shock to such human suffering such physical injury.

3.  **CLAIMS EXPENSES** means all fees, costs and expenses incurred with the written consent of Underwriters resulting from the investigation, adjustment, appraisal, defense or appeal of a claim, **SUIT** or proceeding relating to a claim. **CLAIMS EXPENSES** do not include the salaries, expenses, overhead or other charges by the **ASSURED** for any time spent in cooperating in the defense, settlement and investigation of any claim.

4.  **DAMAGES** means a monetary judgment, monetary award or monetary settlement made with Underwriters written approval.

5.  **POLLUTANT OR CONTAMINANT** includes but is not limited to any solid, liquid, gaseous or thermal irritant, contaminant or toxic or hazardous substance or any substance the presence, existence, or release of which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

6.  **EMPLOYEE** means the following persons working for the **ASSURED** for the purpose of the **ASSURED**'s business:

    (a)  Any person employed by the **ASSURED** under a contract of service or apprenticeship;

    (b)  Any person supplied to, hired by or borrowed by the **ASSURED**;

    (c)  Labor masters and persons supplied by them;

    (d)  Persons employed by labor only sub-contractors;

Pkg2016.1

L0016997213410281 8

(e)   Self-employed persons and voluntary helpers;

(f)   Any person attending under a work experience scheme; or

(g)   A prospective **EMPLOYEE** who is undergoing practical work experience while being assessed by the insured as to his or her suitability for employment.

L0016997213510 2518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 2

### NAMED ASSURED ENDORSEMENT

It is hereby understood and agreed that the **NAMED ASSURED** not only is the Garden State Municipal Joint Insurance Fund (GSMJIF), per Item 1. of the Declarations Page, but it also comprises of the following Members listed below –

| Renewal Members | |
|---|---|
| Berkeley Heights, Township | Rahway, City of |
| Berkeley Township | Roselle Park |
| Bloomfield Township | Roxbury, Township of |
| Caldwell Borough | South Orange, Township of |
| Cinnaminson Township | Totowa, Borough of |
| Eastampton Township | Union Township |
| Englewood, City of | Warren Township |
| Ewing, Township of | West Orange, Township of |
| Fair Haven, Borough of | |
| Fanwood, Borough of | |
| Freehold Borough | |
| Guttenberg, Town of | |
| Haddon Heights, Borough of | |
| Hamilton Township | |
| Harrison, Town of | |
| Highland Park Borough | |
| Hoboken, City of | |
| Howell, Township of | |
| Kearny, Town of | |
| Kenilworth Borough | |
| Lawrence, Township of | |
| Linden, City of | |
| Livingston Township | |
| Montclair Township | |
| Morris Township | |
| Morristown, Town of | |
| Neptune Township | |
| New Providence Borough | |
| North Bergen, Township of | |
| North Brunswick Township | |
| North Plainfield Borough | |
| Parsippany-Troy Hills, Township of | |

The above mentioned Members have no rights to cancel or amend this Policy.
Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997213610251 8

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 3

## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended, as summarized in the disclosure notice.*

In consideration of an additional premium of USD $15,000 paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this Endorsement shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject. All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

LMA5218

12 January 2015

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972137102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 4

### SECTION IV AND VI AMENDATORY – RETROACTIVE COVERAGE

It is understood and agreed that the **NAMED ASSURED** members and their respective Retroactive Dates in respect of **Coverage Section IV Public Officials Miscellaneous Liability** and **Coverage Section VI Employee Benefits Liability** are:

| Renewal Members | Retro Date |
|---|---|
| Berkeley Heights Township | 01/01/2012 |
| Berkeley Township | 01/01/2007 |
| Bloomfield Township | 01/01/2008-E&O/EBL 01/01/1993-EPL |
| Caldwell Borough | 01/01/2008 |
| Cinnaminson Township | 01/01/2009 |
| Eastampton Township | 01/01/2007 |
| Englewood, City of | 01/01/2007 |
| Ewing Township | 01/01/2007 |
| Fair Haven, Borough of | 01/01/1998 |
| Fanwood, Borough of | 01/01/1980 |
| Freehold Borough | Full Prior Acts |
| Guttenberg, Town of | 01/01/2009 |
| Haddon Heights, Borough of | Full Prior Acts-E&O/EBL 01/01/1993-EPL |
| Hamilton Township | 01/01/2007 |
| Harrison, Town of | 01/01/1980 |
| Highland Park, Borough of | 01/01/1980 |
| Hoboken, City of | 01/01/2007 |
| Howell Township | 01/01/2007 |
| Kearny, Town of | 01/01/2014 |
| Kenilworth, Borough of | 01/01/2007 |
| Lawrence Township | 01/01/1999 |
| Linden City | 01/01/2013 |
| Livingston Township | 01/01/2007 |

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

| | |
|---|---|
| Montclair Township | 01/01/2007 |
| Morris Township | 01/01/2009 |
| Morristown, Town of | 01/01/1998 |
| Neptune Township | Full Prior Acts–E&O/EBL<br>01/01/2009 – SAL<br>01/01/2001 – EBL |
| New Providence Borough | 01/01/1997 |
| North Bergen, Township of | 10/01/1993–EPL<br>01/01/2016–EBL<br>Full Prior Acts–E&O |
| North Brunswick Township | 01/01/2011 |
| North Plainfield, Borough of | 01/01/2007 |
| Parsippany-Troy Hills, Township of | 01/01/2008-E&O/EBL<br>01/01/1993-EPL |
| Rahway, City of | 01/01/2007 |
| Roselle Park | Full Prior Acts |
| Roxbury, Township of | 01/01/2009-E&O/EPL<br>Full Prior Acts-SAL/EBL |
| South Orange, Township of | 10/01/1993–EPL<br>01/01/2016–EBL<br>Full Prior Acts–E&O |
| Totowa, Borough of | 01/01/2009 |
| Union Township | 01/01/2007 |
| Warren Township | 01/01/1980 |
| West Orange, Township of | 01/01/2007 |

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972139102518

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 5

### SECTIONS II, III, IV, & VIII – LOSS CORRIDOR RETENTION ENDORSEMENT

It is understood and agreed that in the event of a loss involving **Coverage Sections II, III, IV** or **VIII** the **ASSURED** shall pay the first $1,000,000, $2,000,000 in the aggregate annually, for each **OCCURRENCE** or **CLAIM** excess of the **SELF INSURED RETENTION** and any applicable Co-Insurance pay and **MAINTENANCE DEDUCTIBLE.**

It is further understood and agreed that the Underwriters' **Excess Limit of Insurance** per **OCCURRENCE** or **CLAIM** for **Claims Sections II, III, IV** or **VIII** is only for the difference between the Excess Limits as stated in **Specific Excess Insurance** and the aforesaid Corridor Retention amount which is in turn excess of the **SELF INSURED RETENTION** and any applicable Co-Insurance Pay and **MAINTENANCE DEDUCTIBLE.**

**Excess Limit of Insurance** per **OCCURRENCE** or **CLAIM** is only for the difference between the **Excess Limit of Insurance** for all Sections of Coverage combined as stated in **Clash Coverage** and the aforesaid Corridor Retention amount which is in turn excess of the smallest **SELF INSURED RETENTION** applicable to any Section of Coverage involved in the loss.

Losses incurred within the Loss Corridor are to erode the **LOSS FUND.**

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972140102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 6

### PERSONAL INJURY PROTECTION (NO FAULT) REJECTION

It is understood and agreed that **Personal Injury Protection (No Fault Insurance)** coverage has been rejected by the **NAMED ASSURED**.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997214110251 8

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

---

Endorsement No. 7

**INSTALLMENT PREMIUM**

It is understood the annual premium shall be payable in two equal installments due to Underwriters as follows:

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 8

### SECTION II – GENERAL LIABILITY – MOLD/FUNGAL PATHOGENS LIABILITY COVERAGE

It is understood and agreed that this policy excludes any loss, damage, cost, claim, expense, **BODILY INJURY, MEDICAL PAYMENTS**, or liability of whatsoever nature directly or indirectly caused by, resulting from or in any way involving **FUNGAL PATHOGENS**. This exclusion shall apply regardless of any other cause or event that contributes concurrently or in sequence to the loss, damage, cost, claim, expense, **BODILY INJURY, MEDICAL PAYMENTS**, or liability.

### Definitions

As used in this Endorsement, **FUNGAL PATHOGENS** means any fungus or mycota or any byproduct or type of infestation produced by such fungus or mycota, including, but not limited to, mold, mildew, mycotoxins, spores or any biogenic aerosols.

### Conditions

Notwithstanding the above, it is further understood and agreed that this policy is extended to cover **FUNGAL PATHOGENS** in respect of **Coverage Section II General Liability** and/or **Coverage Section V Excess Workers' Compensation and Employers' Liability,** but only when such loss arises from a peril not otherwise excluded.   Underwriter's limit of liability for **FUNGAL PATHOGENS** in respect of **Coverage Section II General Liability** shall be limited to $250,000 each **OCCURRENCE** and $250,000 Annual Aggregate per member.  It is also noted that losses, if any, arising from **FUNGAL PATHOGENS** in respect of **Coverage Section II General Liability** and/or **Coverage Section V Excess Workers' Compensation and Employers' Liability** shall apply to the **LOSS FUND** or the **Excess LOSS FUND Protection Limit** but does not apply to **Specific Excess Insurance** or **Clash Coverage**.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972143102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 9

## MAINTENANCE DEDUCTIBLES AND CO-PAY AMOUNTS

**MAINTENANCE DEDUCTIBLES** and Co-Insurance Pay are payable by the **ASSURED** (GSMJIF Member – per endorsement 2). **MAINTENANCE DEDUCTIBLES** and Co-Insurance Pay, is applied wholly within the **SELF INSURED RETENTION** and is not in addition to the **SELF INSURED RETENTION**. It is agreed that **MAINTENANCE DEDUCTIBLES** and Co-Insurance Pay amounts shall be based on the following schedule. Member Co-Insurance Pay and **MAINTENANCE DEDUCTIBLES** do not erode the Loss Fund. Only the difference between the **SELF INSURED RETENTION** and the **MAINTENANCE DEDUCTIBLES** and/or Member Co-Insurance Pay erodes the Loss Fund.

Member Co-Insurance Pay is a proportionate (%) amount deductible and incurred by the (GSMJIF) Member from the losses (from ground up and excess of any member **MAINTENANCE DEDUCTIBLES**) that are allocated to the Garden State Municipal Joint Insurance Fund's **SELF INSURED RETENTION** and Underwriter's **Excess Limit of Insurance**. CoInsurance Pay amounts apply for each and every **OCCURRENCE/CLAIM** and are not annually aggregated.  In the case a Member's Co-Insurance pay is capped, any reimbursement will be made from the bottom up.  Member Co-Insurance Pay contributions do not erode the Loss Fund.

Member Co-Insurance pay (Co-pay) and **MAINTENANCE DEDUCTIBLES** are not to erode the **LOSS FUND**.

| Member | Maintenance Deductibles | | | | | | |
|---|---|---|---|---|---|---|---|
| Name | Property | APD | GL/AL/ LEL /Sexual Abuse | WC | EPL/Sexual Harassment | | E&O |
| Berkeley Heights Township | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Berkeley Township | $1,000 | $1,000 | $0 | $100,000 | $20,000 | 20% copay capped @ $50k | $10,000 . |
| Bloomfield Township | $1,000 | $1,000 | $100,000 | $200,000 | $25,000 | $0 | $25,000 |
| Caldwell Borough | $1,000 | $1,000 | $0 | $0 | $5,000 | 20% copay capped @ $50k | $5,000 |
| Cinnaminson Township | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Eastampton Township | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Englewood, City of | $1,000 | $1,000 | $0 | $250,000 | $100,000 | 20% copay capped @ $30k | $10,000 |
| Ewing, Township of | $1,000 | $1,000 | $15,000 | $25,000 | $45,000 | 20% copay capped @ $50k | $35,000 |

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972144102518

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Fair Haven, Borough of | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Fanwood Borough | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Freehold Borough | $1,000 | $1,000 | $5,000 (LEL) | $0 | $5,000 | N/A | $5,000 |
| Guttenberg, Town of | $1,000 | $1,000 | $0 | $0 | $10,000 | $0 | $10,000 |
| Haddon Heights Borough | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Hamilton Township | $25,000 | $1,000 | $50,000 | $50,000 | $70,000 | 20% copay capped @ $50k | $60,000 |
| Harrison, Town of | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Highland Park Borough | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Hoboken, City of | $1,000 | $1,000 | $50,000 | $150,000 | $250,000 | No Coinsurance | $250,000 |
| Howell, Township of | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Kearny, Town of | $1,000 | $1,000 | $0 | $0 | $20,000 | $0 | $10,000 |
| Kenilworth Borough | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Lawrence Township* | $1,000 | $1,000 | $200,000 | $200,000 | $150,000 | N/A | $150,000 |
| Linden City** | $25,000 | N/A | $250,000 | $500,000 | $150,000 | N/A | $150,000 |
| Livingston Township | $1,000 | $1,000 | $0 | $25,000 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Montclair Township | $1,000 | $1,000 | $0 | $50,000 | $10,000 | 20% copay capped @ $50k | $10,000 |
| Morris Township | $1,000 | $1,000 | $0 | $0 | $10,000 | 20% of 1st $100k | $10,000 |
| Morristown, Town of | $1,000 | $1,000 | $0 | $0 | $10,000 | 20% copay capped @ $50k | $10,000 |
| Neptune Township | $1,000 | $1,000 | $50,000 (LEL) | $0 | $50,000 | $0 | $10,000 |
| New Providence Borough | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| North Bergen, Township of*** | $1,000 | $1,000 | $100,000 | $100,000 | $20,000 | 20% copay capped @ $50k | $20,000*** |
| North Brunswick, Township of | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| North Plainfield Borough | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Parsippany-Troy Hills, Township of | $1,000 | $1,000 | $0 | $400,000 | $20,000 | 20% copay capped @ $50k | $10,000 |

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972145102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

| | | | | | | |
|---|---|---|---|---|---|---|
| Rahway, City of | $1,000 | $1,000 | $0 | $25,000 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Roselle Park | $1,000 | $1,000 | $10,000 (LEL) | $0 | $20,000 | 20% copay capped @ $50k | $20,000*** |
| Roxbury, Township of | $1,000 | $1,000 | $10,000 (LEL) | $0 | $20,000 | 20% copay capped @ $50k | $20,000*** |
| South Orange, Township of | $1,000 | $1,000 | $0 | $0 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Totowa, Borough of | $1,000 | $1,000 | $0 | $0 | $5,000 | $0 | $5,000 |
| Union Township | $1,000 | $1,000 | $0 | $25,000 | $20,000 | 20% copay capped @ $50k | $10,000 |
| Warren Township**** | $5,000 | $5,000 | $5,000 | $5,000 | $10,000 | No Coinsurance | $10,000 |
| West Orange, Township of | $2,500 | $2,500 | $0 | $250,000 | $20,000 | 20% copay capped @ $50k | $10,000 |

Member Co-Insurance pay (Co-pay) and **MAINTENANCE DEDUCTIBLES** are not to erode the **LOSS FUND**.

*In regards to the Township of Lawrence, the annual aggregate amount of member **MAINTENANCE DEDUCTIBLES** shall be limited to $600,000 for the WC, GL/AL/SAL, LEL, E&O and EPL coverage lines only. Once this annual aggregate is exhausted no **MAINTENANCE DEDUCTIBLE** shall be applied against the Township of Lawrence's losses within the **SELF INSURED RETENTION**.

**In regards to Linden City, contractor's equipment is not covered.

***In regards to the Township of North Bergen, Borough of Roselle and Roxbury Township, E&O is also subject to a 20% copay ($50K max).

****In regards to the Township of Warren, the annual aggregate amount of member **MAINTENANCE DEDUCTIBLES** shall be limited to $50,000 for the WC (**Coverage Section V**), GL/AL/SAL (**Coverage Sections II, III and IV for SEXUAL ABUSE liability** only), LEL (**Coverage Section VIII**), E&O and EPL (**Coverage Section IV**) coverage lines only. Once this annual aggregate is exhausted no **MAINTENANCE DEDUCTIBLE** shall be applied against the Township of Warren's losses within the **SELF INSURED RETENTION**.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972146102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 10

### GENERAL POLICY CONDITION – 5. CANCELLATION / NON-RENEWAL

It is understood and agreed that General Policy Condition 5. is hereby deleted and replaced in its entirety by the following:

5.   **Cancellation and Non-Renewal:**  In the event of non-payment of premium by the **ASSURED,** the Underwriters will give ten (10) days' notice of cancellation in writing to the **ASSURED** and all coverage will terminate ten (10) days after the mailing of such notice.  If the Underwriters cancel, the earned premium is calculated pro rata, and the **ASSURED** is responsible for the full annual amount of the Loss Fund as stipulated in **Excess LOSS FUND Protection.**

The Underwriters may elect to non-renew or cancel this policy at the anniversary or expiration date, upon written notice to the **ASSURED,** provided said notice is issued at least one-hundred eighty (180) days prior to the anniversary or expiration date.

If the period of limitation relating to the giving of notice is prohibited or made void by any law, such period is amended to provide the minimum period of limitation permitted by such law.

The **ASSURED** shown on the Declaration Page may cancel this policy by giving thirty (30) days' notice of cancellation in writing.  If the **ASSURED** cancels, the earned premium is calculated in accordance with the short rate table and procedure, and the **ASSURED** is responsible for the full annual amount of the Loss Fund as stipulated in **Excess LOSS FUND Protection.**

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972147102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 11

### UNINTENTIONAL ERRORS AND OMISSIONS

Notwithstanding anything contained herein to the contrary, if the **NAMED ASSURED** (Garden State Municipal Joint Insurance Fund) fails to disclose all hazards existing from the effective date as per Item 2 of Declaration page, of this policy that your rights as the **NAMED ASSURED** are not prejudiced with respect to the coverage afforded by this policy, provided that such failure or omission are not intentional.

This condition does not waive **ASSURED's** obligation to Underwriters to disclose all 'known' material facts and act with the utmost good faith.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997214810251 8

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

Endorsement No. 12

### SECTION IV – PUBLIC OFFICIALS MISCELLANEOUS LIABILITY – AMENDATORY ENDORSEMENT

It is understood and agreed that **Coverage Section IV Public Officials Miscellaneous Liability- Exclusion E.** is hereby deleted and replaced in its entirety by the following:

E.     **CLAIMS**, demands, or actions seeking relief or redress in any form other than monetary damages, or any loss, fees, costs or expenses which the **ASSURED** may be obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief.

It is also understood and agreed that **Coverage Section IV Definition 1.** is hereby deleted and replaced in its entirety by the following:

#### Definitions

1.     **CLAIM** means all notices or **SUITS** demanding payment of money based on, or arising out of the same **WRONGFUL ACT, EMPLOYMENT PRACTICE VIOLATION, SEXUAL HARASSMENT** or **SEXUAL ABUSE** or a series of related **WRONGFUL ACTS, EMPLOYMENT PRACTICE VIOLATIONS, SEXUAL HARASSMENTS** or **SEXUAL ABUSES** by one or more **ASSUREDS**.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

Endorsement No. 13

**SECTION V – PART B EMPLOYER'S LIABILITY EXCESS LIMIT OF INSURANCE ENDORSEMENT**

In addition to what has already been provided under the **Schedule of SELF INSURED RETENTIONS** and **Specific Excess Insurance** for **Coverage Section V Excess Workers Compensation and Employers Liability For a Qualified Self Insurer**, it is understood and agreed that an **Excess Limit of Insurance** will be provided for **Coverage Section V Coverage B Excess Employers Liability** only –

**Specific Excess Insurance** for each **OCCURRENCE:**

| | |
|---|---|
| Section V Coverage B Excess Employers Liability: | $10,000,000 |
| Annual Aggregate: | $10,000,000 |
| Underlying: | $3,000,000 |

In consideration of the above, it is further understood and agreed that the Underlying amount shall not contribute to the erosion of the **LOSS FUND** nor shall it form part of **Clash Coverage** loss.

It is hereby acknowledged that the 'Underlying' coverage is placed with Safety National Casualty Corporation under Policy No. SP 4057920 for the following limits of:

$2,000,000 per **OCCURRENCE** in excess of $1,000,000 **SELF INSURED RETENTION** per **OCCURRENCE**

In consideration of the above, it is further understood and agreed that in the event of an Excess Employers Liability loss, as may be covered under the Safety National Casualty Corporation policy, coverage as afforded hereunder is excess of the above 'Underlying' limit and **SELF INSURED RETENTION**, subject always to the terms and conditions contained herein.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997215010251818

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 14

## OTHER INSURANCE CLAUSE

It is hereby noted and agreed that **General Policy Conditions No. 13 OTHER INSURANCE** is deleted and replaced by the following:

**13. OTHER INSURANCE:** If other valid and collectible insurance available to the **ASSURED** for a loss covered under herein this policy, Underwriters obligations are limited as follows:

**a) Primary Insurance**

This insurance is primary except when **b)** below applies. If this insurance is primary, Underwriters obligations are affected unless any of the other insurance is also primary; then Underwriters will share with all that other insurance be by the method describer in **c.** below.

**b) Excess Insurance**

This insurance is excess over:

1) Any of the other insurance, whether primary, excess, contingent or on any other basis;
   a. That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
   b. That is Fire Insurance for premises rented to the **ASSURED** or temporarily occupied by an **ASSURED** with permission of the owner;
   c. That is insurance purchased by you to cover your liability as a tenant rented "property damage" to premises rented to you or temporarily occupied by the **ASSURED** with permission of the owner; or
   d. If the loss arises out of the maintenance or use of aircraft, automobiles or watercraft to the extent not subject to **Coverage Section I Exclusion N** and **Coverage Section II Exclusion C.**

2) Any other primary insurance available to the **ASSURED** covering liability damages arising out of the premises or operations, or the products and completed operations, for which the **ASSURED** have been added as an Additional **ASSURED** by attachment of an endorsement.

When this insurance is excess, Underwriters have no duty to indemnify the **ASSURED** for a covered claim or **SUIT** if any other insurer has a duty to defend or indemnify. If no other insurer has a duty to defend or indemnify, Underwriters will undertake to do so, but Underwriters will be entitled to the **ASSURED**'s rights against all those other insurers.

When this insurance is excess over other insurance, Underwriters will pay only Underwriters share of the amount of the loss, if any, that exceeds the sum of:

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

I)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

2)  The total of all self-insured amounts under all that other insurance.

Underwriters will share the remaining loss, if any, with any other insurance that is not described in the Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c)  Method of Sharing**

If all of the other insurance permits contribution by equal shares, Underwriters will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or **ULTIMATE NET LOSS** has been exhausted, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, Underwriters will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit if insurance to the total applicable limit of insurance of all insurers.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972152102518

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 15

### ADDITIONAL ASSURED ENDORSEMENT

It is hereby agreed and understood that The Port Authority of New York and New Jersey, a body corporate and politic, created by Compact between the States of New York and New Jersey with the consent of the Congress of the United States of America, having its principal office at 225 Park Avenue South, New York, New York 1000 referred to as the **"Port Authority"**, each and every officer, agent, employee and representative of the Port Authority are added as an additional **ASSURED** in respect to the liabilities arising from the Port Authority's work, through its contractor, in geotechnical test borings in the roadway on Sinatra Drive and analysis of the boring samples on Sinatra Drive on behalf of the City of Hoboken, an **ASSURED** under this policy.

It is also hereby agreed and understood that the **NAMED ASSURED** shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority, raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statures respecting suits against the Port Authority.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997215310251'8

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:   B0356JA281N18

Endorsement No. 16

## JONES ACT AND U.S.L. & H. ACT EXCLUSION DELETED

It is understood and agreed that exclusions (8) (a) and (c) to **Coverage Section V Coverage B – Excess Employers' Liability** of the policy are deleted in their entirety and shall be considered null and void.

It is further understood and agreed that U.S.L. & H. Coverage applies to damages arising out of New Jersey State law only.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997215410231 8

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 17

### SECTION V – EXCESS WORKERS' COMPENSATION & EMPLOYERS LIABILITY - LOSS CORRIDOR ENDORSEMENT

It is understood and agreed that in the event of a loss involving **Coverage Sections V Excess Workers' Compensation & Employers' Liability For a Qualified Self-Insurer** the ASSURED shall pay the first $250,000, $500,000 in the aggregate annually, for each **OCCURRENCE** or **CLAIM** excess of the **SELF INSURED RETENTION** and any applicable Co-Insurance pay and **MAINTENANCE DEDUCTIBLE.**

It is further understood and agreed that the Underwriters' **Excess Limit of Insurance** per **OCCURRENCE** for **Coverage Sections V Excess Workers' Compensation & Employers' Liability For a Qualified Self-Insurer** is only for the difference between the Excess Limits as stated in **Specific Excess Insurance** and the aforesaid Corridor Retention amount which is in turn excess of the **SELF INSURED RETENTION** and any applicable Co-Insurance Pay and **MAINTENANCE DEDUCTIBLE.**

**Excess Limit of Insurance** per **OCCURRENCE** is only for the difference between the **Excess Limit of Insurance** for all Sections of Coverage combined as stated in **Clash Coverage** and the aforesaid Corridor Retention amount which is in turn excess of the smallest **SELF INSURED RETENTION** applicable to any Section of Coverage involved in the loss.

Losses incurred within the Loss Corridor are to erode the **LOSS FUND.**

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 18

## SECTION V COVERAGE A EXCESS WORKERS COMPENSATION AND COVERAGE B EXCESS EMPLOYERS LIABILITY – VOLUNTEER WORKERS

It is understood and agreed that **Coverage Sections V Excess Workers' Compensation & Employers' Liability For a Qualified Self-Insurer** and **Coverage Section V Coverage B – Excess Employers' Liability** is extended and shall apply to payments the **ASSURED** gratuitously makes to a non-compensated **VOLUNTEER EMPLOYEE**, operating at the direction of the **NAMED ASSURED**, as if the **VOLUNTEER EMPLOYEE** was subject to the **WORKERS COMPENSATION LAW** of the **STATE** of New Jersey, even though these laws may not require payment of benefits to such **VOLUNTEER EMPLOYEE**.

As respects to this endorsement only, a **VOLUNTEER EMPLOYEE** means a non-compensated officer, employee, volunteer worker, or student worker operating at the direction of the **NAMED ASSURED**, but not subject to the **WORKERS COMPENSATION LAW** of the **STATE** of New Jersey.

For purposes of this endorsement and the additional premium charged, it is further agreed that a **VOLUNTEER EMPLOYEE** has donated their services at an hourly wage of $8.44 per hour minimum, unless the work they do, on behalf of and at the direction of the **NAMED ASSURED**, is similar to the work being done by a paid employee who is being compensated more than $8.38 per hour wage, in which event the wage reported for the **VOLUNTEER EMPLOYEE** will be the same as the wage reported for the paid employee.

This endorsement does not apply:

(a)  unless the gratuitous benefits are paid as a result of **BODILY INJURY** by **ACCIDENT** or **BODILY INJURY** by disease occurring during the **PERIOD OF INSURANCE** and in the course of employment on behalf of and at the direction of the **NAMED ASSURED**;

(b)  if the **BODILY INJURY** by **ACCIDENT** or **BODILY INJURY** by disease occurred outside of the United States of America, its territories or possessions.

(c)  if the **VOLUNTEER EMPLOYEE** (or the **VOLUNTEER EMPLOYEE'S** dependent) is entitled to benefits under any **WORKERS COMPENSATION LAW**.

(d)  If the **BODILY INJURY** by **ACCIDENT** or **BODILY INJURY** by disease was intentionally caused or aggravated by the **NAMED ASSURED** or employer.

(e)  if the **VOLUNTEER EMPLOYEE** (or the **VOLUNTEER EMPLOYEE'S** dependent) is entitled to **OTHER INSURANCE**.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 19

## SECTION V COVERAGE A EXCESS WORKERS COMPENSATION AND COVERAGE B EXCESS EMPLOYERS LIABILITY – FOREIGN WORKERS' COMPENSATION

It is understood and agreed that Coverage Section V coverage A Excess Workers' Compensation For a Qualified Self-Insurer and Coverage Section V Coverage B – Excess Employers' Liability is extended and shall apply to payments the ASSURED gratuitously makes to an employee, operating at the direction of the NAMED ASSURED, but who are employed to work at locations within the following country or countries:

*Anywhere in the world outside the United States or United States possessions and territories, except: Afghanistan, Algeria, Balkans, Belarus, Burma, Burundi, Chad, Central African Republic, Columbia, Cote d'Ivoire, Cuba, Democratic Republic of Congo, Egypt, Eritrea, Georgia, Haiti, Iran, Iraq, Israel, Kenya, Lebanon, Libya, Nepal, Nigeria, North Korea, Pakistan, Philippines, Saudi Arabia, Sri Lanka, Somalia, Sudan, Syria, Uzbekistan, West Bank & Gaza, Yemen and Zimbabwe.*

It is further understood and agreed that coverage under this endorsement shall be limited for the following:

1. Repatriation expense shall not exceed a maximum of $25,000 any one employee excess of the SELF INSURED RETENTION. All other terms and conditions of the endorsement apply.

This endorsement does not apply:

   (a)   unless the gratuitous benefits are paid as a result of BODILY INJURY by ACCIDENT or BODILY INJURY by disease occurring during the PERIOD OF INSURANCE and in the course of employment on behalf of and at the direction of the NAMED ASSURED;

   (b)   unless the gratuitous benefits are payable, under this endorsement, are the same as those that would be payable if the employees in question were subject to the WORKERS COMPENSATION LAW of the STATE of New Jersey.

   (c)   to an employee whose foreign assignment has finished or terminated and the employee has returned to the United States of America.

   (d)   to an employee who is not a citizen or resident of the United States of America.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 20

### SAME COMMUNICABLE DISEASE

It is understood and agreed that **Coverage Section V Excess Workers' Compensation and Employers' Liability For a Qualified Self -Insurer – Definitions 1. ACCIDENT** is deleted and replaced with the following:

1. **ACCIDENT** means each accident or occurrence or series of accidents or occurrences arising out of any one event. An **ACCIDENT** is deemed to end 72 hours after the event commences. Each subsequent 72 hours is deemed to be a separate **ACCIDENT** period. Disease means an **ACCIDENT** only if it results in **BODILY INJURY** directly caused from that **ACCIDENT**.

With respect to **BODILY INJURY** caused by the **SAME COMMUNICABLE DISEASE, ACCIDENT** shall mean an occurrence or a series of related event having a detectable common source of causation at the workplace,  that results in **BODILY INJURY** to two or more employees who are infected with the **SAME COMMUNICABLE DISEASE,** which infection is manifested during the **PERIOD OF INSURANCE.**

It is also understood and agreed that **SECTION V DEFINITIONS** is extended to include the following:

6. **SAME COMMUNICABLE DISEASE** shall mean specifically diagnosed infectious disease caused by an infectious organism which is transmitted from one source to another, directly or indirectly, which is the same proximate cause of the bodily injury to each infected employee.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L001699721581023180

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 21

### COVERAGE EXTENSION ENDORSEMENT – STOP-GAP EMPLOYERS LIABILITY

It is understood and agreed that the following is included as **Coverage Section V Coverage C** of this Policy:-

#### Coverage Section V Coverage C Stop-Gap Employers Liability- Insuring Agreement

This insurance applies to **BODILY INJURY** by **ACCIDENT** or disease which arises out of and in the course of the injured employee's employment by the **ASSURED**, provided:

(A)  The **BODILY INJURY** by **ACCIDENT** occurs during the period this policy and this coverage are in force; or

(B)  The **BODILY INJURY** by disease is caused or aggravated by the conditions of employment by the **ASSURED**.  The employee's last day of last exposure to those conditions of that employment causing or aggravating such **BODILY INJURY** by disease must occur during the period this policy and this coverage are in force and employment by the **ASSURED** is necessary or incidental to work conducted by the **ASSURED**.

1.  In consideration of the premium herein provided, it is agreed that if any employee of the **NAMED ASSURED**, who has been reported and declared under the **WORKERS' COMPENSATION LAW** of the State of North Dakota, Ohio, Washington and Wyoming sustains **BODILY INJURY** by **ACCIDENT** or disease which arises out of and in the course of his employment in the business operations of the **ASSURED** then the policy shall cover the legal liability of the **ASSURED** for **BODILY INJURY** because of such **BODILY INJURY** by **ACCIDENT** or disease, including death at any time resulting therefrom.

2.  With respect to the insurance afforded by this Endorsement and regardless of the number of **ASSUREDS** under this policy, Underwriters' liability is limited as follows:

Underwriters' liability on account of **BODILY INJURY** by **ACCIDENT** as aforesaid shall be limited to $1,000,000 ground up (inclusive of **SELF INSURED RETENTION**) for all **DAMAGES**, arising out of injury, including death at any time resulting therefrom, sustained by one person in any one **ACCIDENT** and subject to that limit respecting each person, Underwriters' total liability shall be limited to $1,000,000 ground up (inclusive of **SELF INSURED RETENTION**) for all **DAMAGES**, arising out of injury, including death at any time resulting therefrom, sustained by two or more persons in any one **ACCIDENT**.

Underwriters' liability on account of disease as aforesaid shall be limited to $1,000,000 ground up (inclusive of **SELF INSURED RETENTION**) on account of disease, including death at any time resulting therefrom, suffered by any one employee, and, subject to such limit with respect to each such employee, the total limit of the Underwriters' liability shall be $1,000,000 ground up (inclusive of **SELF INSURED RETENTION**).

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972159102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

### Coverage Section V Coverage C Stop-Gap Employers Liability- Exclusions

IN ADDITION TO THE GENERAL EXCLUSIONS OF THIS POLICY THIS SECTION DOES NOT INSURE AGAINST:

A.   Any claims, whether direct or consequential, or for any cause of action which is covered under any other Section of this policy;

B.   **BODILY INJURY**, disease or death suffered or caused by any person knowingly employed by the **ASSURED** in violation of any law as to age, or under the age of 14 years, regardless of any such law;

C.   Aircraft operations or the performance of any duty in connection with aircraft while in flight;

D.   Any premium, assignment, penalty, fine or other obligation imposed by any **WORKERS' COMPENSATION LAW** of the State of North Dakota, Ohio, Washington and Wyoming;

E.   BODILY INJURY, disease or death of any employee for which claim can be made for **DAMAGES** because of the **ASSURED'S** failure to comply with any provision of the **WORKERS' COMPENSATION LAW** of said state, or which would have been under the provisions of such law if the **ASSURED** had complied therewith;

F.   Liability assumed by the **ASSURED** under any contract or agreement, or to BODILY INJURY, disease or death of any employee which is covered by the policy or any endorsement thereof, independently of this endorsement;

G.   Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability law, or any similar law.

H.   Any obligation imposed by the:

   (1)   Merchant Marine Act of 1920 known as the Jones Act, 46 U.S. Code, Section 688, 1970;

   (2)   Federal Employers Liability Act (F.E.L.A.), 45 U.S. Code, Sections 51-60, 1970;

   (3)   U.S. Longshoremen's and Harbor Workers Compensation Act (U.S.L. & H. Act);

   (4)   Defense Base Act, U.S. Code (1946) Title 42, Sections 1651-54, Public Law. 77th Congress, as amended;

   (5)   Outer Continental Shelf Lands Act, U.S. Code (1946) Title 33, Sections 901-49 as extended by Act of August 7, 1953, Public Law 212, 83rd Congress; or Section 8171, Public Law 85-538, 85th Congress.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

### Coverage Section V Coverage C Stop-Gap Employers Liability- Conditions

The insurance afforded by this endorsement applies only to **ACCIDENTS** which occur during the **PERIOD OF INSURANCE** within the territorial limits of the United States of America, its territories or possessions, or Canada, and to disease which is sustained within such limits and only if the last day of the last exposure, in the employment of the **ASSURED**, to the conditions causing the disease occurs during the **PERIOD OF INSURANCE**, and if incapacity resulting from such disease occurs not later than 12 months after the end of the **PERIOD OF INSURANCE**.

### Coverage Section V Coverage C Stop-Gap Employers Liability- Definitions

(1) **ACCIDENT** means each accident or occurrence or series of accidents or occurrences arising out of any one event. An **ACCIDENT** is deemed to end 72 hours after the event commences. Each subsequent 72 hours is deemed to be a separate **ACCIDENT** period. Disease means an **ACCIDENT** only if it results in **BODILY INJURY** directly caused from that **ACCIDENT**.

(2) **DAMAGES** means those amounts which the **ASSURED** is obligated to pay due to **BODILY INJURY** by **ACCIDENT** or disease for:

    (a) which the **ASSURED** is liable to a third party by reason of a claim, **SUIT**, or proceeding against the **ASSURED** to recover damages obtained from the third party;

    (b) care and loss of services of an injured employee of the **ASSURED**;

    (c) consequential **BODILY INJURY** to a spouse, child, parent, brother or sister of the injured employee of the **ASSURED**; provided such damages in (a), (b), and (c) above are the direct consequence of **BODILY INJURY** that arises out of and in the course of the injured employee's employment by the **ASSURED**;

    (d) **BODILY INJURY** to an employee of the **ASSURED** arising out of and in the course of employment, claimed against the **ASSURED** in a capacity other than as employer.

(3) **SUIT** means a civil proceeding in which **BODILY INJURY** to which this insurance applies are alleged. **SUIT** includes:

    (a) An arbitration proceeding in which such **BODILY INJURY** is claimed and to which the **ASSURED** must
    submit, or

    (b) Any other alternative dispute resolution proceeding in which such **BODILY INJURY** is claimed and to which the **ASSURED** submits to with the Company consent.

**WORKERS COMPENSATION LAW** means the workers' or workmen's compensation law and occupational disease law of each State of hire, or as covered under **Coverage Section V Part A Excess Workers'**

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

---

**Compensation For a Qualified Self –Insurer- Insuring Agreements B. Other STATES Excess Workers Compensation Extension.** It includes any amendments to those laws which are in effect during the period of this policy and coverage are in force.  It does not include provisions of any law that provides non–occupational disability benefits.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972162102318

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:   B0356JA281N18

Endorsement No. 22

### ADDITIONAL ASSURED ENDORSEMENT

It is hereby understood and agreed that Maxwell Place Condominium Association, Inc., its officers and employees are added as an additional **ASSURED**, but only as respects to the liabilities arising out of, or resulting from, the City of Hoboken's use of Maxwell Place Condominium Association Inc.'s Easement Premises, as described under the Easement Agreement recorded on November 16, 2012.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997216310251 8

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

---

Endorsement No. 23

### ADDITIONAL ASSUREDS ENDORSEMENT

It is hereby understood and agreed that the State of New Jersey and the County of Union, New Jersey, are added as additional **ASSUREDS**, but only in respect of the participation of applicable GSMJIF members in the Municipal Alliance Program.

It is further understood and agreed that in respect of the above, this insurance is primary and non-contributory.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972164102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

---

Endorsement No. 24

### NAMED ASSURED ENDORSEMENT – QUASI ENTITIES

It is hereby understood and agreed that all Quasi Entities on file and approved by the Underwriters are **NAMED ASSUREDS** in respect of liabilities arising from the Garden State Municipal Joint Insurance Fund.

Any Quasi Entity additions made on or after 01 January 2018 will only be covered if agreed and approved by the Underwriters.

It is also hereby and agreed that the **ASSUREDS** listed in the document on file have no rights to cancel or amend this policy.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

Endorsement No. 25

### GENERAL POLICY CONDITIONS NOTIFICATION OF CLAIMS, OCCURRENCES OR SUITS (MODIFIED VERSION)

It is hereby understood and agreed that **General Policy Condition 7. CLAIMS, OCCURRENCES or SUITS** is amended to read as follows:

7.    **CLAIMS, OCCURRENCES or SUITS:** Underwriters reserves the right to deny coverage under this policy if there has not been full compliance with the following duties:

The **ASSURED** shall as soon as practical notify Underwriters through the **ASSURED'S THIRD PARTY CLAIM ADMINISTRATOR** of any **CLAIM, OCCURRENCE, or SUIT** meeting the following criteria:

(a)    The cost of which is likely to result in payment by Underwriters under this Policy;

(b)    All claims reserved at 50% or more of **SELF INSURED RETENTION**;

(c)    All claims where there has been a settlement demand above the **SELF INSURED RETENTION** and there is a trial, binding arbitration or binding mediation date within ninety (90) days;

(d)    Catastrophic losses (including Paraplegia, Quadriplegia, Severe Burns, Fatalities, Significant Brain Injury, Amputation of Major Extremity);

(e)    **SEXUAL ABUSE** claims;

(f)    Discrimination or Violation of Civil Rights where the claim is reserved at 50% or more of the **SELF INSURED RETENTION** or within ninety (90) days of a trial date, whichever is sooner;

(g)    Third-party claims involving **LAW ENFORCEMENT ACTIVITIES**;

(h)    Act or series of **ACTS OF TERRORISM**;

(i)    Any claims where there is a question as to whether there will be coverage under this Policy.

Underwriters shall have the right, but not the obligation, to be associated with the **ASSURED** in, and/or assume charge of, the investigation, handling, defense or settlement of any claims, **SUIT** or proceedings relative to an **OCCURRENCE** or **CLAIM** where in the opinion of the Underwriters, their liability under this Policy is likely to be involved or when the **SELF INSURED RETENTION** has been exhausted; in which case the **ASSURED** and Underwriters shall co-operate to the mutual advantage

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972166102318

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

of both. In all other circumstances, Underwriters will have the right, but not the obligation, to assume charge of the defense of any claim or suit relative to an **OCCURRENCE** or **CLAIM** at its own expense.

The **ASSURED** shall make no commitment to pay or settle any **CLAIMS, OCCURRENCES** or **SUITS** where Underwriters liability under this Policy is involved without the prior written agreement of Underwriters. Underwriters shall not withhold agreement without just cause. Neither shall the **ASSURED** refuse any reasonable opportunity to pay or settle a claim when such refusal will result in Underwriters having liability under this Policy without the prior agreement of Underwriters. Underwriters shall not withhold agreement without just cause. If the **ASSURED** refuses to consent to settlement of any **CLAIMS, OCCURRENCES** or **SUITS** where Underwriters liability under this Policy is potentially involved, and settlement or compromise is recommended by Underwriters and acceptable to the claimant, then calculation of, and Underwriters obligation under **ULTIMATE NET LOSS** with respect to the **CLAIMS, OCCURRENCES** or **SUITS** shall be limited to the amount of damages or payments for which the **CLAIMS, OCCURRENCES** or **SUITS** could have been settled for, plus 70% of the amount of damages or payments exceeding this amount subject to a maximum of $2,000,000, plus any expenses payable under **ULTIMATE NET LOSS** incurred until the date of the **ASSURED'S** refusal to settle or compromise the **CLAIMS, OCCURRENCES** or **SUITS** as recommended by Underwriters. Underwriters' liability under the Policy shall never exceed the maximum limits detailed in the **Specific Excess Limits of Insurance** and **Clash Coverage** if applicable.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

Endorsement No. 26

## PROCEDURES FOR IN-HOUSE CLAIMS ADMINISTRATORS

It is understood and agreed that the servicing of claims shall be by the **NAMED ASSURED's IN-HOUSE CLAIMS ADMINISTRATORS**. For ease of reference throughout this Policy, wherever the term **THIRD PARTY CLAIM ADMINISTRATOR(S)** is used, it shall be understood to mean **IN-HOUSE CLAIM ADMINISTRATOR(S)**.

### QUARTERLY LOSS REPORTING

The **NAMED ASSURED** shall, by and through its **IN-HOUSE CLAIM ADMINISTRATOR** provide the Underwriters or their Representatives, no later than the 45th day after the end of each calendar quarter or upon the Underwriters' request, whichever is earlier, a current Loss Run listing all ground up **CLAIMS, SUITS or OCCURRENCES**. The Underwriters may contact the **IN-HOUSE CLAIM ADMINISTRATOR** to facilitate ground up Loss Run reporting. The Underwriters may request the **IN-HOUSE CLAIM ADMINISTRATOR** to assist in the transmission of such electronically. The **IN-HOUSE CLAIM ADMINISTRATOR** will cooperate provided no significant development costs are incurred in performing electronic reporting or if the Underwriters agree to incur the development costs on behalf of the **IN-HOUSE CLAIM ADMINISTRATOR** or **NAMED ASSURED**. This reporting obligation continues until ninety (90) days after all **CLAIMS, SUITS or OCCURRENCES** are handled to their conclusion.

### ADDITIONAL CONDITIONS FOR ASSUREDS WITH EXCESS LOSS FUND PROTECTION

If Excess **LOSS FUND** Protection is provided under this Policy, the **NAMED ASSURED** shall, by and through its **IN-HOUSE CLAIM ADMINISTRATOR** provide the Underwriters or their Representatives, no later than the 45th day after the end of each calendar quarter or upon the Underwriters' request, whichever is earlier, a current Loss Run listing all ground up **CLAIMS, SUITS or OCCURRENCES** and a corresponding **LOSS FUND** Report in a previously agreed format so that Underwriters may assess their potential exposure based on **CLAIMS, SUITS or OCCURRENCES** with respect to aggregate **LOSS FUND** erosion. This reporting obligation continues until ninety (90) days after all **CLAIMS, SUITS or OCCURRENCES** are handled to their conclusion. The quarterly Loss Run and **LOSS FUND** Report are to be sent to: Claims.lossruns@britinsurance.com or as directed by the Underwriters.

Once the **LOSS FUND erosion reaches 50% of** the attachment point on an incurred basis, the Underwriters or their Representatives reserve the right to audit all **CLAIMS, SUITS or OCCURRENCES** with respect to aggregate **LOSS FUND** erosion. The NAMED ASSURED shall, by and through its **IN-HOUSE CLAIM ADMINISTRATOR** cooperate and facilitate this process.

These conditions shall survive the termination of this Policy without regard to whether said termination is due to cancellation or natural expiration of this Policy.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 27

## COVERAGE SECTION I – PROPERTY – FLOOD ZONE A COVERAGE

It is understood and agreed that **Coverage Section I Exclusion V** is deleted and replaced as follows:

V.   Loss due to or resulting from **FLOOD AND SURFACE WATER** for any Zone V, Zone VE, and Zones V1-V30 or to any other Flood Zone with a designation that begins with the letter V.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 28

## GENERAL POLICY EXCLUSIONS – POLLUTION EXCLUSION AMENDMENT

It is understood and agreed that **General Policy Exclusion E** is deleted and replaced as follows:

E. (1) The investigation, defense, loss or damage, including loss of use, **BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE** caused by the release, discharge, dispersal, seepage or migration of **POLLUTANTS** anywhere, anytime, in any way, whether accidental or intentional, sudden or intermittent or continuous:

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **ASSURED**;

    (b) At or from any premises, site or location which is or was at any time used by or for any **ASSURED** or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **ASSURED** or any person or organization for whom any **ASSURED** may be legally responsible; or

    (d) At or from any premises, site or location on which any **ASSURED** or any contractor or subcontractor working directly or indirectly on any **ASSURED'S** behalf are performing operations:

        (i) If the **POLLUTANTS** are brought on or to the premises, site or location in connection with such operations by such **ASSURED**, contractor or subcontractor; or

        (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**.

    (e) That are, or that are contained in any property that is:

    (i) Being transported or towed by, handled, or handled for movement into, onto or from, an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability**; or

    (ii) Otherwise in the course of transit by or on behalf of the ASSURED; or

    (iii) Being stored, disposed of, treated or processed in or upon an AUTOMOBILE covered under **Coverage Section III AUTOMOBILE Liability**; or

    (f) Before the **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are moved from the place where they are accepted by the ASSURED for movement into or onto an AUTOMOBILE covered under **Coverage Section III AUTOMOBILE Liability**;   or

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972170102518

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

___

    (g)   After the **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are moved from an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability** to the place where they are finally delivered, disposed of or abandoned by the **ASSURED**.

(2)  The investigation, defense, loss or damage, including loss of use, caused by the release, discharge or dispersal of **POLLUTANTS** anywhere, anytime, in any way, whether accidental or intentional, sudden or intermittent or continuous for any loss, cost or expense arising out of any:

    (a)   Request, demand, or other order that any **ASSURED** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **POLLUTANTS**; or

    (b)   Claim or **SUIT** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **POLLUTANTS**;

However, paragraph E.(2) does not apply to liability for damages because of **PROPERTY DAMAGE** that the **ASSURED** would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or **SUIT** by or on behalf of a governmental authority.

**Except:**

(3)  This exclusion does not apply to the reverse of flow of sewage into any building from a sewage facility, fixed conduit or sanitary sewer that the **ASSURED** owns, operates or maintains; and

As respects **Coverage Section II General Liability** only:

(4)  Subparagraph E.(1)(a) and E.(1)(d)(i) **only** of this exclusion do not apply to **BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE** arising out of heat, smoke or fumes from a "hostile fire" as defined below;

As used in this Extension, the definition of **PROPERTY DAMAGE** excludes loss of use.

As used in this Extension, a "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

(5)  This exclusion does <u>not</u> apply to **BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE** arising out of the use, handling, storage, discharge, dispersal, release or escape of chemicals when introduced by an **ASSURED** into such **ASSURED'S** drinking water system solely for the purpose of purifying or treating such drinking water; provided that the chemicals' generally accepted use is for the purification or treatment of drinking water.

(6)  This exclusion does <u>not</u> apply to **BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE** arising out of the use, handling, storage, discharge, dispersal, release or escape of chemicals when

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972171102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

used in the day-to-day operation and/or maintenance of swimming pools owned or operated by an **ASSURED;** provided that the chemicals' generally accepted use is for the operation/maintenance of swimming pools.

(7) This exclusion does <u>not</u> apply to **BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE** arising out of the application of pesticides, or herbicides provided such application is performed by employees of the **NAMED ASSURED** who are properly licensed or certified by a federal or state agency to apply those chemicals, pesticides or herbicides; and where the application or use is in strict compliance with all federal, state, and local laws, statutes, regulations, ordinances, or the like; and where the application or use is in compliance with industry standards for application or use.

(8) This exclusion does not apply to **BODILY INJURY** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment used to heat, cool, dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests.

(9) This exclusion does not apply to **BODILY INJURY, PERSONAL INJURY** or **PROPERTY DAMAGE** arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of **MOBILE EQUIPMENT** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **BODILY INJURY** or **PROPERTY DAMAGE** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by the **ASSURED,** contractor or subcontractor.

(10) This exclusion does not apply to BODILY INJURY, **PERSONAL INJURY** or PROPERTY DAMAGE sustained within a building and caused by the release of gases, fumes, vapors form material brought into that building in connection with operations being performed by or on behalf of the **ASSURED.**

As respects **Coverage Section III AUTOMOBILE Liability** only:

(11) Subparagraph E(1)(e) of this exclusion does <u>not</u> apply to fuels, lubricants, fluids, exhaust gases or other similar **POLLUTANTS** that are needed for, or result from the normal electrical, hydraulic or mechanical functioning of an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability** or its parts, if:

(a) The **POLLUTANTS** escape, seep, migrate, or are discharged, dispersed or released directly from an **AUTOMOBILE** part designed by its manufacturer to hold, store, receive or dispose of such **POLLUTANTS;** and

(b) The **BODILY INJURY, PERSONAL INJURY** <u>or</u> **PROPERTY DAMAGE** does not arise out of the operation of any equipment defined as **MOBILE EQUIPMENT.**

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997217210251218

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

(12) Paragraph E. (1) (e) of this exclusion does <u>not</u> apply to accidents that occur away from premises owned by or rented to an **ASSURED** with respect to **POLLUTANTS** not in or upon an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability** if:

    (a) The **POLLUTANTS** or any property in which the **POLLUTANTS** are contained are upset, overturned or damaged as a result of the maintenance or use of an **AUTOMOBILE** covered under **Coverage Section III AUTOMOBILE Liability;** and

    (b) The discharge, dispersal, seepage, migration, release or escape of the **POLLUTANTS** is caused directly by such upset, overturn or damage.

As respects **Coverage Section VIII Law Enforcement Liability** only:

(13) This exclusion does <u>not</u> apply to **BODILY INJURY, PERSONAL INJURY,** or **PROPERTY DAMAGE** resulting from **LAW ENFORCEMENT ACTIVITIES** and due to the use of teargas, mace or similar substances by an **ASSURED** within the scope of their employment by the **NAMED ASSURED.** This coverage extension applies <u>only</u> if the **NAMED ASSURED'S** operations meet <u>all</u> the standards of any statute, ordinance, regulation or license requirement of any federal, state or local government which apply to those operations.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997217310251 8

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 29

## GENERAL POLICY EXCLUSIONS – CYBER EXCLUSION AMENDMENT

It is understood and agreed that **General Policy Exclusion M** is deleted and the following exclusion is added to **Coverage Section II General Liability:**

**K.**    Loss and/or damages arising out of:

    (1)   Any access to or disclosure of any person's or organizations confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information; or

    (2)   The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **ELECTRONIC DATA.**

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by the **ASSURED** or others arising out of that which is described in paragraphs (1) or (2) above. However, unless Paragraph (1) above applies, this exclusion does not apply to damages because of **BODILY INJURY.**

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972174102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 30

**CLASH COVERAGE AMENDMENT**

It is understood and agreed that **Clash Coverage** is deleted from the Declarations of this Policy and replaced in its entirety with the following:

**Clash Coverage**

1. In the event of a covered loss involving more than one Coverage Section, the **ASSURED** will only be liable for one **SELF INSURED RETENTION**. This will be the **SELF INSURED RETENTION** for the Coverage Section that results in the largest **ULTIMATE NET LOSS**.

2. Underwriters will indemnify the **ASSURED** for **ULTIMATE NET LOSS** arising within each **SELF INSURED RETENTION** applicable to the Coverage Section involved in the loss, less the **SELF INSURED RETENTION** determined in Paragraph 1. above.

3. In the event of a coverage loss involving more than one Coverage Section, the maximum amount for which Underwriters will indemnify the **ASSURED** will be the sum of the limits of liability for all Coverage Sections that apply to the loss, after deduction is made for the **SELF INSURED RETENTION** as determined in Paragraph 1. Above; but subject to all applicable **Specific Excess Limits** and **SUBLIMITS** as stated in the **Schedule of Specific Excess Limits of Insurance**.

**Clash Coverage** does not apply to **Coverage Section IX – Terrorism**.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 31

### GENERAL POLICY CONDITIONS AMENDMENT

It is understood and agreed that **General Policy Condition 12. False or Fraudulent Claims** is deleted in its entirety.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L0016997217 6102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 32

### COVERAGE SECTION II GENERAL LIABILITY – EXCLUSION AMENDMENT

It is understood and agreed that **Coverage Section II General Liability Exclusion D** is deleted and replaced with the following:

**D.**     Damage to or destruction of **PROPERTY OF THE ASSURED**, except this exclusion shall not apply to coverage provided by **Coverage Section II Insuring Agreement E – Damage to Premises Rented to the ASSURED**;

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972177102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

Endorsement No. 33

### COVERAGE SECTION II GENERAL LIABILITY – DEFINITION AMENDMENT

It is understood and agreed that **Coverage Section II General Liability Definition 4.** is deleted and replaced with the following:

4.    **INCIDENTAL MEDICAL MALPRACTICE** means **BODILY INJURY** or **PERSONAL INJURY** arising out of the rendering of or failure to render emergency and/or first aid medical services which shall be understood to include, but not limited to, the dispensing of medication and/or the administering of inoculations and/or blood tests and the like (i.e.: medicines/tests normally administered by a Healthcare Department that are preventative in nature and do not require advanced medical diagnosis) but where there are no overnight stays.

However, **INCIDENTAL MEDICAL MALPRACTICE** does <u>not</u> include direct patient care provided by:

(a)  a hospital or emergency room facility;

(b)  a physician, medical doctor, osteopath, chiropractor, resident, extern, or intern;

(c)  a psychiatrist;

(d)  a pharmacist;

(e)  a dentist, orthodontist, or periodontist.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972178102518

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

---

Endorsement No. 34

### COVERAGE SECTION III AUTOMOBILE LIABILITY – INSURING AGREEMENT A AMENDMENT

It is understood and agreed that Coverage Section III Automobile Liability Insuring Agreement A. is deleted and replaced with the following:

A.    **AUTOMOBILE Liability:** Underwriters agree, subject to the Policy limitations, terms and conditions, to indemnify the **ASSURED** for all sums which the **ASSURED** is obligated to pay by reason of the liability imposed upon the **ASSURED** by law or assumed by the **ASSURED** under contract or agreement, including non-owned and hired **AUTOMOBILES**, for damages direct or consequential, and expenses, all as more fully defined by the term **ULTIMATE NET LOSS**, arising out of any **OCCURRENCE** on account of **BODILY INJURY** or **PERSONAL INJURY**, suffered or alleged to have been suffered by any person(s) or organization(s) and/or **PROPERTY DAMAGE**, arising out of the ownership, operation, maintenance or use of any **AUTOMOBILE**, except as provided under Insuring Agreement C Uninsured Motorist/Underinsured Motorist Coverage, occurring during the **PERIOD OF INSURANCE**.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**NAMED ASSURED:** Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

Endorsement No. 35

## COVERAGE SECTION IV – NON-MONETARY CLAIM DEFENSE SUBLIMIT

It is hereby understood and agreed that **Coverage Section IV Public Officials Miscellaneous Liability Exclusion E** is deleted and replaced with the following:

E.     **CLAIMS, SUITS,** proceedings, demands, or actions seeking relief or redress in any form other than monetary damages, including defense of same; or any loss, fees, costs or expenses which the **ASSURED** may be obligated to pay to any third-party as a result of any adverse judgment for declaratory relief or administrative relief or injunctive relief, except that this exclusion shall not apply to any **CLAIM** made to the Equal Employment Opportunity Commission (E.E.O.C.), or such similar federal, state or local administrative agency established to handle or adjudicate **EMPLOYMENT PRACTICE VIOLATIONS** that involve or arise from alleged employment discrimination other than **CLAIMS** brought under the federal Fair Labor Standards Act or similar state act or law.

However, where **CLAIMS, SUITS,** proceedings, demands or actions are seeking both monetary damages **and** relief or redress in any form other than monetary damages, coverage for DEFENSE COSTS in respect of the non-monetary parts shall be provided up to a ground up **SUBLIMIT** of $175,000 per **CLAIM**. This **SUBLIMIT** shall form part of the **ULTIMATE NET LOSS** and does not increase the **Coverage Section IV Specific Excess Limit of Insurance.**

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972180102318

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number:  PK1006318

Effective Date:  January 1, 2018

Authority Ref. No.:  B0356JA281N18

Endorsement No. 36

## PUBLIC RELATIONS SUBLIMIT FOR CRISIS EVENTS

It is understood and agreed that, in respect of **Coverage Section IV Miscellaneous Liability** and **Coverage Section VIII Law Enforcement Liability, General Policy Definition 30, ULTIMATE NET LOSS**, is extended to include:

**CRISIS MANAGEMENT EXPENSES** (as defined below) incurred by the **NAMED ASSURED**, up to a ground up **SUBLIMIT** of $25,000 per **OCCURRENCE** or **CLAIM**, and further subject to an annual aggregate of $200,000 for all **ASSUREDS**. This **SUBLIMIT** is part of the **ULTIMATE NET LOSS** and shall not increase the **Specific Excess Limit of Insurance**.

**CRISIS MANAGEMENT EXPENSES** means the reasonable and necessary cost of retaining an independent public relations consultant, media management consultant, investigative firm or law firm, and the cost of advertising and public relations media and activities in connection with a **CRISIS MANAGEMENT EVENT**.

**CRISIS MANAGEMENT EVENT** means an allegation of:

(i)     as to **Coverage Section IV**, a **WRONGFUL ACT, EMPLOYMENT PRACTICES VIOLATION, SEXUAL HARASSMENT, SEXUAL ABUSE**; or

(ii)    as to **Coverage Section VIII**, of liability covered under the Law Enforcement Liability, **SEXUAL HARASSMENT** Liability, or **SEXUAL ABUSE** Liability Insuring Agreements;

which the **NAMED ASSURED** reasonably believes is likely to generate substantial negative publicity for the **ASSURED** and/or the **NAMED ASSURED**.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

L00169972181102518

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

NAMED ASSURED: Garden State Municipal Joint Insurance

Policy Number: PK1006318

Effective Date: January 1, 2018

Authority Ref. No.: B0356JA281N18

---

Endorsement No. 37

It is understood and agreed that Endorsement No. 1 of this Policy is hereby deleted in its entirety and replaced with the following:

**GENERAL POLICY EXCLUSIONS AMENDMENT – FAILURE TO SUPPLY EXCEPTION FOR WATER**

It is understood and agreed that **General Policy Exclusion N** is deleted and replaced with the following:

**N.** Loss, damage, cost or expense arising out of the failure of any **ASSURED** to adequately supply gas, oil, electricity or steam. However, this exclusion does not apply if the failure to supply results from a covered cause of loss under **Coverage Section I Property** caused by Direct Physical Loss or Damage to tangible property owned or used by any **ASSURED** to procure, produce, process or transmit the gas, oil, electricity or steam.

Except as amended in this Endorsement, this insurance is subject to all coverage terms, clauses and conditions in the policy to which this Endorsement is attached.

**Appendix XII-B1**



## CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Gene J. Anthony, Esq. | (732) 542-3320 | Monmouth |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Law Office of Gene J. Anthony, Esq. | |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 48 South Street, Eatontown, NJ 07724 | Complaint for Declaratory Judgment |
| | JURY DEMAND  ☐ Yes  ■ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Township of Neptune, Plaintiff | Township of Neptune, Plaintiff, v. Garden State Municipal Joint Insurance Fund; Lloyd's of London; Statewide Insurance Fund; National Casualty Co; Nationwide Insurance Co; Evanston Ins., et als. |

| CASE TYPE NUMBER (See reverse side for listing) 555/999 | HURRICANE SANDY RELATED? ☐ YES ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO |
|---|---|---|
| | | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ Yes ■ No | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ Yes ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) ☐ NONE ■ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ■ Yes ☐ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE ☐ FAMILIAL ☐ FRIEND/NEIGHBOR ■ BUSINESS ☐ OTHER (explain) |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ■ Yes ☐ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ Yes ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED? ☐ Yes ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

L0016997218310251B



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I  -  150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (including declaratory judgment actions) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (summary action) |
| 999 | OTHER (briefly describe nature of action) |
| | Declaratory Judgment of Insurance Policies |

**Track II  -  300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 621 | UM or UIM CLAIM (includes bodily injury) |
| 699 | TORT – OTHER |

**Track III  -  450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV  -  Active Case Management by Individual Judge / 450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Multicounty Litigation (Track IV)**
| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 292 | PELVIC MESH/BARD |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 282 | FOSAMAX | 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286 | LEVAQUIN | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 287 | YAZ/YASMIN/OCELLA | 300 | TALC-BASED BODY POWDERS |
| 289 | REGLAN | 601 | ASBESTOS |
| 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION | 623 | PROPECIA |
| 291 | PELVIC MESH/GYNECARE | 624 | STRYKER LFIT CoCr V40 FEMORAL HEADS |

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.**

**Please check off each applicable category**   ☐ **Putative Class Action**   ☐ **Title 59**